## Bill of Sale

**Date:** September 5, 2014

**Seller:** Jentex Financial, Inc.

**Seller's Mailing Address:** 226 Bailey Ave., Suite 104, Fort Worth, Texas 76107

**Buyer:** Anson Financial, Inc.

**Buyer's Mailing Address:** 1210 Hall Johnson Rd., Suite 100, Colleyville, Texas 76034

**Consideration:** Ten and No/100 Dollars and other good and valuable Consideration as set out in the Purchase Agreement dated 9/5/2014.

**Transferred Properties:**
- Jentex Financial, Inc.'s 50% interest in the ownership of The Alvord 287 Joint Venture transferred to Anson Financial, Inc.

**Reservations from Transfer:** None.

**Exceptions to Transfer and Warranty:** None.

Seller, for the Consideration and subject to the Reservations from Transfer and the Exceptions to Transfer and Warranty, sells, transfers, and delivers the Transferred Interest to Buyer, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Buyer and Buyer's heirs, successors, and assigns forever. Seller binds Seller and Seller's heirs and successors to warrant and forever defend all and singular the Transferred Interest to Buyer and Buyer's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof when the claim is by, through, or under Seller but not otherwise, except as to the Reservations from Transfer and the Exceptions to Transfer and Warranty.

As a material part of the Consideration for this sale, Seller and Buyer agree that Buyer is taking the Transferred Interest "AS IS" and that there are no representations, disclosures, or express or implied warranties except those contained in the purchase contract and this bill of sale. Buyer has not relied on any information other than Buyer's inspection and the representations and warranties expressly contained in the purchase contract and this bill of sale.

When the context requires, singular nouns and pronouns include the plural.

| Jentex Financial, Inc.<br><br>By: _____<br>Jay Lesok, President | Anson Financial, Inc.<br><br>By: _____<br>J. Michael Ferguson, President |

STATE OF TEXAS )

COUNTY OF TARRANT )

This instrument was acknowledged before me on September 5, 2014, by Jay Lesok, President of Jentex Financial, Inc.



Notary Public, State of Texas

STATE OF TEXAS )

COUNTY OF TARRANT )

This instrument was acknowledged before me on September 5, 2014, J. Michael Ferguson, President of Anson Financial, Inc.



Notary Public, State of Texas

Bill of Sale

Page 2

# BUSINESS PURCHASE AGREEMENT

This Business Purchase Agreement (this "Agreement") is made and entered into on September 05, 2014, by and between Jentex Financial, Inc., having its principal office of business at 224 Bailey Ave., Suite 104, Fort Worth, Texas 76107 ("Seller"), on the one hand, and Anson Financial, Inc., having its principal office of business at 1210 Hall Johnson Rd., Suite 100, Colleyville, Texas 76034 ("Buyer"), on the other hand. Seller and Buyer are collectively referred to herein as (the "Parties"), and are sometimes referred to individually as a ("Party").

RECITALS:

WHEREAS, Seller is the owner of a One Half (1/2) interest in Alvord 287 Joint Venture, located at 226 Bailey Ave., Suite 104, Fort Worth, Texas 76107 (collectively, the "Business");

WHEREAS, Seller desires to sell the Business to Buyer, and Buyer desires to purchase the Business from Seller.

NOW, THEREFORE, for and in consideration of the mutual covenants and benefits derived and to be derived from this Agreement by each Party, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

## A. Subject Matter

### 1. Description of Business

The Business includes the following properties:

All of Jentex's interest in the trade, goodwill, and other intangible assets and more specifically the Assets described as (1) Mobile Home Lots (2) Mortgages secured by Mobile Home Lots and (3) Any cash accounts opened in the operation of the business. (See Exhibit "A" –Balance Sheet of Business)

**Agreement to Sell**
Subject to and in accordance with the terms and conditions of this Agreement, Buyer agrees to purchase the Business from Seller, and Seller agrees to sell the Business to Buyer. Seller represents and warrants to Buyer that it has (and Buyer will have) good and marketable title to the Business, free and clear of all liens and encumbrances.

### 2. Purchase Price and Method of Payment
Buyer shall pay and Seller shall accept the purchase price for the Business as follows:

**Consideration**
As total consideration for the purchase and sale of the Business (including its tangible and intangible assets as described above), and Buyer's assumption of the assumed obligations and all other liabilities provided for in this Agreement, the Buyer shall pay to the Seller the sum of

$325,000.00, and such total consideration to be referred to in this Agreement as the "Purchase Price."

**Payment**
The sum of $325,000.00 shall be paid to Seller in the form of a Promissory Note and a Security Agreement and the collateral shall be the Seller's ½ Interest in 287 Alvord Joint Venture. The Note shall be payable over 180 months in equal monthly installments plus accrued interest. The interest rate shall start at 0% for the first 12 months and then increase by 1% on September 5 of each year until the interest rate hits 6%. The maximum interest rate shall be 6%.

**Allocation**
The Purchase Price shall be allocated for tax purposes as follows:

| Asset Purchased | Fair Market Value |
|---|---|
| All Assets and Liabilities of 287 Alvord Joint Venture | $325,000.00 |

**Fair Market Value**
Buyer and Seller each acknowledge that the amount of Purchase Price allocated to the Business properties represents the fair market value of the properties. Buyer and Seller each agree to report the sale of the business for income tax purposes according to the allocations set forth herein.

### 3. Closing

**Time and Place of Closing**
Closing is the date and time at which parties agree to finalize this transaction. The closing date is designated as September 05, 2014, provided there are no unforeseen delays. Time is of the essence, and in no event shall closing be later than 10 calendar days after designated closing date, unless an extension is agreed upon in writing between the Buyer and the Seller. At Closing, Seller ~~shall deliver to the Buyer a final executed Bill of Sale~~ *by executing this Agreement is hereby* transferring to Buyer all of the assets of the Business sold hereunder, free and clear of any and all liens, encumbrances, security interests, debts or taxes of any nature whatsoever. If needed by Buyer, the Seller shall also produce (1) an Affidavit of Title indicating the Seller has the authority to sell and transfer the Business and its assets and (2) an Assignment of the assumed name of the Business to the Buyer as well as any other documents necessary to finalize this Agreement.

### B. Representations and Warranties of Seller

Seller makes the following representation and warranties as of the date hereof and as of the date of Closing, except when otherwise indicated.

**Organization and Standing**
The Business is duly organized, validly existing, in good standing under the laws of the State of Texas and is qualified to carry on its business in the State of Texas, and has the corporate power and authority to carry on its business as it is now being conducted.

**Authority relative to this Agreement**
Except as otherwise stated herein, the Seller has full power and authority to execute this Agreement and carry out the transactions contemplated by it. No further action is necessary by the Seller to make this Agreement valid and binding upon Seller and enforceable against it in accordance with the terms hereof, or to carry out the actions contemplated hereby. The execution, delivery, and performance of this Agreement by the Seller will not constitute:

> (i) a breach or a violation of the Corporation's Certificate of Incorporation, by-laws, or of any law, agreement, indenture, deed of trust, mortgage, loan agreement or other instrument to which it is a party, or by which it is bound;

> (ii) a violation of any order, judgment or decree to which it is a party or by which its assets or properties is bound or affected; or

> (iii) result in the creation of any lien, charge or encumbrance upon its assets or properties except as stated herein.

**Authorization and Enforceability**
This Agreement constitutes Seller's legal, valid and binding obligation, enforceable in accordance with its terms, subject, however, to the effects of bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer and conveyance and other laws for the protection of creditors, as well as to general principles of equity, regardless whether such enforceability is considered in a proceeding in equity.

**Tax Matters**
To the best knowledge of the Seller, it has timely prepared and filed all federal, state, and local tax returns and reports as are and have been required to be filed, and all taxes shown thereon to be due have been paid in full, including but not limited to sales tax, withholding tax, and all other taxes of every nature.

**Properties**
The Seller has good and merchantable title to all of its properties and assets that constitute "Business" as defined herein. At Closing, such properties and assets will be subject to no mortgage, pledge, lien, conditional sales agreement, security agreement, encumbrance or charge, secured or unsecured. Seller has reserved funds in the Business Cash Account to cover future tax payments and contingencies. There will be no proration of taxes or the contingencies. Seller makes no warranties as to the condition or quality of assets of the business and said assets are being sold to Buyer "AS IS, WHERE IS" NO EXCEPTIONS.

Exh DEF007 - Page 6 of 14

**Litigation**
There is no action, suit, proceeding, claim or investigation by any person, entity, or governmental entity pending or, to Seller's knowledge, threatened against it before any governmental entity that impedes or is likely to impede its ability to consummate the transaction. However, Jentex Financial, Inc. does have a potential dispute with the other owner, Frazier Asset Management/Brian Frazier, of The Alvord 287 Joint Venture regarding the transferability of Jentex's Joint Venture Interest as well as any other issue that might arise. If Anson Financial, Inc. does end up in litigation against Frazier Asset Management and/or Brian Frazier, Anson Financial, Inc. agrees to indemnify Jentex Financial, Inc. and Jay Lesok from any economic damages. Anson Financial, Inc., Jentex Financial, Inc. and Jay Lesok agree that the Law Office of J. Michael Ferguson, PC and/or Ghrist Law will be responsible for 100% of the cost of any litigation that might result in a dispute with Frazier Asset Management and/or Brian Frazier. (See attached Indemnification Agreement).

**Compliance with Applicable Laws**
To the best of Seller's knowledge, none of the Seller's actions in transferring good and merchantable title to those assets and properties set out in herein are prohibited by or have violated or will violate any law in effect on the date of this Agreement or on the date of closing.

**Documents for Review**
The Seller's Documents for Review enumerated in Exhibit "A" attached hereto and made a part hereof are true, authentic, and correct copies of the originals, or as appropriate the originals themselves, and no alterations and modifications thereof have been made.

**No Other Representations or Warranties; Disclosed Materials**
Seller makes no other express or implied representations of warranty with respect to Seller, and Seller disclaims any other representations or warranties not contained in this Agreement, whether made by Seller, any affiliate of Seller, or any of their respective officers, directors, managers, partners, employees or agents.

### C. Representations and Warranties by both Buyer and Seller

Buyer makes the following representations and warranties as of Closing and as of the date hereof.

**Warrants**
Buyer and Seller hereby represent and warrant that there has been no act or omission by Buyer or Seller which would give rise to any valid claim against any of the parties hereto for a brokerage commission, finder's fee, or other like payment in connection with the transactions contemplated hereby.

**Financial Resources**
Buyer shall have as of Closing, sufficient funds with which to pay the Closing Amount and consummate the transaction and, following Closing, Buyer will have sufficient funds to pay any adjustments to the Purchase Price and meet its other payment obligations under this Agreement.

**Payment of Costs and Expenses**
Except as expressly provided to the contrary in this Agreement, each party shall pay all of its own costs and expenses incurred with respect to the negotiation, execution and delivery of this Agreement and the exhibits hereto.

**Litigation**
There is no action, suit, proceeding, claim or investigation by any person, entity, or governmental entity pending or, to Buyer's knowledge, threatened against it before any governmental entity that impedes or is likely to impede its ability to consummate the transaction and to assume the liabilities to be assumed by it under this Agreement.

**Indemnification**
Buyer shall indemnify and hold Seller harmless from any and all liabilities and obligations arising from Buyer's operation of the business after the Closing. Similarly, Seller shall indemnify and hold Buyer harmless from any and all liabilities and obligations arising from Seller's operation of the business prior to the Closing.

**Default**
After execution of this Agreement by the parties, if either party fails to perform its respective obligations, or breaches a warranty or covenant, that would constitute a default. The defaulting party shall cure the default with in 10 days of notice by the other party. In the event of a failure to cure such default by either party within the stipulated time, Seller or Buyer shall have the right to cancel this transaction and/or sue for damages in addition to any other relief provided under this Agreement. In a suit for default, the prevailing party shall recover reasonable attorney fees.

**Survival of Representations and Warranties**
Each of the parties to this Agreement covenants and agrees that their respective representations, warranties, covenants, statements, and agreements contained in this Agreement shall survive the Closing Date. Except the exhibits hereto or the documents and papers delivered by Seller to Buyer in connection with the Agreement herewith, there are no other agreements, representations, warranties, or covenants by or among the parties hereto with respect to the subject matter hereof.

**Buyer's Evaluation**
Buyer acknowledges that it is an experienced and knowledgeable investor in Mobile home Lots, mortgages created from sale of the Mobile Home Lots and servicing of the mortgages and is aware of the risks.

**Cooperation**
Both Seller and Buyer agrees to cooperate fully with each other and to execute such further instruments, documents and agreements and to give such further written assurances, as may be reasonably requested by the parties, to better evidence and consummate the transactions described herein and contemplated hereby, and to carry into effect the intents and purposes of this Agreement.

**Bankruptcy**
There are no bankruptcy, reorganization or arrangement proceedings pending, being contemplated by or to such Buyer's knowledge threatened against such Buyer or any affiliate of such Buyer.

**Confidentiality**
Both Seller and Buyer shall not divulge, communicate, or use to the detriment of the other or for the benefit of any other person or persons, or misuse in any way, any of Seller's confidential information discovered by or disclosed to Seller or Buyer as a result of the delivery, execution or performance of this Agreement.

**No Investment Company**
Buyer is not (a) an investment company or a company controlled by an investment company within the meaning of the Investment Company Act of 1940, as amended, or (b) subject in any respect to the provisions of that Act.

## D. Transactions prior to Closing

**Conduct of Seller's Business until Closing**
Except as Buyer may otherwise consent in writing prior to the Closing Date, Seller will not enter into any transaction, take any action, or fail to take any action which would result in or could reasonably be expected to result in or cause any of the representations and warranties of Seller contained in this Agreement to be void, invalid, or false on the Closing Date.

**Resignations**
Seller shall deliver to Buyer prior to the Closing Date such resignations of officers or employees of the business as Buyer shall indicate, and each such resignation to be effective on the Closing Date.

**Satisfactions**
If Applicable, Seller shall deliver to Buyer on the Closing Date a satisfaction of any encumbrance or lien on the business property, satisfactory in form and substance to the Buyer, indicating that the then outstanding unpaid principal balance of any promissory note secured thereby has been paid in full prior to or simultaneously with the closing.

**Advice of Changes**
Between the date hereof and the Closing Date, Seller will promptly advise Buyer in writing of any fact which, if existing or known at the date hereof, would have been required to be set forth herein or disclosed pursuant to this Agreement.

**Documents**
Seller shall deliver to Buyer at closing such documents which are in Buyer's sole discretion and necessary to fully satisfy the objectives of this Agreement in content and form.

## E. General Provisions

**Waivers**
No action taken pursuant to this Agreement including any investigation by or on behalf of any party shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein or therein and in any documents delivered in connection herewith or therewith. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

**No Third-Party Beneficiaries**
Except as otherwise provided, nothing in this Agreement shall provide any benefit to any third party or entitle any third party to any claim, cause of action, remedy, or right of any kind, it being the intent of the Parties that this Agreement shall not be construed as a third-party beneficiary contract.

**Notices**
All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered or mailed, first class mail, postage prepaid to Seller, Buyer, or to such other address as such party shall have specified by notice in writing to the other party.

**Sections and Other Headings**
The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretations of this Agreement.

**Governing Law; Venue**
This agreement and all transactions contemplated hereby shall be governed by and construed and enforced in accordance with the laws of Texas. Any dispute arising under this contract shall be resolved under the commercial arbitration rules of the American Arbitration Association. Any litigation arising out of this Agreement shall be brought before the Federal or State Courts sitting in the City and County of Texas, Tarrant, and the Parties irrevocably consent to the jurisdiction of such courts and waive any right to choose or request any other venue. In the event that arbitration or litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

**Conditions Precedent**
If the obligations and responsibility of either party are not fulfilled by the appropriate dates thereof, then this Agreement shall be deemed null and void and any deposits paid at said time shall be returned to the Buyer forthwith.

**Time is of the Essence**
Time and timely performance are of the essence in this contract and of the covenants and provisions hereunder.

**Successors and Assigns**
This Agreement may not be assigned without the prior written consent of the parties hereto. Rights and obligations created by this contract shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns. Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all genders.

**Contractual Procedures**
Unless specifically disallowed by law, service of process in any litigation that arise hereunder may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

**Extraordinary Remedies**
To the extent cognizable at law, in the event of breach the parties hereto may obtain injunctive relief in addition to any and all other remedies available thereto regardless of whether the injured party can demonstrate that no adequate remedy exists at law.

**Entire Agreement**
This Contract contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written concerning the subject matter of this Contract. This Contract supersedes any prior written or oral agreements between the parties.

**Severability**
If any provision of this Contract will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Contract is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited.

**Amendments**
This Contract may be modified or amended in writing, if the writing is signed by the party obligated under the amendment.

**Initials and Exhibits**
This Contract shall not be valid and enforceable unless it is properly executed by Buyer and Seller and their initials affixed to each page of the exhibits attached hereto and made a part hereof.

**Signatories**
This Agreement shall be executed on behalf of Jentex Financial, Inc. by Jay Lesok, its President, and on behalf of Anson Financial, Inc. by J. Michael Ferguson, its President.

BUSINESS:

_____
Jentex Financial, Inc.
By Jay Lesok, its President


BUYER:

_____
Anson Financial, Inc.
By J. Michael Ferguson, its President

## Exhibit "A"
## Documents for Review

Financial and Operating Statement(s)

Accounts Payable/Receivables Ledger

Pay Histories of Loans

For all documents named above the Seller shall provide full and complete records covering the past 3 years.

_____
Jentex Financial, Inc.

_____
Anson Financial, Inc.

# INDEMNITY AGREEMENT

This INDEMNITY AGREEMENT (this "Agreement") is made effective on September 05, 2014 by and between the Jentex Financial, Inc. (hereinafter, "Jentex"), of 226 Bailey Ave., Suite 104, Fort Worth, Texas 76107 and Anson Financial, Inc. (hereinafter, "AFI"), of 1210 Hall Johnson Rd., Suite 100, Colleyville, Texas 76034. Jentex Financial, Inc. and Anson Financial, Inc. are sometimes individually referred to as "Party" and collectively referred to as the "Parties.'"

WHEREAS, AFI desires to indemnify Jentex and Jay Lesok and Barbara Lesok, Individually from any liability, cost, claims arising out of potential legal dispute between Frazier Asset Management/Brian Frazier to dissolve or partition The 287 Alvord Joint Venture.

NOW THEREFORE, in consideration of the mutual covenants and conditions contained herein, Jentex and AFI hereby agree as follows:

TERMS

**1. Indemnification.** AFI shall fully defend, indemnify, and hold harmless Jentex from any and all claims, lawsuits, demands, causes of action, liability, loss, damage and/or injury, of any kind whatsoever ( including without limitation all claims for monetary loss, property damage, equitable relief, personal injury and/or wrongful death), whether brought by an individual or other entity, or imposed by a court of law or by administrative action of any federal, state, or local governmental body or agency, arising out of, in any way whatsoever, any acts, omissions, negligence, or willful misconduct on the part of AFI, its officers, owners, personnel, employees, agents, contractors, invitees, or volunteers . This indemnification applies to and includes, without limitation, the payment of all penalties, fines, judgments, awards, decrees, attorneys' fees, and related costs or expenses. AFI will be responsible for all legal fees, expenses, and costs incurred by it or in defending Jentex, Jay Lesok and Barbara Lesok. Jentex, Jay Lesok and Barbara Lesok agree to let J. Michael Ferguson, PC and/or Ghrist Law handle any litigation that might arise with Frazier Asset Management and/or Brian Frazier.

**2. Authority to Enter Agreement.** Each Party warrants that the individuals who have signed this Agreement have the actual legal power, right, and authority to make this Agreement and bind each respective Party.

**3. Amendment; Modification.** No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing and signed by both Parties.

**4. Waiver.** No waiver of any default shall constitute a waiver of any other default or breach, whether of the same or other covenant or condition. No waiver, benefit, privilege, or service voluntarily given or performed by a Party shall give the other Party any contractual right by custom, estoppel, or otherwise.

**5. Attorneys' Fees and Costs.** If any legal action or other proceeding is brought in connection with this Agreement, the successful or prevailing Party, if any, shall be entitled to recover reasonable attorneys' fees and other related costs, in addition to any other relief to which that

Party is entitled. In the event that it is the subject of dispute, the court or trier of fact who presides over such legal action or proceeding is empowered to determine which Party, if any, is the prevailing party in accordance with this provision.

**6. Entire Agreement.** This Agreement contains the entire agreement between the Parties related to the matters specified herein, and supersedes any prior oral or written statements or agreements between the Parties related to such matters.

**7. Enforceability, Severability, and Reformation.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited. The intent of the Parties is to provide as broad an indemnification as possible under Texas law. In the event that any aspect of this Agreement is deemed unenforceable, the court is empowered to modify this Agreement to give the broadest possible interpretation permitted under Texas law.

**8. Applicable Law.** This Agreement shall be governed exclusively by the laws of Texas, without regard to conflict of law provisions.

**9. Exclusive Venue and Jurisdiction.** Any lawsuit or legal proceeding arising out of or relating to this Agreement in any way whatsoever shall be exclusively brought and litigated in the federal and state courts of Texas. Each Party expressly consents and submits to this exclusive jurisdiction and exclusive venue. Each Party expressly waives the right to challenge this jurisdiction and/or venue as improper or inconvenient. Each Party consents to the dismissal of any lawsuit that they bring in any other jurisdiction or venue.

**10. Signatories.** This Agreement shall be signed on behalf of Jentex Financial, Inc. by Jay Lesok, President, and on behalf of Anson Financial, Inc. by J. Michael Ferguson, President, and effective as of the date first written above.

Jentex Financial, Inc.
By: _____
       Jay Lesok, President

Anson Financial, Inc.
By: _____
       J. Michael Ferguson, President