

# GONGLOFF | PIECHOWIAK LAW, PLLC
## www.GPLawandTitle.com

September 30, 2016

ATTN: J. Michael Ferguson, P.C.    *sent via electronic transmission*: mike@jmichaelferguson.com
Attorney at Law
Anson Financial, Inc. ("AFI")
1210 Hall Johnson Rd., Ste 100
Colleyville, TX 76034

Re:    **Demand for Accounting and Payment (Alvord 287 Joint Venture)**

**<u>IMMEDIATE ACTION REQUESTED</u>**

Dear Mr. Ferguson,

This letter is a follow-up regarding our earlier telephone conversation. Please be advised that this office has been retained by Brian Frazier of Frazier Asset Management ("FAM") with respect to the amounts payable and accounting of Alvord 287 Joint Venture ("the JV"). As we discussed, we are attempting to reach an amicable resolution of the ongoing dispute regarding the responsibilities and duties related to the JV, which AFI acquired from Jentex Financial, Inc. ("Jentex").

As you know, FAM and Jentex entered into a Joint Venture Agreement dated January 30, 1996, and subsequent Amendments (collectively referred to as the "Agreement"). A copy of the Agreement is attached with this letter for your reference. This letter is notice of my client's written demand for the payment of monies due, for a certified accounting of all records, and an attempt to resolve this matter without litigation.

(1) Pursuant to Article IV: Books of Account (original Joint Venture Agreement):

> *The Joint Venture shall keep and maintain correct and complete books of account at all times, showing Joint Venture assets and liabilities and all income received and all monies paid out, which said books shall be kept at the office or offices of the Joint Venture and used in common by the Joint Venturers so that any one of them may have access thereto at all times without interruption or hindrance from the other.*
>
> *Said books and records shall be kept in accordance with generally accepted accounting principles.*

(2) Pursuant to Article V: Joint Venturer's Duties (original Joint Venture Agreement):

> *Jentex Financial, Inc. will: Service all loans resulting from the sale of tracts out of the said land. Prepare a monthly accounting to the Venturers.*
> *Prepare year-end documents and financials.*
> ***Maintain a bank account for the Joint Venture and account monthly for all transactions. [emphasis added]***

(3) Pursuant to Article IX: Bank Accounts (original Joint Venture Agreement):

> *Accounts in the name of the Joint Venture shall be maintained in such bank or banks as the Joint Venturers shall from time to time select. All money in the Joint Venture and all instruments for the payments of money when received shall be deposited to the credit of the Joint Venturer [on] a timely basis. All checks drawn on any bank account shall be signed and drawn by both Joint Venturers if more than $10,000.00 in amount.*

(4) Pursuant to Article XV: Binding Effect:

> *This Agreement shall be binding on the Joint Venturers, their heirs, personal representatives and assigns.*

(5) Pursuant to Article V: Joint Venture's Duties (Second Amendment to Joint Venture Agreement):

> *Jentex Financial, Inc. will:*
> *Service all loans resulting from the sale of tracts out of the said land.*
> *Prepare a bi-monthly [as amended] accounting to the Venturers.*
> *Prepare year-end documents and financials.*
> ***Maintain a bank account for the Joint Venture and account monthly for all transactions. [emphasis added]***

(6) Pursuant to Article IX: Bank Accounts (Second Amendment to Joint Venture Agreement):

> *Accounts in the name of the Joint Venture shall be maintained in such bank or banks as the Joint Venturers shall from time to time select. All money in the Joint Venture and all instruments for the payments of money when received shall be deposited to the credit of the Joint Venturer on a timely basis. All checks drawn for more than $10,000.00 on any bank account shall be signed by both Joint Venturers; however, either Joint Venturer may waive this provision if notified by the other Joint Venturer in advance and giving authorization for such check to the signing Joint Venturer; this provision shall be retroactive to include checks drawn to date as well as those from this dated forward.*

As indicated by Letter dated September 9, 2014, from you to Frazier Asset Management (the "Letter"), AFI is now responsible for all the duties previously held by Jentex, as acknowledged by you as follows:

> *AFI was given the opportunity to purchase Jentex's Joint Venture interest. It has completed that transaction and therefore stepped into the role of Jentex in The 287 Alvord Joint Venture. AFI will handle all of the Jentex duties as set forth in the Joint Venture Agreement and subsequent amendments.*

Accordingly, and pursuant to the terms of the Agreement specifically referenced above, my client demands: (1) **<u>a certified accounting from the date of AFI's acquisition of the Jentex interest to present, (including a certification that such information is true and correct and, within 30 days, an independent audit from a certified public accountant hired by the JV), and (2) payment of all monies currently due FAM</u>**.

AFI was solely responsible for completing its due diligence to fully understand the terms and obligations created by the Agreement prior to assuming those duties through acquisition of Jentex's interest. Under the terms of the Agreement, AFI has a clear and concise set of duties, including a continuing responsibility to service the loans for the life of the JV and to maintain a JV bank account. Not only were these obligations clearly stated in the Agreement, they were <u>repeated</u> in a subsequent amendment,

Obviously, the obligations held by Jentex, and acquired by AFI, do not terminate when the subdivision sells out. Nor does the method of accounting change simply because AFI has assumed that responsibility. The Agreement, as it was written, governed the operation of the JV for 18 years prior to AFI's acquisition. FAM has fulfilled its obligations under the terms of the JV Agreement, and is more than willing to fulfill future obligations, if any, under the terms of the existing Agreement. FAM has no interest in terminating the Agreement or splitting the venture; especially given that FAM has fulfilled its part of the bargain and AFI's responsibilities have yet to be completed.

The fact that AFI is comingling the JV funds in an account with "450 loans" is itself disturbing. Even if loan payments are receipted by AFI, as the servicing company, that is not a valid reason to refuse to maintain a separate JV bank account, as plainly established under the Agreement. Past use of the third party servicing company to collect payments, which you referenced during our conversation, does not negate the fact that the payments were then transferred to the JV account in a timely manner, and <u>then</u> split between the joint venturers. We have been informed that AFI has already denied FAM the ability to audit the comingled account; and as to maintaining the JV bank account, has cited only the fact that, "it is not worth the time or effort to just transfer the money from one account to the other." Especially given that AFI is unwilling to allow FAM to audit the comingled account to track the funds that the JV is entitled to, a separate account (as required by the Agreement) is more than a reasonable request; it is a fiduciary duty. The Agreement clearly indicates that a separate account is to be maintained for collection of payments and expenses to be drawn.

As AFI has unilaterally attempted to change the nature of the JV Agreement, FAM is legitimately concerned about the current state of the accounts. In order to overcome those concerns, they have, reasonably, asked that an independent accountant be hired by the JV to review and audit the records.

During our conversation, you indicated that AFI will provide a full bring-to-date accounting along with a check to FAM for the amount currently due and owing within the next few days. Since AFI insists on making payments from an account not held in the name of the JV, you are hereby notified that FAM will deposit such payment if it is received with a certified accounting ("Accounting Certification" form attached) from the date of acquisition; and further, only on the understanding that FAM (1) is in no way accepting any changes to the Agreement as it is written, (2) is not authorizing or endorsing the comingling of JV funds with the servicing company account, AFI account, or any other account that is not in the name of the JV, (3) is not waiving its right to future accountings, or any future claims they may have regarding the accounting and record keeping, and that (4) an independent CPA hired by the JV will be given access to audit and review all financial statements, supporting ledgers, receipts, and any other records necessary to prove the accounts within 30 days from the date the payment and accounting is offered to FAM.

Based on your assertion, Frazier Asset Management anticipates receiving payment, along with a certified bring-to-date accounting, within the next few days. I urge you to give this matter your immediate attention.

Regards,

*KG*

Kelly Gongloff

Attachments

cc: (via email) Brian Frazier