# Milbern Ray and Company
### L.L.P.
#### Certified Public Accountants

MILBERN D. RAY, C.P.A., 1933-2006
RONALD D. RAY, C.P.A.
KENT A. RAY, C.P.A.

4831 Merlot Avenue, Suite 320
Grapevine, Texas 76051

P.O. Box 849
Bedford, Texas 76095-0849
(817) 552-7661 Metro (817) 552-2895
FAX (817) 552-1391
www.milbernray.com

MEMBER
AMERICAN INSTITUTE
OF CERTIFIED PUBLIC
ACCOUNTANTS

## INDEPENDENT ACCOUNTANT'S REPORT
## ON APPLYING AGREED-UPON PROCEDURES

To the Attorney for the Plaintiff
Caleb Moore
Law Firm of Caleb Moore, PLLC
2205 Martin Drive, Suite 200
Bedford, TX 76021

To the Attorney for the Defendant
M. Jason Ankele
Sullivan & Cook, LLC
600 Las Colinas Blvd. East, Suite 1300
Irving, TX 75039

To the partners of the Alvord 287 Joint Venture
Frazier Asset Management, Inc. (Plaintiff) and Anson Financial, Inc. (Defendant)

We have performed the revised procedures enumerated below, which were agreed to by Caleb Moore and Jason Ankele (the specified parties) on October 25, 2019, regarding the financial records of the Alvord 287 Joint Venture (the Joint Venture) for the period of September 1, 2014 to October 31, 2018. Anson Financial, Inc.'s (Anson) management is responsible for financial records of the Alvord 287 Joint Venture. The sufficiency of these procedures is solely the responsibility of Caleb Moore and Jason Ankele. Consequently, we make no representation regarding the sufficiency of the procedures described below either for the purpose for which this report has been requested or for any other purpose.

The procedures and associated findings are as follows, and were completed based on the financial records from the Joint Venture's QuickBooks (QB) backup file dated August 2, 2019 at 8:17 pm, and were specific to the period of September 1, 2014 to October 31, 2018:

1. <u>Due to/due from balance with Anson.</u>
    a. Recalculate the balances in various Joint Venture due to/due from accounts with Anson. Agree activity to supporting entries as defined below. The various Due to/Due from account as identified in QB are:
        i. AFI Payments
        ii. AFI Receivables
        iii. Cash Bank – Note: This is not a true cash account, per AFI this account was set up in QB as a cash account to utilize functionality within QB.



**Findings:**
See attached Exhibit 1 for the balances in the various due to/from accounts at month-end from September 2014 to October 2018. The balance in the various due to/from accounts in QB was a debit of $391,367.64 (i.e. The Joint Venture was due that amount from Anson) at 10/31/2018. The following exceptions were noted:

**Timing differences:** Timing differences had no final impact on the due to/from balance at 10/31/2018; however the monthly balances were impacted as outlined in Exhibit #1. The following items were noted:
- The September through December 2014 loan servicing fee was booked on 12/31/2014. Since the loan servicing fee for September through November 2014 was not booked in the correct month the balance in the due to/from account was overstated by a cumulative $491.11 at 9/30/2014, $980.99 at 10/31/2014, and $1,512.10 at 11/30/2014. The timing difference resolved itself by 12/31/2014 and this entry had no impact on the 12/31/2014 balance in the due to/from accounts.
- The entry for the sale of Lot #92 was entered into QB in July 2015; however, per the 10/25/2019 HUD Final Spreadsheet (HUD spreadsheet) the sales date was in August 2015. The balance in the due to/from accounts was overstated by $958.37 at 7/31/2015. The timing difference resolved itself by 8/31/2015 and this entry had no impact on the 8/31/2015 balance in the due to/from accounts.
- The entry for the sale of Lot #44 was entered into QB in October 2016; however, per the HUD spreadsheet the sales date was in September 2016. The balance in the due to/from accounts was understated by $27,650 at 9/30/2016. The timing difference resolved itself by 10/31/2016 and this entry had no impact on the 10/31/2016 balance in the due to/from accounts.
- The entry to book the October 2017 notes receivable activity from the Notesmith report was entered into QB in November 2017, instead of October 2017. The balance in the due to/from accounts was understated by $35,290.11 at 10/31/2017. The timing difference resolved itself by 11/30/2017 and this entry had no impact on the 11/30/2017 balance in the due to/from accounts.
- The entry to book the December 2017 notes receivable activity from the Notesmith report was entered into QB in January 2018, instead of December 2017. The balance in the due to/from accounts was understated by $9,164.58 at 12/31/2017. The timing difference resolved itself by 1/31/2018 and this entry had no impact on the 1/31/2018 balance in the due to/from accounts.

**Adjusting entries:** Anson booked multiple entries to adjust balances in various accounts in order to make the QB file agree to prior tax returns and/or prior financial statements. These adjusting entries were all booked at either year-end or at 10/31/2018, the period ending for this report. These adjustment were either unsupported or should not have impacted the balance in the due to/from accounts. The impact to the due to/from accounts from these entries resulted in an understatement of $42,078.12. See Exhibit 1 for the impact by month.

**Other noted exceptions:**
**Duplicate amounts:**
- An entry on 10/3/2014 associated with the sale of Lot #68, appeared to be a duplicate entry that understated the due to/from balance by $1,005.17. The offsetting side of this entry was the fixed asset balance which was not in scope for this engagement.
- An entry on 3/28/2015 associated with the sale of Lot #15, appeared to be a duplicate entry that overstated the due to/from balance by $586.91. The offsetting side of this entry was the fixed asset balance which was not in scope for this engagement.

**Other miscellaneous clean up entries that should not have impacted the due to/from accounts:**
- Three entries booked on 10/8/2014 associated within cleaning up the balance sheet after Anson took over for a previous joint venture partner. The entries should not have impacted the balance in the various due to/from accounts and understated the balance in the due to/from account by $6,036.14.
- Four entries booked between January and March 2015 that adjusted the fixed asset balance, which was not in scope for this engagement, and increased the balance in the due to/from accounts which overstated the balance by $1,885.85. Adjustment to the fixed asset balances should not have any direct impact on the due to/from account balances.

- An entry on 9/30/2016 booked to adjust partner's equity by $4,625 that should not have impacted the due to/from accounts. The net impact understated the due to/from accounts by $4,625.00.

**HUD Expenses:**
- The due to/from account balance was overstated by $3,000 from the 6/5/2015 entry which didn't reflect the $3,000 in commission paid on the sale of Lot #65. Also see Procedure #8 a.
- The due to/from account balance was overstated by $550 from the 6/5/2015 entry which understated settlement closing fee expense by $50, see Procedure #8 a), and understated the balance in mortgage loan receivable account by $500.00, see Procedure #3.

**Notesmith Entries:**
- The month end entries from October 2014, October 2015, November 2015, February 2016, and December 2017 did not agree to the corresponding month Notesmith report. The net impact of these five entries understated the balance in the due to/from account by $3,157.11, also see Procedure #3.
- Lot #15 was foreclosed on 6/30/2017 and removed from the Notesmith reports; however, the entry to adjust the monthly entry for the non-cash portion associated with the foreclose of Lot #15 was not entered. This overstated the balance in the due to/from accounts by $28,476.99. Also see Procedures 3 and 7.

**Other:**
- A true-up entry from 1/1/2016 which was applicable to earlier QB versions was no longer relevant and should have been removed from 8/2/2019 QB file. The entry overstated the due to/from balance by $1,805.17.

After all adjustments the balance in the due to/from account was understated by $18,010.89 at 10/31/2018, see Exhibit #1 for the impact by month.

2. Accrual balance in the various Reserve Accounts:
   a. See expense Procedure 8 c).

   **Findings:**
   See expense Procedure 8 c).

3. Notesmith Reports
   a. Agree entries in QB file to monthly Notesmith reports. This includes activity to Mortgage Notes Receivable, Unearned discounts, Mortgage interest income and note discount income.
   b. Test via sample payments received to Notesmith reports and agree to activity per NotesSmith reports to note amortization tables. Trace payments to bank statements, if needed. Recalculate amounts due as of each year-end and as of 10/31/2018.

   **Findings:**
   **Monthly QB Entries** – the QB entries to post the month-end Notesmith activity agreed to the Notesmith reports with the following exceptions:
   - October 2014 – Mortgage interest income was understated by $820.42, Notes discount income was understated by $93.77, and notes receivable was understated by $95.56. See Procedure #1 for the impact to the due to/from accounts.
   - October 2015 – Mortgage interest income was understated by $448.51, Notes discount income was understated by $81.45, and notes receivable was understated by $25.77. See Procedure #1 for the impact to the due to/from accounts.
   - November 2015 – Mortgage interest income was understated by $447.62, Notes discount income was understated by $82.13, and notes receivable was understated by $25.98. See Procedure #1 for the impact to the due to/from accounts.
   - February 2016 – Mortgage interest income was understated by $657.02, Notes discount income was understated by $104.11, and notes receivable was understated by $46.60. See Procedure #1 for the impact to the due to/from accounts.

3

- December 2017 – Mortgage interest income was overstated by $216.47, Notes discount income was overstated by $5.33, and notes receivable was overstated by $6.37. See Procedure #1 for the impact to the due to/from accounts.
- See Procedure #1, timing differences, for impact of Notesmith monthly entries which were not booked to the correct month.

**Lot sales**
- The 6/2/2015 entry to post the sale of Lot #59 understated both Mortgage Notes Receivable and Mortgage unearned discount by $500.00 each. See Procedure #8 a) for the HUD expenses associated with the sale of Lot #59.
- The 2/18/2016 entry to post the sale of Lot #68 understated Mortgage Notes Receivable by $254.70 and unearned discounts by $137.47. The offset was to fixed assets which was not in scope for this engagement.

**Beginning balances:**
Compared the ending loan balances from 7/21/2014 (last reported from prior JV owner) to balances brought into Anson's system on 9/15/2014. Balances appeared reasonable based after adjusting for 2 months of payment activity.

**Ending balances:**

| | |
|---|---|
| Per QB the Mortgage Notes Receivable balance at 10/31/18 was | $929,827.77 |
| Per Notesmith report the balance should be | $900,190.05 |
| QB is overstated by | $ 29,637.72 |
| | |
| Per QB the Mortgage Unearned Discount balance at 10/31/18 was | $(636,847.95) |
| Per Notesmith report the balance should be | $(618,134.34) |
| QB is overstated by | $ (18,713.95) |

The balances associated with the repossession of Lot #15 were not removed from QB, which caused the majority of the overstated amounts above, see Procedure #7.

If this was correct, the 10/31/2018 balance in Mortgage Notes Receivable would be $901,350.78 which would be overstated by $1,160.73 and Mortgage Unearned Discount would be ($616,815.48) which would be understated by $1,318.52

**Test Payments received**
Agreed payment received on 6 loans and traced activity to respective monthly Notesmith report. Recalculated activity due to payment received and only noted trivial rounding and/or timing difference on report.

**Note:** If late fees, service fees, or escrow fees were collected with part of the loan payment received by Anson on behalf of the Joint Venture, these fees were held by Anson and not booked into the Joint Venture's QB file. If the late fee income and expense of $10,770.72, service fee income and expense of $3,985.73, and escrow fee income and expense of ($468.17) had been reported on the QB file, both revenue and expenses for the period would have been $14,288.28, this had no impact to the Joint Venture's net income and since these fees were held by Anson, there was no impact to the due to/from balance.

4. <u>Fixed Assets - Fixed asset balances have been stipulated by both parties and no procedures to be performed.</u>

   **Findings:**
   Not applicable

4

5. <u>Partner Distributions</u> - Agree all payments made to partners to general ledger (G/L), check copies, and bank statements, if needed.

    **Findings:**
    **Distributions to Frazier Asset Management (Frazier):**
    Agreed Frazier distributions entries totaling $223,000 to entries that lowered the balance that the Joint Venture was due from Anson. Agreed entries to copies of checks from Anson to Frazier for $143,000 and agree entries to copies of check from Anson to Tarrant County District Clerk for $80,000. The checks payable to the Tarrant County District Clerk had the current cause number noted on the checks and plaintiff's attorney said the payments were remitted to Frazier. No exceptions noted.

    **Distributions to Anson:**
    Agreed Anson distribution entries totaling $223,000 to entries that lowered the balance that the Joint Venture was due from Anson. No checks copies were reviewed for Anson distributions, since the cash was already in Anson's possession, the Anson distributions were a bookkeeping entry. No exceptions noted.

6. <u>Lots Sales</u> - Agree lot sales to the 10/25/2019 HUD spreadsheet, which has been stipulated by both parties, have been entered into QB file. Agree lot sales to fixed asset subledger, notes receivable (Notesmith reports) (if applicable), agreement payments received.

    **Findings:**
    From the lot inventory report that was agreed to by both parties, agreed that all lots in inventory as of 9/14/2014 were report as sold per the 10/25/2019 HUD spreadsheet that was agreed to by both parties. The following lots were noted as still in inventory at 10/31/2018:
    - Lot #79 – Has a gas well on part of the lot which prevents it from being sold, per Anson.
    - Lot #80 – Has a gas well on part of the lot which prevents it from being sold, per Anson
    - Lot #95 – includes part of the road per Anson

7. <u>Repossession activity</u>
    a. <u>Obtain a schedule of repossessed lots during the period. Trace activity from supporting documents to Notesmith reports and the QB file.</u>

    **Findings:**
    Six lots were noted as having foreclosure activity during the period reviewed. The six lots were removed from the Notesmith Reports, however four of the six lots were removed in a month that differed from the foreclosure paperwork. This had no impact on the JV's Income statement or the due to/from activity, it simple overstated the balance in both the Mortgage Notes Receivable and Mortgage Unearned Discount accounts, and understated Lot inventory.

    All the lots were removed from QB in the same month as the Notesmith entry except for the following: Lot #15 was foreclosed on 4/4/2017 and removed from the Notesmith report on 6/29/2017, however the loan balance was not removed from the QB file. See Procedure 3 Ending Balances regarding the impact to the Mortgage Receivable Balance. The impact to the due to/from account is noted in Procedure 1.

8. <u>Expenses</u> –
    a. <u>HUD Expenses</u> – Agree HUD expenses in the QB file to the 10/25/2019 HUD spreadsheet, which has been stipulated by both parties.

    **Findings:**
    Except for the following, the HUD related expenses for the Joint Venture agreed to the 10/25/2019 HUD spreadsheet:

5

Timing difference – Two lot sales were entered with an incorrect accounting period in QB (i.e. entered into the wrong month) per the HUD spreadsheet. The expense amounts were entered correctly and the timing difference which impacted the balance in the due to/from accounts is noted in Procedure 1.

Noted differences: See Procedure 1 for the impact to due/from accounts for each items below:
- Lot #59 – Settlement closing fee per HUD spreadsheet was $250.00, however the QB entry had $200.00. Down payment per the HUD spreadsheet was $2500.00, however the QB entry had $3000.00
- Lot #65 – Commission per HUD spreadsheet was $3000.00, QB didn't show any commission expense booked for this sale.
- Lot #71 – The Cash Land Sales entry was overstated by $2,585.19. This lot was sold for $33,000.00, with $3,300.00 in commissions paid per the HUD spreadsheet. The recalculated amount that should have been booked to the due to/from account was $29,700, however $32,285.19 was booked, thus the cash land sales was overstated by $2,585.19. See Procedure 1 for impact to due to/from account.

**Notes:** Anson booked certain revenue items (Down Payments and Cash Land Sales) under expense accounts in QB. This is simply a classification difference in that both total revenue and expenses for the period were understated. These classifications had no impact on the net income for the period and did not directly impact the due to/from account.

We were not engaged to determine the validity of any of the Joint Venture's HUD expenses nor did we agree the HUD spreadsheet to the supporting HUD statements for each transaction.

b. <u>Loan Servicing Fee - Recalculate loan service fee and agree entries to QB file.</u>

**Findings:**
Anson charged the Joint Venture a monthly loan servicing fee that was calculated at 1% of the prior month's outstanding Mortgage Notes Receivable balances. Except for the following, the loan servicing fee was recalculated and booked without exception:

- The loan servicing fee was overstated by $112.13, due to a 1/1/2016 true-up entry that was not removed after Anson made other corrections to the QB file. See Procedure 1 for the impact to the due to/from account.

c. <u>Accruals – Verify that accrual entries are posted to Balance Sheet accrual accounts.</u>

**Findings:**
The accrual entries in the "Bad Debt Expense" account were all offset to one of the three reserve accounts on the balance sheet. The balances in the various reserve account were as follows:

| Date | Reserve for Delinquent Taxes | Reserve for Road | Reserve for Septic Repairs |
|---|---|---|---|
| 12/31/2014 | $0 | $0 | $0 |
| 12/31/2015 | $10,000 | $0 | $0 |
| 12/31/2016 | $10,000 | $0 | $45,000 |
| 12/31/2017 | $10,000 | $50,000 | $45,000 |
| 10/31/2018 | $10,000 | $50,000 | $45,000 |

These entries were non-cash transactions and had no impact on the amount that the Joint Venture was due from Anson.

6

The "Bad Debt Expense" account name on the income statement does not reflect the true purpose of the expense. A more reflective account description would have been: Delinquent Tax Reserve Expense, Road Repair Reserve Expense, and Septic Repair Reserve Expense.

**Note:** We were not engaged to determine the validity of any of the Joint Venture's expenses.

d. <u>All other expenses – verify that other expenses (i.e. expenses that were not HUD, Loan Servicing Fee, or Accrual expense) tie to due to/due from activity.</u>

**Findings:**
Except for the following, agreed other expenses entries to offsetting activity in the various due to/due from accounts:

- There were 224 entries for a total of $44,151.14 that were not booked directly to one of the various due to/due from account, however were booked to Account Payable – J. Michael Ferguson, PC. This account was utilized for invoices from J. Michal Ferguson, PC, a related company to Anson, and these transactions were periodically cleared out to a due to/due from account. If the outstanding balance in the Account Payable – J. Michael Ferguson, PC, had been cleared to a due to/due from account the balance that the Joint Venture was due from Anson would have been lower by the following amount:

| Date | Outstanding balance at |
|---|---|
| 12/31/2014 | $0 |
| 12/31/2015 | $168.00 |
| 12/31/2016 | $0 |
| 12/31/2017 | $0 |
| 10/31/2018 | $1,799.67 |

There was nothing incorrect regarding how these entries were booked and these entries all eventually cleared out to one of the due to/from accounts.
- An entry on 12/31/2014 increase both the understated expense (expense account) and mortgage interest income (revenue account) accounts by $913.85. The memo on this entry was "Adjust to 2014 tax return". Since this entry increased revenue and expense by the same amount, this had no impact the Joint Venture's net income and did not impact the amount that the Joint Venture was due from Anson.

**Note:** We were not engaged to determine the validity of any of the Joint Venture's other expenses.

This agreed-upon procedures engagement was conducted in accordance with attestation standards established by the American Institute of Certified Public Accountants. We were not engaged to and did not conduct an audit or review, the objective of which would be the expression of an opinion or conclusion, respectively, on the Alvord 287 Joint Venture. Accordingly, we do not express such an opinion or conclusion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

Prior to issuing our report, attestation standards established by the American Institute of Certified Public Accountants requires we request a written representation statement from the management of Anson Financial, Inc. and both the specified parties, Caleb Moore and Jason Ankele, regarding the Alvord 287 Joint Venture engagement for the period from September 1, 2014 to October 31, 2018.

We asked that the owner of Anson Financial, Inc. confirm, to the best of his knowledge and belief, the following representations made to us during the engagement.

1) I am are responsible for the financial records of the Alvord 287 Joint Venture.

7

2) The Alvord 287 Joint Venture's QuickBooks backup file dated August 2, 2019 at 8:17 pm accurately reflected the financial accounts for the period from September 1, 2014 to October 31, 2018.
3) Caleb Moore and Jason Ankele (the specified parties) selected the criteria for the agreed-upon procedures. We are responsible for determining that such criteria are appropriate for our purposes.
4) I have disclosed to you all known matters regarding the Alvord 287 Joint Venture for period from September 1, 2014 to October 31, 2018.
5) I have disclosed to you any communications from regulatory agencies, internal auditors, other independent practitioners or consultants, and others affecting the Alvord 287 Joint Venture.
6) I have provided you with access to all records that we believe are relevant to the Alvord 287 Joint Venture and the agreed-upon procedures.
7) The 10/23/2019 HUD Final Spreadsheet accurately reflected the sales activity and HUD expenses for the period from September 1, 2014 to October 31, 2018.
8) Lots #79, #80, and #95 were still in lot inventory and held by the Alvord 287 Joint Venture as of October 31, 2018.
9) I have responded fully to all inquiries made to us by you during the engagement.
10) No events have occurred subsequent to Alvord 287 Joint Venture's QuickBooks backup file dated August 2, 2019 at 8:17 pm that would require adjustment to or modification of the period from September 1, 2014 to October 31, 2018.

We requested that J Michael Ferguson, owner of Anson Financial, Inc., provide such a statement, however he refused to do so.

In addition, we asked that Jason Ankele confirm, to the best of his knowledge and belief, the following representations made to us during the engagement.

1) I acknowledge that Anson Financial, Inc. is responsible for the financial records of the Alvord 287 Joint Venture.
2) Caleb Moore (Attorney for the Plaintiff) and I are responsible for selecting the criteria and for determining that such criteria are appropriate for our purposes.
3) I have communicated to you all known events occurring subsequent to October 31, 2018, of which we are aware that may have a material effect on the Alvord 287 Joint Venture.
4) The 10/23/2019 HUD Final Spreadsheet accurately reflected the sales activity and HUD expenses for the period from September 1, 2014 to October 31, 2018.
5) I have responded fully to all inquiries made to us by you during the engagement.

We requested that Jason Ankele, Attorney for the Defendant, provide such a statement, however he was instructed by his client, J. Michael Ferguson, not to do so.

This report is intended solely for the information and use of Caleb Moore and Jason Ankele and is not intended to be and should not be used by anyone other than those specified parties.

*[signature]*

December 10, 2019

Grapevine, Texas

8

**EXHIBIT 1 - Alvord 287 JV - Due to/from account with Anson Financial Inc.**

| Month Ending | Various Due to/from QB Accounts ||||| Unadjusted Total in Due to/from Accounts | Adjustments - (Overstated) Understated ||| Adjusted Balance in Due to/from |
|---|---|---|---|---|---|---|---|---|---|
| | Summit Community | Chase | AFI Payment | AFI Receivable | | Timing Differnece | Correction of noted exceptions | Removal of noted period ending adjusting entries by Anson | |
| Sep-14 | 1,615.83 | 100.00 | 23,975.00 | (100.00) | 25,590.83 | (491.11) | - | - | 25,099.72 |
| Oct-14 | 1,615.83 | 5,299.04 | 38,648.33 | (10,855.68) | 34,707.52 | (489.88) | 8,051.06 | - | 41,777.59 |
| Nov-14 | 1,615.83 | 33,799.04 | 42,344.35 | (39,355.68) | 38,403.54 | (531.11) | - | - | 44,942.50 |
| Dec-14 | - | 40,077.00 | 51,497.35 | (44,033.28) | 47,541.07 | 1,512.10 | - | (15,059.52) | 40,532.61 |
| Jan-15 | - | 2,608.98 | 56,327.47 | (6,808.43) | 52,128.02 | - | (999.83) | - | 44,119.73 |
| Feb-15 | - | 3,486.91 | 62,816.09 | (6,808.43) | 59,494.57 | - | (972.93) | - | 50,513.35 |
| Mar-15 | - | (521.18) | 64,859.53 | 0.10 | 64,338.45 | - | (500.00) | - | 54,857.23 |
| Apr-15 | - | (616.18) | 68,895.44 | 0.10 | 68,279.36 | - | - | - | 58,798.14 |
| May-15 | - | (711.18) | 113,076.79 | 0.10 | 112,365.71 | - | - | - | 102,884.49 |
| Jun-15 | - | (806.18) | 152,916.69 | 0.10 | 152,110.61 | - | (3,550.00) | - | 139,079.39 |
| Jul-15 | - | (236.18) | 154,948.21 | 0.10 | 154,712.13 | (958.37) | - | - | 140,722.54 |
| Aug-15 | - | 689.75 | 160,863.09 | (925.83) | 160,627.01 | 958.37 | - | - | 147,595.79 |
| Sep-15 | - | (1,148.47) | 195,520.79 | - | 194,372.32 | 27,650.00 | - | - | 208,991.10 |
| Oct-15 | - | (1,148.47) | 200,610.71 | - | 199,462.24 | (27,650.00) | 555.73 | - | 186,986.75 |
| Nov-15 | - | (1,148.47) | 207,132.54 | - | 205,984.07 | - | 555.73 | - | 194,064.31 |
| Dec-15 | - | - | 161,138.70 | - | 161,138.70 | - | - | 32,774.91 | 181,993.85 |
| Jan-16 | - | - | 226,400.06 | - | 226,400.06 | - | (1,805.17) | - | 245,450.04 |
| Feb-16 | - | - | 234,490.70 | - | 234,490.70 | - | 807.73 | - | 254,348.41 |
| Mar-16 | - | - | 245,567.71 | - | 245,567.71 | - | - | - | 265,425.42 |
| Apr-16 | - | - | 251,428.13 | - | 251,428.13 | - | - | - | 271,285.84 |
| May-16 | - | - | 262,579.33 | - | 262,579.33 | - | - | - | 282,437.04 |
| Jun-16 | - | - | 269,759.91 | - | 269,759.91 | - | - | - | 289,617.62 |
| Jul-16 | - | - | 314,133.89 | - | 314,133.89 | - | (2,585.19) | - | 331,406.41 |
| Aug-16 | - | - | 339,645.20 | - | 339,645.20 | - | - | - | 356,917.72 |
| Sep-16 | - | - | 169,147.72 | - | 169,147.72 | - | 4,625.00 | - | 191,045.24 |
| Oct-16 | - | - | 135,749.21 | - | 135,749.21 | - | - | - | 157,646.73 |
| Nov-16 | - | - | 106,150.56 | - | 106,150.56 | - | - | - | 128,048.08 |
| Dec-16 | - | - | 98,281.66 | - | 98,281.66 | - | - | (2,606.46) | 117,572.72 |

## Various Due to/from QB Accounts

| Month Ending | Summit Community | Chase | AFI Payment | AFI Receivable | Unadjusted Total in Due to/from Accounts | Adjustments - (Overstated) Understated ||| Adjusted Balance in Due to/from |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Timing Differnece | Correction of noted exceptions | Removal of noted period ending adjusting entries by Anson | |
| Jan-17 | - | - | 110,972.63 | - | 110,972.63 | - | - | - | 130,263.69 |
| Feb-17 | - | - | 119,094.34 | - | 119,094.34 | - | - | - | 138,385.40 |
| Mar-17 | - | - | 183,158.77 | - | 183,158.77 | - | - | - | 202,449.83 |
| Apr-17 | - | - | 153,930.57 | - | 153,930.57 | - | - | - | 173,221.63 |
| May-17 | - | - | 105,475.53 | - | 105,475.53 | - | - | - | 124,766.59 |
| Jun-17 | - | - | 145,024.23 | - | 145,024.23 | - | (28,476.99) | - | 135,838.30 |
| Jul-17 | - | - | 151,468.56 | - | 151,468.56 | - | - | - | 142,282.63 |
| Aug-17 | - | - | 162,252.64 | - | 162,252.64 | - | - | - | 153,066.71 |
| Sep-17 | - | - | 109,310.08 | - | 109,310.08 | - | - | - | 100,124.15 |
| Oct-17 | - | - | 104,745.08 | - | 104,745.08 | 35,290.11 | - | - | 130,849.26 |
| Nov-17 | - | - | 149,965.35 | - | 149,965.35 | (35,290.11) | - | - | 140,779.42 |
| Dec-17 | - | 1,238.00 | 105,000.00 | - | 106,238.00 | 9,164.58 | 228.17 | 23,556.04 | 130,000.86 |
| Jan-18 | - | (1,415.17) | 154,687.36 | - | 153,272.19 | (9,164.58) | - | - | 167,870.47 |
| Feb-18 | - | (1,415.17) | 163,736.30 | - | 162,321.13 | - | - | - | 176,919.41 |
| Mar-18 | - | (1,415.17) | 200,638.58 | - | 199,223.41 | - | - | - | 213,821.69 |
| Apr-18 | - | (2,215.17) | 210,690.81 | - | 208,475.64 | - | - | - | 223,073.92 |
| May-18 | - | (2,215.17) | 215,006.19 | - | 212,791.02 | - | - | - | 227,389.30 |
| Jun-18 | - | (2,215.17) | 293,176.28 | - | 290,961.11 | - | - | - | 305,559.39 |
| Jul-18 | - | (2,215.17) | 321,181.33 | - | 318,966.16 | - | - | - | 333,564.44 |
| Aug-18 | - | (2,215.17) | 379,407.74 | - | 377,192.57 | - | - | - | 391,790.85 |
| Sep-18 | - | (2,215.17) | 387,724.60 | - | 385,509.43 | - | - | - | 400,107.71 |
| Oct-18 | - | (2,215.17) | 393,582.81 | - | 391,367.64 | - | - | 3,413.15 | 409,379.07 |
| Total | | | | | | - | (24,066.69) | 42,078.12 | |