**Ferguson & Associates, LLC**
ATTORNEYS AT LAW
62 Main St., Suite 310
Colleyville, TX 76034

J. Michael Ferguson
Board Certified
Residential Real Estate

Phone (817) 267-1008
Fax  (817)485-1117
Email: mike@fnalegal.com

September 16, 2019

Mr. Hendricks,

First, thank you for getting back to me.

Next, I have included a spreadsheet that has all our emails. It is clear that you had the complete file by March 9, 2019.

Next, I think it is best if we go through the agreement in detail to make sure exactly what we agreed to.

I also think it is necessary to get some clarification on the Agreed Upon Procedures ("AUP").

The Milburn Ray Agreement states:

"Our engagement to apply agreed-upon procedures will be conducted in accordance with attestation standards established by the American Institute of Certified Public Accountants. The sufficiency of the procedures performed or to be performed is solely the responsibility of Frazier and Anson and we will require an acknowledgement in writing of that responsibility. Consequently, we make no representations regarding the sufficiency of the procedures described in the attached schedule either for the purpose for which the agreed upon procedures report has been requested or for any other purpose." P. 1, Paragraph 2 of the Agreement.

"Because the agreed upon procedures listed in the attached schedule do not constitute an examination or review, we will not express an opinion or conclusion on the Joint Venture. In addition, we have no obligation to perform any procedures beyond those listed in the attached schedule" P. 1, Paragraph 3 of the Agreement

     Milburn Ray agreed to not express any opinion or conclusion during the "Agreed Upon Procedures." However, the sticking point has been Kyle Hendricks expressing his opinion on what are "Best Accounting Procedures" or why we should not use Contra Accounts or how it is not good to bundle expenses. I have consistently stated that I just wanted Milburn Ray to do 2 things,
1. report what the numbers are
2. tell the truth.

I have consistently stated, if there is no invoice, state that and move on. That is why I provided the FASB rules on the different methods to review items. It was not Milburn Ray's position to determine what is sufficient in verifying the data. Adding up the Invoices provided and comparing to the expenses would be a method of verifying the expenses. The historical figures for the electric bill plus the statements provided with canceled checks provided make it clear that the JV has a monthly electric bill for the streetlights in the subdivision.

I have tried to figure out how the fees charged by Milburn Ray could get so high on a small company like this in which:

1. Both Parties agreed to the beginning balances as of 9/1/2014. That means the loan balances were agreed to, yet on 5/20/2019, there are spreadsheets in which Kyle is testing the beginning balances. The parties agreed to the beginning balances and the agreement states the Parties control.
2. On May 3, 2019, Caleb Moore's email stated that he was fine with accepting the minimum amount of verification on the loan balances, payments received, etc. Milburn Ray had pay histories in PDF format and in electronic format. This is a simple calculation in which Number of Payments remaining can be tested and the Current Balance can be tested with Financial Functions.

> On Fri, May 3, 2019 at 10:26 AM Caleb Moore <cmoore@thedfwlawfirm.com> wrote:
>
> Hi Kyle:
>
> Not 100% sure this answers the questions, so let me know if not.
>
> There is no dispute over inventory as of the 9/14/14 list that was sent out. After that, there were some foreclosures and sales, I believe, so there would be some fluctuation in that inventory. However you track that is fine with us.
>
> We are open to any way you want to track the money coming in that satisfies you and saves time. If the records that Anson generated, Notesmith Files, etc track/match what should be coming in based on the note's amortization schedules for the notes then we are fine with you accepting that number with whatever you consider the minimum amount of verification.
>
> I think the disagreements in this case relate much more to what happened to the money after it arrived in Anson's possession.

Mr. Moore has declined to meet with me and Kyle Hendrick each time we suggested it. Other than the above email, he has declined to have an opinion of what he thinks the sufficiency of the procedures are.

Mr. Moore has never wanted anything but the bank statements of Anson. The money spent on this Agreed Upon Procedure was a waste of time and effort by everyone. Mr. Moore and his client, according to the Texas Business Code and the Joint Venture agreement, are simply not entitle to those records, yet we have provided them to try and reach a conclusion to this matter.

Mr. Moore, in numerous emails, has asked for Milburn Ray to require bank statements. He has now filed a Motion to Compel and for sanctions and stated he needs to see the bank statements.

However, the flaw in is rationale is that the income piece of this is not in dispute. Kyle has stated numerous times that the income, loan balances, has all tracked pretty close, as it should. Even Caleb Moore as acknowledged in his email that there is no real dispute over the income received from the notes.

The only real issue right now are the expense items. In my opinion, those should not even be an issue. There is no need for bank statements to prove up expense items. The Invoices, canceled checks, emails, credit card charges, potential liability facing the Joint Venture as well as other items can and will verify the expense items.

Mr. Moore's decision to play this game instead of participating in the Agreed Upon Procedures, as he should have been, plays a big part of what is causing our current predicament with Milburn Ray. Two parties in a dispute, a court order and no matter what, Anson will be talked about in a bad light. Therefore, I feel Anson is left with no choice but to deal with this head on with Milburn Ray and with Mr. Moore.

As I stated before, the $32,000 to $35,000 was an extremely high figure to review and report only on:

> 63 transactions of sold real estate of which
>
> a) 43 are lots that were sold **after 9/1/2014**
> b) 7 of the 43 lots sold were foreclosed and sold a 2nd time
> c) 1 of the 43 lots is Lot 79 which was canceled and traded for another lot due to the gas well on the lot.
> d) Of the 43 lots that were sold all the expense items, and yes even the contra expense items are in HUD's with the exception of 1 or 2 in which commissions and cost were paid outside of closing because the Borrower used an FHA loan to purchase the lot.
> e) Of the expenses contained in the 43 lots being sold, that accounts for a majority of the regular expenses, i.e. not a bad debt expense or a reserve account. These items can be verified in numerous ways so I am mystified why there is any issue at all with the lot sales but there seems to be.

I would use the billing statement of Milburn Ray, but ironically, Milburn Ray too bundled its time as can be seen by a portion of the detailed billing statement below. "Miscellaneous Accounting Service" and "Write Up Services" fail to disclose in detail what was being done. Therefore, there is no way to tell what you did or when you did it. Instead, I will just go through the procedures one by one and then with the 35 years of experience that I have in this field, I will give an estimate of how much time it should take. We have tested this on some items such as going through the HUDs and entering the data in a spreadsheet took 4 hours.

| WIP - 0 - ALVORD 287 JOINT VENTURE - | | | | | Rate | Hours | Amount |
|---|---|---|---|---|---|---|---|
| ACCT | 400 | 401 Write Up Services | RAY,KENT ( | 6/4/2019 | 255.00 | 0.25 | 63.75 |
| ACCT | 400 | 408 Miscellaneous Accounting S | HENDRICK,K | 6/4/2019 | 235.00 | 3.25 | 763.75 |
| ACCT | 400 | 408 Miscellaneous Accounting S | HENDRICK,K | 6/5/2019 | 235.00 | 6.50 | 1527.50 |
| ACCT | 400 | 408 Miscellaneous Accounting S | HENDRICK,K | 6/6/2019 | 235.00 | 3.00 | 705.00 |
| ACCT | 400 | 408 Miscellaneous Accounting S | HENDRICK,K | 6/7/2019 | 235.00 | 0.50 | 117.50 |
| ACCT | 400 | 408 Miscellaneous Accounting S | HENDRICK,K | 6/10/2019 | 235.00 | 2.50 | 587.50 |
| ACCT | 400 | 408 Miscellaneous Accounting S | HENDRICK,K | 6/11/2019 | 235.00 | 8.75 | 2056.25 |
| ACCT | 400 | 401 Write Up Services | RAY,KENT ( | 6/11/2019 | 255.00 | 0.50 | 127.50 |
| ACCT | 400 | 401 Write Up Services | RAY,KENT ( | 6/12/2019 | 255.00 | 0.75 | 191.25 |
| ACCT | 400 | 408 Miscellaneous Accounting S | HENDRICK,K | 6/12/2019 | 235.00 | 6.75 | 1586.25 |
| ACCT | 400 | 408 Miscellaneous Accounting S | HENDRICK,K | 6/13/2019 | 235.00 | 6.00 | 1410.00 |
| ACCT | 400 | 408 Miscellaneous Accounting S | RAY,KENT ( | 6/13/2019 | 255.00 | 0.25 | 63.75 |
| ACCT | 400 | 401 Write Up Services | RAY,KENT ( | 6/17/2019 | 255.00 | 0.25 | 63.75 |
| ACCT | 400 | 408 Miscellaneous Accounting S | HENDRICK,K | 6/17/2019 | 235.00 | 0.25 | 58.75 |

As part of the Agreement, Milburn Ray demanded the items set out in Exhibit 2 below:

By March 9, 2019, Milburn Ray had the Balance Sheet that Showed the Assets, Liabilities and Equity Accounts and both Anson and Frazier agreed to those balances. Milburn Ray was provided with detailed list of

1. The lot inventory as of 9/1/2014 including the cost basis left
2. The loan/Notes Receivable Balances including Unearned Discount and the Cost Basis in those loans.
3. The Asset list which consisted of 3 tracts of land; Lot 79, 80 and Lot 97.
4. The QuickBooks File.
5. All the invoices and expense items from 9/1/2014.

This can be verified by the chain of emails, Office 365 as well as many other methods. Therefore, Anson complied with the request under Exhibit 2.

**Exhibit 2 – Written assertion about the financial records of the Alvord 287 Joint Venture**

As of 9/1/2014, the date that Anson Financial, Inc. (Anson) purchase of Jentex Financial, Inc. 50% interest in the Alvord 287 Joint Venture (the Joint Venture). **All items must be signed off by both partners agreeing that balances were agreeable as a starting point.**

Balance Sheet
Note Payable/Loan Balance – Detailed report if more than one lender was being used.
**Notes Receivable (Borrowers) Balance – Detailed report by clients account of all** receivables. (borrowers) being serviced/held by the Joint Venture.
Asset list that details all land/lots owned.

Finally, this leaves us with the actual Agreed Upon Procedures. I will make the comments as well as the time I estimated that would be spent if the items was just reviewed and reported as the Agreement stated it would be:

## Exhibit 1 – Agreed upon procedures

Cash
Agree cash receipts and disbursements to bank statement, if needed, including notes receivable, loan payments, partner distributions and expenses.

| Item | Memo | Est. Time |
|---|---|---|
| 1 | The Summit Account was closed shortly after Anson purchased Jentex's interest in the JV. **Frazier was not on the checking account and Frazier was never a signor on any checking account.** | 1 |
| 2 | The Chase Account was never used, and it should not have been included in the QuickBooks. However, it was and as I have stated before, we did not want to delete anything because we felt we would be accused of wrongdoing. My point was proven here. I have tried to do whatever Kyle Hendrick requested to make this as quick and easy as I could.  That has instead caused more problems with Milburn Ray declaring it will take hours to verify the changes. Caleb now declares Anson changed the books multiple times. The only reason any change was made is because Kyle consistently refused to just mark the expenses as they are and get on with the report. The Net Profit on the P&L did not change. The Balance Sheet did not change. They still match the Tax Returns for 2014, 2015, 2016, 2017 and 2018. Unbundling the expenses only added transactions. It did not change the end result. The account has only been used as an in/out account and any in/out account will go back to $0. | 4 |
| 3 | Report | 1 |

Recalculate balances and activity in Alvord 287 JV due to/due from account on Anson's books.

| Item | Memo | Est. Time |
|---|---|---|
| 1 | This is just an in/out account to keep tract of what is available after expenses. It is used in every account though so it is hard to estimate this time. | 8 |
| 2 | Report | 2 |

Notes Receivable
Agreement payments received to note amortization tables. Trace payments to bank statements, if needed. Recalculate amounts due as of each year-end and as of 10/23/2018.
Confirm all new note receivables were added to the notes receivable sub-ledger.

| | | |
|---|---|---|
| 1 | I had 2 people in our office create 63 amortization schedules and they did so in a little over 1 hour. Therefore, I will estimate 2 hours to generate amortization schedules. Every loan was bookmarked, the note, HUD, and Deed of Trust was bookmarked so even though there are over 1500 pages, anyone can quickly find the notes and create the schedule. | 2 |

| | | |
|---|---|---|
| 2 | Every pay history was provided in PDF format so to compare each loan to the pay history and Amortization Schedule could take an estimated 10 hours. Roughly 10 min. per loan. With the information provided, a spreadsheet would be created with the items entered for later use in the Interest Income Section below. | 10 |
| 3 | Once the spreadsheet is completed, it would be correct to test the current balances, the number of payments remaining and the actual payments. These are all financial functions which can be used in any excel spreadsheet and **Kyle Hendricks did do that and he agreed the loans were within the correct balance area and the remaining payments were accurate**. | 1 |
| 4 | Copies of all checks, money orders, ACH payments, etc. were provided by Anson. There are well over a thousand items if I am not mistaken. Because Caleb Moore and Anson stated that they felt the Income piece of this was not in disagreement, just spot checking the payments would be more than sufficient. Kyle could have looked up 10 percent of the payments or 100 items and spot checked against the pay history. I feel 8 hours is generous here because is not that necessary if all the calculations are matching up as they do. In 35 years that we have conducted business, we have bought thousands of loans which entails the same method of determining that balances are correct, terms are correct, etc. and looking at actual checks is not a method that we have ever used. Especially when Mr. Moore is stating to Kyle Hendrick that using the minimal method to verify is sufficient. Per the Agreement, the Parties, Frazier and Anson are to decide what level of verification is sufficient. | 8 |
| 5 | Report | 2 |
| | | |

**Fixed Assets**
Obtain a list of assets owned. Trace activity to supporting documentation. Vouch any capitalized expenses. Recalculate balances as of each year-end and as of 10/23/2018.

| Item | Memo | Est. Time |
|---|---|---|
| 1 | There are only 2 lots remaining and the road within the development. I provided Kyle with the Wise County Tax Data that confirms the ownership and the Parties both agree that is the only property that remains in the JV Name. Therefore, I am estimating ½ hour. | .5 |
| 2 | Report – just copy and paste the Tax Account information | .5 |
| | | |

## Loan Payable
- (Affiliate loan payable and Bank Notes)

| Item | Memo | Est. Time |
|---|---|---|
| 1 | There are none so this is not applicable | 0 |
| 2 | Report | 0 |

## Partner Distributions
Agree all payments made to partners to general ledger (G/L), check copies, bank statements, if needed.

| Item | Memo | Est. Time |
|---|---|---|
| 1 | There is no dispute and it is well documented what was paid to Frazier. All that needs to be done here is take the copy of the checks and compare to the Frazier Equity Account. Kyle has done this because he asked me why some money was paid into the Court and not to Frazier. | .5 |
| 2 | Report | .5 |

## Interest Income
Recalculate interest earned from notes receivable

| Item | Memo | Est. Time |
|---|---|---|
| 1 | As I stated, we had 2 people in the office generate 63 amortization schedules in a little over an hour. Then you just do a query on each one that ends as of 10/23/2018. Finally, you would add that up. 4 hours is more than generous as you have already generated these schedules in the step above. This can be compared to the summary reports and the pay histories on each loan as well as matching it up to the totals for each year. | 4 |
| 2 | Report | 2 |

## Calculation of Loan Service Fee by Anson
Recalculate loan service fee

| Item | Memo | Est. Time |
|---|---|---|
| 1 | Kyle Hendrick was provided the summary sheet used by Anson and it has the monthly calculations on the loans since 9/1/2014. This calculations is simply (Beginning Balance at start of the month x 1%)/12 for the monthly fee. I estimated .5 to review and .5 to report. | .5 |
| 2 | Report- Kyle did confirm this calculation | .5 |

### Lots Sales
Obtain a schedule of sales during the period. Agree lot sales to fix asset subledger, notes receivable (if applicable), agreement payments received.

| Item | Memo | Est. Time |
|---|---|---|
| 1 | I have gone through this step personally and it takes about 4 hours to go through 43 HUDs and put the figures in a spreadsheet. However, once you have that it can be used to compare against QuickBooks. The end result is all that matters. Does each item add up to what is in QuickBooks. Therefore, Kyle's statement that he would have to sift through over 1500 pages of closing documents to reverify is simply not correct. I have given Kyle the spreadsheet and I have bookmarked the HUDs, 2 hours at most is all it should take to re-verify these figures. These figures match up. | 10 |
| | Report – Summarizing the data is pretty much done- the spreadsheets and the HUDs, Notes, Deed of Trust, Pay Histories, etc. all verify the lots sold. | 2 |

### Repossession Activity
Obtain schedule of repossessed lots during the period. Trace activity from supporting documents to G/L

| Item | Memo | Est. Time |
|---|---|---|
| 1 | There were 7 properties that were foreclosed and resold. Those are all part of the Lot Sales Step. Regardless, I am estimating 2 hours | 2 |
| 2 | Report | 1 |

### Expenses
Vouch expenses to supporting invoices and payments.

| Item | Memo | Est. Time |
|---|---|---|
| 1 | I have asked Kyle for 8 hours of his time to click through each of these items and simply mark (1) vendor as Caleb wants to know what items were paid to Anson or JMFPC so to satisfy that, we will mark the ones paid to Anson or JMFPC. (2) Invoice or No Invoice (3) Check or no Check (4) copy of item same dollar amount from bank statement item (5) other method used to verify. | 6 |
| 2 | Report | 2 |

I feel it is important to note that Milburn Ray has not followed its own agreement to follow the Agreed Upon Procedures. All of the necessary work has been completed except itemizing the expenses.

1. **Cash**- This is simply an in/out account. Just report what is there. Kyle showed a difference on his spreadsheet he prepared to show me how the books are out since I unbundled the expenses. That is great. I accept that as the report and we should be done.

2. **Notes Receivable**- This is not really in dispute according to Caleb's email. The income was verified by Kelly Gongloff, Frazier's Attorney in late 2016 this is very well documented and summarized. I think it should just be reported. Kyle states that I added $900 in Interest Income and I am fine with that. Report it and be done with it.
3. **Fixed Assets**- there is simply nothing to do here. This is not in dispute. Copy the Tax Office sheet and paste it in the report and call it a day.
4. **Loan Payable** – There are none. This is finished.
5. **Partner Distribution**- This is not in dispute and this is well documented. This is done.
6. **Interest Income**- the fact that Kyle stated that I added $900 to Interest Income tells me that he knows what the Interest Income is so lets just report it as it is and be done with it. Kyle can certainly state that I added $900. I told Kyle when I unwound the expenses, I matched the P&L and Balance Sheet to the Tax Returns for 2014, 2015, 2016 & 2017. That is simply and adjustment made for that reason. I have attached the ledger that shows the adjustments made to match the tax returns.
7. **Calculation of Loan Service Fee-** Again, no one is asking nor is Milburn Ray supposed to give an opinion or conclusion, we just need Milburn Ray to confirm that the calculation is (Beginning Balance at the first of the month *1%)/12. Kyle has confirmed that is the calculation and that it is the calculation that has been used since 2014. This is done.
8. **Lot Sales** – as I stated, there are only 43 lots that were sold and that includes lots that were foreclosed and re-sold or canceled and traded. These figures are in a spreadsheet and we have it in a database. We can click through it. This is part of what I said we could go through since Kyle feels he has to sift through 1500 plus pages. He does not, we now have it where he can click 43 times and be done. Spreadsheets are done. Just verify the end figures against the P&L.
9. **Repossession Activity** – This covered very well as part of the lot sales. As we click through 43 properties, there is a foreclosure sale deed on each property that was foreclosed.
10. **Expenses-** As I stated, the majority of the expenses are covered in the lot sales. The rest we can click through and just mark them as I have shown in previous emails and be done with this. Kyle Hendricks sticking point is for example, no invoice, or multiple items on an invoice. Regardless, the expenses are well categorized and just add up what we have, mark it appropriately and we can be done with it. Caleb Moore can still make any claims he wants in court. The Numbers will not change.

**Path Forward**:

I estimate that this should have taken closer to 55 or 60 hours, I am ok if you double that. It is still cheaper than $32,000 to $35,000 for an Agreed Upon Procedure. All Milburn Ray was asked to do was review and report what was there. I have stated over and over that the numbers are what they are. I repeatedly, in emails and in person, just ask that Milburn Ray report truthfully what they found.

I agreed to pay the $32,000 to $35,000 but I expected Milburn Ray to follow the agreement. Even in the last email, Milburn Ray refuses to admit that $32,000 has been paid to them. However, that is in fact what has been paid to Milburn Ray.

As the agreement states, the $7,000 will be applied at the end of the engagement. We are at the end of the engagement. Milburn Ray is stating they will go no further without another $15,000 and I am stating that I am not paying another $15,000. Caleb Moore refuses to participate in this conversation. Therefore, we are at the end of the engagement and the $7,000 has been applied per the Agreement.

Regardless, I am willing to pay the $3,000 to take it to $35,000 plus I am willing to pay for 20 more hours to finish this AUP and have Kyle write a report that the numbers are what he has in his spreadsheets. He can state what is verified and what is not verified. I want 8 hours to walk through the expenses. No opinions, no resistance, just verify what is there.

Also, in keeping with the Agreement, neither Kyle Hendricks or anyone else at Milburn Ray shall express any opinion or conclusion on any of these matters. This includes whether it is Kyle or Milburn Ray's opinion that "best accounting procedures" were followed by Anson or that contra accounts used by Anson are not good. As per the Agreement, please just report the numbers and state what was or what was not reviewed.

Please let me know if this is acceptable no later than 5:00 PM, Tuesday, September 17, 2019.

Finally, Caleb, you need to state yes or no to this agreement. You have been repeatedly asked to attend the meetings I had with Kyle, but you refused. If you do not respond by 5:00 pm in writing, then I will assume that you are declining to go forward with the agreement that I am proposing. If Milburn Ray accepts our proposal to finish, I feel it is extremely important that you, your CPA or Frazier attend the meeting to verify the expenses.

Sincerely,

*[signature]*

J. Michael Ferguson