## AFFIDAVIT OF J. MICHAEL FERGUSON

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TARRANT | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared J. Michael Ferguson, the person whose name is subscribed hereto, and after being duly sworn upon his oath, deposed and stated as follows:

1. "My name is J. Michael Ferguson. I am over the age of 18, have never been convicted of a crime, and am fully competent to make this affidavit. Unless otherwise indicated or stated "on information and belief," I have personal knowledge of the matters stated herein and they are all true and correct.

2. "I am the sole shareholder of J. Michael Ferguson, P.C. ("**Ferguson PC**"). In late 2013, Ferguson PC hired Ian Ghrist ("**Ghrist**") after Ghrist had graduated from Texas Wesleyan Law School. Ferguson PC hired Ghrist specifically to assist in the identification, collection and servicing of primarily residential loans secured by deeds of trusts and similar lien documents. While Ghrist was a salaried employee of Ferguson PC, I taught Ghrist how to procure, service and otherwise manage residential loans.

3. "In addition to the salary that Ferguson PC paid to Ghrist, Ferguson PC and Ghrist's law firm, Ghrist Law Firm, PLLC ("**Ghrist PLLC**"), made a fee sharing agreement in which Ghrist PLLC would participate in Ferguson PC cases or deals in which Ghrist provided services. Ghrist PLLC would provide the legal work under the supervision of Ferguson PC and, in exchange, the two firms would split the legal fees after all expenses were paid, 66.67% to Ferguson PC and 33.33% to Ghrist PLLC. That agreement was subject to any agreements that Ferguson PC had with banks, lenders, investors or any other party that provided the financing necessary to finance the lawsuit or to finance the acquisition of assets involved in or to be involved in litigation.

4. "Ferguson PC agreed to finance the start-up cost of Ghrist PLLC. Ferguson PC fronted all of those start-up costs, including but not limited to office rent, phone, internet, website cost, Lexis research cost, cost of signage, office supplies and equipment. Ferguson PC did not agree to provide financing for advertising or mailing expense for Ghrist PLLC, because the venture between Ferguson PC and Ghrist PLLC was based on the long-term growth of (1) the loan servicing-related legal services practice of Ferguson PC and loan servicing services of Anson Financial, Inc. ("**Anson**"), and (2) the management of and

acquisition of mineral interests by Ferguson PC and All American Royalties, Inc. To the extent Ghrist PLLC retained any clients for itself, those clients had to be approved by Ferguson PC and, if so approved, then the legal services fees from those clients would be split 66.67% to Ghrist PLLC and 33.33% to Ferguson PC.

5. "In December 2015, Ferguson PC and Ghrist PLLC decided to part ways. Ghrist and I met regarding resolution of outstanding fees and expenses between the two law firms. We agreed that Ghrist LPPC would take certain clients with it and would pay back Ferguson PC for the start-up expenses that Ferguson PC had fronted for Ghrist PLLC and further that Ghrist PC would receive payments after deduction and payment of all expenses on deals that Ghrist PLLC had worked on for Ferguson PC.

6. "Following Ghrist's termination of employment from Ferguson PC, Ghrist PLLC failed to pay to Ferguson PC its percentage of the fees for legal services to clients developed by Ghrist PLLC and approved by Ferguson PC. Ferguson PC also learned that Ghrist PLLC wrongfully and without authorization used Ferguson PC resources to advertise for Ghrist PLLC's own book of business.

7. "Additionally, as a court-appointed receiver, Ghrist prepared a Mineral Deed from Ian Ghrist, Receiver of Metro Buys Homes, LLC for the Chesapeake Operating, LLC ("**Chesapeake**") mineral interest to MBH Real Estate, LLC ("**MBH**"), the same entity that holds some of the assets for which Plaintiffs are seeking the appointment of a receiver. As a result, MBH should have received royalty payments via checks from Chesapeake.

8. "It appears Ghrist has been negotiating and cashing the checks starting on or about February 27, 2015 and continuing through the May 30, 2016 check for a total sum of $6,093.33. On information and belief, Ghrist negotiated the Chesapeake checks with actual knowledge that "ALL" minerals had been transferred from Ghrist as Receiver to MBH. Ghrist acted without authority of MBH, and he did not provide the funds to MBH nor account for the funds in any way to MBH. In the Turn Over Order, Ghrist was ordered by the Court to provide monthly reports, but Ghrist has failed to produce any reports since August 2015.

9. "Ghrist informed me that he had "closed" the Metro Buys Homes, LLC bank accounts in March 2015 when Ghrist produced a Cashier check in the amount of $4,500.00 for funds Ghrist collected as the Receiver. It has been determined that Ghrist did not, in fact, close the accounts and, in addition to the $6,093.33 in Royalty Checks from the Chesapeake mineral interests that Ghrist has cashed, another $1,304.64 remained in the accounts as of April 30, 2015. To my knowledge, Ghrist has failed to report that information or account for those funds.

10. "Pursuant to the separation agreement between Ferguson PC and Ghrist PLLC, Ghrist PLLC is entitled to 13.33% of revenue for certain assets net of certain fees and expenses. Based on funds received through last month, a calculation of 13.33% of the *gross* revenue for the assets held by MBH of which Ghrist PLLC is entitled to share in the fee income amounts to $36,073.88 through the period ending November 30, 2016. As of this date, between the fees and expenses to be netted from that percentage of revenue due to Ghrist

PLLC and also Ghrist PLLC's unmet financial obligations per the separation agreement, Ferguson PC does not owe a payment to Ghrist PLLC. Ferguson PC has provided accountings to Ghrist PLLC on multiple occasions, the last accounting having been provided directly to Ghrist PLLC in May 2016, approximately four (4) months prior to Ferguson PC filing the above-entitled and numbered cause. A true and correct copy of the last accounting provided to Ghrist PLLC is attached hereto as Exhibit A-1.

11. "Ferguson PC did provide detailed information through May 31, 2016 to Shawn Coker ("**Coker**") who I understand provided it to Ghrist.

12 "To the best of my recollection, Anson filed its Articles of Incorporation on or about January 30, 1987. Anson has been in business for nearly thirty (30) years and currently manages assets of an approximate value of $17.2 million. I am the sole shareholder of Ferguson PC, and my personal net worth is in excess of seven million dollars."

"Further Affiant sayeth not."

_____
J. MICHAEL FERGUSON

SUBSCRIBED AND SWORN TO BEFORE ME on this 30th day of December, 2016 to certify which witness my hand and official seal.

JESSICA DORSETT
MY COMMISSION EXPIRES
APRIL 15, 2019

_____
Notary Public in and for the
State of Texas

[Seal]