| | |
|---|---|
| Kathryn Hernandez (TX SBN: 24107854)<br>Magan Law, PLLC<br>62 Main St., Ste. 310<br>Colleyville, Texas 76034<br>Telephone: (817) 209-4298<br>E-mail: k.magan@maganlawpllc.com | Jason Ankele (TX SBN: 00786989)<br>Sullivan & Cook, LLC<br>600 Las Colinas Blvd. E. Ste. 1300<br>Irving, Texas 75039-5699<br>Telephone: (214) 520-7494<br>E-mail: jankele@sullivancook.com |
| SPECIAL COUNSEL FOR ANSON FINANCIAL INC. DEBTOR AND DEBTOR IN POSSESSION | SPECIAL COUNSEL FOR ANSON FINANCIAL INC. DEBTOR AND DEBTOR IN POSSESSION |
| And | And |
| COUNSEL FOR DEFENDANT | COUNSEL FOR DEFENDANT |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE:<br><br>ANSON FINANCIAL, INC.,<br><br>DEBTOR. | § § § § § § § § | CASE NO. 21-41517 |
| B. FRAZIER ASSET MANAGEMENT, INC. F/K/A FRAZIER ASSET MANAGEMENT, INC., AND BRIAN H. FRAZIER, INDIVIDUALLY<br><br>Plaintiffs<br><br>vs.<br><br>ANSON FINANCIAL, INC.,<br><br>Defendant. | § § § § § § § § § § § § § § § § | Adv. No. 21-04071<br><br>Removed From:<br>Cause No. 342-288776-16<br>342nd Judicial District Court<br>Tarrant County, Texas |

**DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL**
**CALEB MOORE**

**TO THE HONORABLE EDWARD L. MORRIS, U.S. BANKRUPTCY JUDGE:**

Anson Financial, Inc. debtor and debtor in possession and Defendant ("Anson," or "Defendant"), files this *Motion to Disqualify Plaintiffs' Counsel Caleb Moore* (the "Motion") regarding Attorney Caleb Moore's representation of Plaintiffs in this suit and, in support thereof would show the Court the following.

### Introduction

1. On June 25, 2021 (the "Petition Date"), Anson commenced the above-captioned case by filing a voluntary petition under Chapter 11 United States Bankruptcy Code, Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"). On July 27, 2021, the Debtor amended its petition (Docket No. 19) to proceed under Subchapter V of Chapter 11.

2. On November 1, 2021, Anson filed its Notice of Removal to initiate this Adversary Proceeding.

3. On February 7, 2022, the Court set this Adversary Proceeding on the April 4, 2022 trial docket.

4. From the start of entering into various motion practice in Anson's main bankruptcy case (July 8, 2021 at Docket 8), Ms. Lyndel Vargas has served as Plaintiffs' counsel. On March 21, 2022, Mr. Caleb Moore ("Moore"), the Plaintiffs' previous state court counsel, stated that he will be representing Plaintiffs at the trial in this adversary proceeding. However, Moore has yet to file a Notice of Appearance or appear on any of Plaintiffs' filings as a signatory.

### Ghrist and Moore Conflicts of Interest harming Anson

5. Ian Ghrist ("Ghrist") worked as an attorney with J. Michael Ferguson ("Ferguson") through the law firm, J. Michael Ferguson, PC ("JMFPC"), from the period of 2013 through December 2015. During that time, Ghrist served as legal counsel to Anson and performed

extensive work for Anson.[1] As such, Ghrist represented Anson specifically in connection with Anson's purchase of the partnership interest from Jentex Financial, Inc. ("Jentex") in the Alvord 287 Joint Venture ("JV") in September of 2014.[2] This adversary proceeding arises directly from Anson's purchase of Jentex's partnership interest in the Alvord 287 JV. JMFPC terminated Ghrist in December of 2015.[3]

6. In the course of the representation of Anson, Ghrist obtained confidential information and confidential knowledge including the purchase of the partnership interest from Jentex, the communications with Plaintiff Frazier Asset Management, Inc. ("FAM") in regard to the purchase, discussing and planning legal strategies for dealing with Plaintiff Brian Frazier's ("Frazier") contention that the partnership could not be ended, discussing legal strategies of dealings with FAM once Frazier tore up the first distribution check and informed Anson that his attorney told him not to accept money or sign anything.[4]

7. In addition, Ghrist represented the Alvord 287 JV in legal matters.[5] Ghrist was privy to all aspects of Anson's ownership of the Alvord 287 JV partnership and the legal matters between Anson and FAM as well as all legal matters that occurred between the Alvord 287 JV and purchasers of the lots.

8. In September of 2016, Ghrist filed suit against various Ferguson entities, including Anson, under Cause No. 017-287611-16, *Ghrist et. al. v. Ferguson et. al.* in the 17th District Court in Tarrant County, Texas. Moore represented Ghrist in that proceeding.[6]

---

[1] See Exhibit DEF027, Affidavit of Ian Ghrist
[2] See Exhibit DEF028, Ferguson Declaration
[3] See Exhibit DEF029, Separation Agreement
[4] See Exhibit DEF028, Ferguson Declaration
[5] See Exhibit DEF028, Ferguson Declaration
[6] See Exhibit DEF030, Moore Affidavit

9. In October of 2016, Kelly Gongloff ("Gongloff"), FAM's prior attorney, communicated with Moore about the possibility of Moore representing FAM in a lawsuit against Anson.[7] Moore was obtaining information about Anson from Ghrist, such as whether Anson had registered as a loan servicing company, whether a license was required, whether Moore's client, Ghrist, would consent to Moore representing FAM and finally, confirming about Ghrist, "He thinks it would be beneficial to all … the more litigation Ferguson has to deal with."[8]

10. While the Ghrist suit in the 17th District Court was active, Ghrist also served as the receiver under cause number 141-269254-13 for the Judgment Creditor MBH Real Estate, LLC ("MBH"), an entity owned by Anson and JMFPC.[9] While acting as the receiver for MBH, Ghrist received royalty checks from Chesapeake Energy but did not disclose the receipt of those checks to MBH, Anson, or JMFPC.[10] Instead, Ghrist changed the mailing address so the royalty checks were mailed directly to Moore's office.[11] Ghrist then used those undisclosed MBH funds to pay Moore to represent Ghrist against Anson, JMFPC, and MBH in the 17th District Court.[12]

11. In November of 2016, Plaintiffs initiated this suit against Anson regarding the Alvord 287 Joint Venture. Moore represented Plaintiffs in this matter against Anson simultaneously with Moore's representation of Ghrist in the 17th District Court against Anson.

12. Despite having served as legal counsel for both Anson and the Alvord 287 Joint Venture, Ghrist has authored pleadings and/or ghost-written pleadings by Plaintiffs against Anson regarding the Alvord 287 Joint Venture. The meta data show that Ghrist was the author on the

---

[7] See Exhibit DEF031, Kelly Gongloff/Caleb Moore Emails Oct. 5 & 6, 2016
[8] See Exhibit DEF031, Kelly Gongloff/Caleb Moore Emails Oct. 5 & 6, 2016
[9] See Exhibit DEF032, Receiver Order; *see also* Exhibit DEF028, Ferguson Declaration.
[10] See Exhibit DEF033, Ghrist Depo
[11] See Exhibit DEF034, Copy of the Chesapeake Check with Caleb Moore's address; *see also* Exhibit DEF033 as it appears Ghrist shared the same office as Moore for some time period.
[12] See Exhibit DEF033, Ghrist Depo; at the time that check monies obtained from MBH were used by Ghrist for legal fees, MBH was not yet a defendant in the 17th District Court case.

following documents in this case: (1) Plaintiffs Original Petition dated 11/7/2016; (2) Plaintiffs First Amended Petition dated 2/7/2017; (3) Plaintiffs Second Amended Petition dated 10/19/2017; (4) Plaintiff Brian H. Frazier's Request for Disclosures dated March 21, 2017; and (5) Plaintiffs Response to Motion to Disqualify Caleb Moore dated 5/22/2018.[13]

13. In addition, as a trial date in this present suit approached in 2019, Moore identified Ghrist as a witness, stating in regard to Ghrist, "He has knowledge regarding claims by Anson v. Frazier in this suit, emails Anson subpoenaed and may also offer testimony related to elements of punitive damages."[14] Clearly, by Moore's own witness designation on behalf of Plaintiffs, Ghrist has communicated substantive knowledge of his former client, Anson, to Moore.

14. In September of 2017, entities owned by Ferguson filed suit against Ghrist, Cause No. 067-311209-19, *MBH et. al. v. Ghrist et. al.,* 67th District Court in Tarrant County, Texas. Ghrist represented himself throughout the entirety of the litigation in the 67th District Court case.[15] In January of 2021, over the objection of Anson and after the court's plenary power had expired, Ghrist obtained approximately 18,000 pages of Anson's bank statements and financial documents via subpoena from Chase bank in connection with his lawsuit in the 67th District Court.[16]

15. Ghrist, without permission of Anson or the numerous other parties whose private banking information is included in those bank statements and financial documents he obtained, provided Moore with all of the 18,000 pages of documents, including documents well outside the scope of the Alvord 287 JV and which included Anson's clients and customer information without any redaction or limitations.[17] The 18,000 pages of information provided to Moore were from

---

[13] See Exhibit DEF035, Pleadings where meta data shows Ian Ghrist Authored Pleadings
[14] *See* Exhibit DEF036, Plaintiff's Witness Designation.
[15] See Exhibit DEF030, Moore Affidavit*; See also* Exhibit DEF028, Ferguson Declaration; Exhibit DEF037, copy of the online docket sheet from the 67th District Court showing Ghrist as counsel of record for himself and his law firm.
[16] See Exhibit DEF038, Ghrist Testimony; *see also* Exhibit DEF028, Ferguson Declaration
[17] See Exhibit DEF038, Ghrist Testimony; *see also* Exhibit DEF039, Moore Testimony; Exhibit DEF040, Moore letters

years 2011-2020.[18] Consequently, the 18,000 pages of financial documents contained information from the time period to which Ghrist provided legal services and acted as counsel for Anson (2013-2015). Mr. Moore was not representing Ghrist in the 67th District Court case and instead received the documents from Ghrist in a manner separate and apart from acting as Ghrist's attorney.[19] Notably, Moore had requested Anson's bank records multiple times from the 342nd District Court and was not granted such relief.[20] In addition, Moore requested Anson's bank records to be given to Milburn Ray (the accounting firm who conducted the AUP in this case) and Moore was told that such bank records were not needed for the AUP and outside the scope because they did not belong to the Alvord 287 JV.[21] Nevertheless, Ghrist provided the bank records to Moore so that Moore could use them in this suit against Anson.[22]

16. On February 18, 2021, Moore emailed a letter to Defendant's counsel, forwarding a flash drive with the 18,000 pages of Anson's financial documents, including thousands of documents related to entities not privy to this litigation, noting the documents "were provided by Chase to Ian Ghrist in response to a subpoena he issued in another case he was litigating with your client."[23] That is, Ghrist had obtained the records of Anson while representing himself against Anson and decided to share the documents with Moore who apparently reviewed them as he advised, "I have determined that these records are relevant to the issues being litigated in this case."[24] Moore then cited to a completely inapplicable "shared discovery" doctrine as justification for his and Ghrist's conduct.[25]

---

[18] See Exhibit DEF028, Ferguson Declaration.
[19] See Exhibit DEF040, Moore letters
[20] See Exhibit DEF041, Motions to Compel filed by Moore.
[21] See Exhibit DEF042, Caleb Moore and Kyle Hendrix email re AUP.
[22] See Plaintiffs Exhibit List (Docket 38), Plaintiffs' Exhibit 52 and 82-87.
[23] See Exhibit DEF040, Moore letter
[24] See Exhibit DEF040, Moore letter
[25] See Exhibit DEF040, Moore letter

17. On October 21, 2021, via testimony in Anson's main bankruptcy case, Ghrist testified that he provided Moore all of the documents as a consultation to the 67th District Court, while also knowing that Moore was actively representing Plaintiffs against Anson in the 342nd District Court, breaching his duty to his former client and imputing client confidences to Moore.[26] Ghrist neither redacted any of the documents nor limited the document production to documents relevant to this suit.[27] Confidential and privileged information, including privacy data such as social security numbers, account numbers, tax ids, dates of birth, names, addresses and other personal identifying information of borrowers and clients that are not involved in any of the litigation that involve Ghrist or Moore were given to Moore.

18. On November 1, 2021, via testimony in Anson's main bankruptcy case, Moore testified that he received the 18,000 pages of financial documents in regard to *his representation* of Ghrist in the 67th District Court, noting he has represented Ghrist for almost five years, clearly in contrast to his previous testimony, and also to his February 18, 2021, letter to Anson's current counsel in which he states Ghrist obtained the records from Chase on a suit that *Ghrist was litigating* with Anson.[28]

19. The facts stand that Ghrist still owes a duty to his former client Anson, and that duty of confidentiality has been violated since Ghrist now got involved in a case on matters to which he formerly represented Anson. Moore has received confidential information from Ghrist that he should not have received specifically in order to prosecute this case against Anson. This has caused injury to Anson.

---

[26] See Exhibit DEF038, Transcript of Ghrist
[27] See Exhibit DEF040, Moore letter; *see also* Exhibit DEF038, Transcript of Ghrist at 10-21-2021 hearing.
[28] See Exhibit DEF039, Transcript of Moore; *see also* Exhibit DEF030, Moore affidavit; *see also* a copy of the online docket sheet from the 67th District Court attached hereto as Exhibit DEF037 showing Ghrist as counsel of record for himself and his law firm.

20. Accordingly, Defendant seeks to disqualify Moore from representing Plaintiffs in this case based on unethical conduct, vicarious disqualification, and professional impropriety.

**Argument and Authorities**

21. The Northern District of Texas adopts the Texas Disciplinary Rules of Professional Conduct. *See* Local Rule 83.8(e); *see also Chandler v. Phx. Servs.,* Civil Action No. 7:19-cv-00014-O, 2020 U.S. Dist. LEXIS 15702, at *7 (N.D. Tex. Jan. 30, 2020) ("In the Northern District of Texas, attorneys 'are subject to the Texas Disciplinary Rules of Professional Conduct.'").

22. An attorney generally owes a former client a continuing duty to not reveal to third parties confidential client information without the client's express or implicit permission. *Sealed Party v. Sealed Party,* No. H-04-2229, 2006 U.S. Dist. LEXIS 28392, at *56 (S.D. Tex. Apr. 28, 2006); *see also* Model R. 1.6(a) and Tex. R. 1.05. This duty encompasses privileged and unprivileged information obtained. *Id.* A lawyer breaches the duty of confidentiality under Model Rule 1.6 by revealing information that is available from sources other than the client, including information filed in the public record. *Id (citing In re Disciplinary Proceedings Against Harman,* 628 N.W.2d 351, 360-61 (Wis. 2001)) (lawyer violated Rule 1.6(a) by disclosing to prosecutor former client's medical records that he obtained during prior representation; irrelevant whether those records lost their "confidentiality" by being made part of former client's medical malpractice action because the disciplinary rules require lawyers to "maintain confidentiality of information relating to the representation.); *In re Anonymous,* 654 N.E.2d 1128, 1129-30 (Ind. 1995) (lawyer violated Rule 1.6 by disclosing information relating to representation of client, even though information "was readily available from public sources and not confidential in nature."); *Lawyer Disciplinary Bd. V. McGraw,* 194 461 S.W.2d 850, 851 (W. Va. 1995) ("the ethical duty of confidentiality is not nullified by the fact that the information is part of a public record or by the

fact that someone else is privy to it."). "A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client…" *Brennan's Inc. v. Brennan's Rests., Inc.,* 590 F.2d 168, 172 (5th Cir. 1979) (quoting ABA Code of Professional Responsibility, Canon 4 (1970)). "It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment." *American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1128 (5th Cir. 1971) (citing American Bar Associates Canons of Ethics 37).

23. "To disqualify his former attorney, the former client need show no more than the matters involved in the pending suit in which his former attorney represents his adversary are substantially related to the matters or cause of action in which the attorney previously represented him, the former client." *Id.* "Disqualification extends also to employees, and former employees, of the attorney who has been privy to a client's communications." *Id.* Disqualification also extends to all members of a partnership where one partner is disqualified, through vicarious disqualification. *Id.* In order to disqualify new partners of a vicariously disqualified partner, to whom knowledge has been imputed, the former client need only show that the vicariously disqualified partner's knowledge was imputed, not actual. *Id.*[29]; see also *Busby v. Harvey,* 551 S.W.3d 184 (Tex. App.—Fort Worth 2017) ("When an attorney in private practice has actual knowledge of the confidences of a former client in a particular case, and he or she undertakes employment with a law firm representing a party whose interests in that identical case are adverse to that former client, the construction of a Chinese wall does not refute the appearance of professional impropriety—the possible disclosure of the former client's confidences—which is prohibited by the Texas Code of Professional Responsibility."). Under Canon 9 of the Code of Professional Responsibility, "A lawyer should avoid even the appearance of professional

---

[29] Presumption or irrebuttable presumption of client confidences is not at issue here since there is evidence that Mr. Moore did in fact obtain client confidences of Anson from Ghrist.

impropriety." *McCuin v. Tex. Power & Light Co.,* 714 F.2d 1255, 1265 (5th Cir. 1983). The purpose of this injunction is to preserve public confidence in the bar and in the legal process. *Id.* The Fifth Circuit has held that counsel may be disqualified to appear in a matter if his conduct violates the prescription. *Id.* First, the district court should inquire whether there is "at least a reasonable possibility that some specifically identifiable impropriety" has occurred. *Id.* Second, the court should consider whether the likelihood of public suspicion or, or obloquy regarding, such an impropriety is sufficiently strong to outweigh the interest of the party being represented by counsel of its choice. *Id.* Disqualification is required when both conditions are satisfied. *Id.*

24. "The propriety of disqualification of counsel rests not on whether confidential information has been divulged or used to the detriment of the former client. Disqualification is appropriate when there is a reasonable probability of such information's being used or divulged." *In re Hoar Constr., L.L.C.,* 256 S.W.3d 790, 791 (Tex. App. 2008) (citing Tex. Disciplinary R. Prof. Conduct 1.09(a)(2). "The test for disqualification is met by demonstrating a genuine threat of disclosure, not an actual materialized disclosure. The policy behind the rule is that any rule focusing on actual disclosure would place a virtually insurmountable burden on the party seeking disqualification because the only persons who know whether confidences were actually shared will generally be the very lawyers seeking to avoid disqualification." *Id.*

25. "A trial court must grant a motion to disqualify a firm whose nonlawyer employee previously worked for opposing counsel if the nonlawyer (1) obtained confidential information about the matter while working at the opposing firm and (2) then shared that information with her current firm." *In re Turner,* 542 S.W.3d 553, 556 (Tex. 2017).

26. During the course of the conduct laid out above, Ghrist and Moore violated the following Texas Rules of Professional Conduct: 1.05, 1.06, 1.09, 1.14, 3.01, 3.02, 4.01, 4.04, and 8.04.

27. Under the Rules of Professional Conduct, Moore had a duty to inquire whether Ghrist worked on the Alvord 287 Joint Venture while Ghrist was employed by JMFPC and providing legal services for Anson; and, ensure a Chinese wall was implemented so that Moore could represent Frazier in this suit. Instead, Moore and Ghrist clearly worked together wherein Ghrist provided Moore with actual knowledge of protected information of Anson to the disadvantage of Anson, including information that Moore had requested be compelled by the 342nd District Court, whom did not grant such relief. As such, Ghrist and Moore effected an end run around the state district court judge. Due to the conduct described above, Moore has received insider knowledge of Anson to which he should not be privy to, including the entirety of Anson's financial situation providing Moore with knowledge of Anson's financial stability to endure this lawsuit, and knowledge of the ability to pay potential damages Moore is trying to secure for Plaintiffs. Moore is now trying to spin this information to showcase a damage model for Plaintiffs.

28. As such, Moore should be vicariously disqualified based on his imputed knowledge and Ghrist's breach of former client confidences. Plaintiffs have retained counsel Lyndel Vargas who has been representing them in this court from July 8, 2021 to the present; and therefore, Plaintiffs will not be unduly harmed by this disqualification.

Dated: March 24, 2022						Respectfully submitted:

							Magan Law, PLLC

							By:	/s/ *Kathryn Hernandez*
								Kathryn Hernandez (TX SBN: 24107854)
								62 Main St., Ste. 310
								Colleyville, Texas 76034
								Telephone: (817) 209-4298
								Email: k.magan@maganlawpllc.com

							Sullivan & Cook

							By:	/s/ M. Jason Ankele
								M. Jason Ankele (TX SBN: 00786989)
								600 Las Colinas Blvd. E. Ste. 1300
								Irving, Texas 75039-5699
								Telephone: (214) 520-7494
								Email: jankele@sullivancook.com

							**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that on March 21, 2022 and March 22, 2022, the undersigned emailed Plaintiffs' counsel to try and resolve this matter. The matter was unable to be resolved and Plaintiffs' counsel opposes the granting of this Motion.

							*/s/ Kathryn Hernandez*
							Kathryn Hernandez

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on March 24, 2022 by electronic notice to all ECF users who have appeared in this case to date.

							*/s/ Kathryn Hernandez*
							Kathryn Hernandez