# CLERK'S RECORD

## Volume 1   of 6

Trial Court Cause No. 017-287611-16
Appellate Cause No.02-18-00332-CV

In the 17th  District Court
of Tarrant County, Texas
Hon. Melody Wilkinson, Presiding Judge

# GHRIST LAW FIRM, PLLC, ET AL

## VS.

## J. MICHAEL FERGUSON, P.C.,

Appealed to the Court of Appeals
for the 2nd  Supreme Judicial District of Texas
at Fort Worth          , Texas

## APPEARING FOR THE APPELLANT

HERALD, THOMAS A
62 MAIN ST STE 310

COLLEYVILLE                          TX 76034-
Phone: (817) 756-6437
Fax..: (817) 485-1117
Email Address: TOM@TAHERALDPC.COM
SBOT.: 09499520TX
Appearing for J MICHAEL FERGUSON, Appellant

| | |
|---|---|
| Delivered to the Court of Appeals for the 2nd  Supreme Judicial District of Texas at Fort Worth          , Texas, on this date of November 20, 2018. | (Court of Appeals) Cause No. _____ Filed in the Court of Appeals for the 2nd  Supreme Judicial District of Texas, at Fort Worth          , Texas, this _____ day of _____, _____ _____, Clerk By _____, Deputy |

Thomas A. Wilder, District Clerk
Tarrant County, Fort Worth, Texas

*Michelle Carter*

MICHELLE CARTER
Deputy District Clerk

1

017-287611-16

FILED
TARRANT COUNTY
12/13/2016 2:58:41 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 017-287611-16

| | | |
|---|---|---|
| GHRIST LAW FIRM, PLLC, AND | § | IN THE DISTRICT COURT |
| IAN GHRIST | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | 17th JUDICIAL DISTRICT |
| J. MICHAEL FERGUSON, P.C.; J. | § | |
| MICHAEL FERGUSON; ANSON | § | |
| FINANCIAL, INC.; AND MBH REAL | § | |
| ESTATE, LLC | § | |
| | § | |
| Defendants. | § | |
| | § | TARRANT COUNTY, TEXAS |

## APPLICATION FOR APPOINTMENT OF RECEIVER

TO THE HONORABLE COURT:

Plaintiffs complain of Defendants and seek the appointment of a receiver on the following grounds:

## SUMMARY OF MOTION

As laid out in detail below, Ghrist and Ferguson are both attorneys who worked together on multiple projects that resulted in a shared interest in various real estate lien notes that were recovered on behalf of their mutual clients. In December of 2015, Ghrist and Ferguson entered into a separation agreement that detailed how they agreed Ghrist would be compensated for the work he did and detailed how the proceeds from the various projects would be divided. Included in the agreement was a 13.33% interest in the property recovered as part of Cause Number 236-269254-13. Since that date, Ferguson has refused to make regular payments to Ghrist or reasonably account for the money coming in and going out on the jointly owned property. Based on the limited information, Ferguson is distributing funds to himself while refusing to provide records regarding the account and refusing to distribute funds to Ghrist in the same manner.

56

Ferguson's conduct has resulted in the need for this suit and a receivership to protect the funds coming in while an accounting is completed to ensure the proper amounts owed to each party with an interest in the property recovered in Cause Number 236-269254-13.

## 1. EXHIBITS

Exhibit A:    Ghrist Affidavit

Exhibit B:    Separation Agreement (client names omitted for privacy)

Exhibit C:    Sample of Monthly Bill Sheets and Payments

Exhibit D:    Turnover Order

Exhibit E:    Financial Statement Provided by Ferguson to Ghrist on or about June 1st, 2015

Exhibit F:    Financial Statement Provided by Ferguson to Ghrist on November 24th, 2015

Exhibit G:    Financial Statement through February 2016

Exhibit H:    Financial Statement through March 2016

Exhibit I:    Defendant Ferguson's Emails to Plaintiff Ghrist

Exhibit J:    Defendant Ferguson's Correspondence with Shawn Coker

Exhibit K:    Example Note Showing Course of Dealing of Parties with Respect to Contingent Fee Work

Exhibit L:    Emails and Attached Trust Agreement from Ferguson to Coker

Exhibit M:    Instrument Number D216074238

Exhibit N:    Bank Statement, Ghrist Law Firm

## 2. STATEMENT OF FACTS

Plaintiffs incorporate by reference herein Plaintiff's Original Petition filed 09/20/2016 and ask that the Court take notice of the verified allegations therein. In summary, Defendant Ferguson is a licensed Texas attorney who had a contingency fee agreement with various entities (the "Original Plaintiffs") who were defrauded by David Boles and Boles's various business

entities.[1] Attorney Ferguson agreed to share 1/3 of the recovery with Attorney Ghrist in exchange for Ghrist's work on the case.[2] Attorneys Ghrist and Ferguson had the same arrangement on every other case that they worked on jointly so there was no confusion regarding the agreement.[3]

In reliance on the agreement, Ghrist conducted depositions, discovery, record requests, and subpoenas to uncover substantial assets, and then put Mr. Boles into receivership and seized a portfolio ("the Portfolio") as receiver.[4] The word "Portfolio" as used herein refers to all loans, properties, and anything of value recovered from or related to Cause Numbers 236-269254-13 and 236-248435-10 in the 236th Judicial District Court of Tarrant County, Texas. The Portfolio mostly consists of promissory notes secured by deeds of trust on residential real property located in the Dallas-Fort Worth metroplex, but there are also mineral rights and real estate in inventory that needs to be owner-financed or otherwise sold.[5]

Title to the Portfolio assets is a mess. On February 20th, 2015, Judge Lowe of the 236th Judicial District Court of Tarrant County, Texas signed an order for turnover relief which transferred title to the entire Portfolio from David Boles and his affiliated entities to the Original Plaintiffs and awarded to Mr. Boles a credit against the judgment taken against him in the amount of $1,040,467.87.[6] This order was recorded in the real property records on June 9th, 2015 by instrument number D215121656 to put the world on constructive notice of its existence.[7] On June 7th, 2016, Ferguson sent an email to Shawn Coker, agent for the Original Plaintiffs, wherein

---

[1] *See* Ex. A, p. 1, ¶ 2.
[2] *See Id.* ¶ 4; Ex. B, and Ex. C.
[3] *Id.*
[4] Ex. A., p. 2, ¶ 6.
[5] Ex. A, p. 2, ¶ 7.
[6] Ex. D.
[7] *Id.*

Ferguson alleged to have unilaterally set up a new entity called MBH Real Estate, LLC and to have transferred all Portfolio assets into this entity.[8] Ferguson claimed to own 50% of the new entity and further claimed that 60% of the incomes would be paid to the Original Plaintiffs and 40% of the incomes would be paid to Ferguson.[9]

Ferguson has been managing the Portfolio as if MBH Real Estate, LLC owns the Portfolio. For example, on 4228 Ave. N., Fort Worth, Texas 76105, Ferguson owner-financed the property,[10] putting MBH Real Estate, LLC as the Grantor on the deed, even though the Original Plaintiffs are the record owners due to the turnover order. Now, there is a break in the chain-of-title, the title is clouded, Ferguson breached deed warranties to the buyer, and the Portfolio is at risk of loss due to claims that the buyer now has against Portfolio assets.[11]

On or about June 1st, 2015, Ghrist and the Original Plaintiffs attended a mediation and entered into a settlement agreement with an associate of Mr. Boles that resulted in recovery of an additional thirteen notes and properties.[12] The settlement paperwork, directed by Ferguson, caused these properties to be assigned to MBH Real Estate, LLC.[13] Consequently, those thirteen notes and properties are the only notes and properties, in fact, that could arguably by owned by MBH Real Estate, LLC.[14]

Attorney Ferguson has been managing the Portfolio since about November of 2014.[15] After Attorney Ferguson made inconsistent and haphazard payments to the Original Plaintiffs, provided incomplete and incompetent bookkeeping to Ghrist and Coker, failed to deliver tax

---

[8] Ex. J, p. 9.
[9] *Id.*
[10] Ex. M (4228 Ave. N., Fort Worth, Texas 76105, Instrument Number D216074238, Tarrant County, Texas).
[11] Ex. M, D.
[12] Ex. A, p. 2-3, ¶ 8.
[13] *Id.*
[14] *Id.*
[15] Ex. A, p. 3, ¶ 9.

reports, refused Coker's demand for an independent third-party to service the loans,[16] unlawfully claimed ownership of half of the Portfolio, admitted to failing to escrow the borrower's tax and insurance money, and unreasonably and unprofessionally insulted and threatened Coker and Ghrist,[17] the Original Plaintiffs threatened to file suit against Ferguson.[18] Ferguson entered into a settlement agreement with the Original Plaintiffs.[19]

### a.   Separation of Ghrist and Ferguson

Ghrist and Ferguson separated in December of 2015.[20] At that time, the parties entered into a written separation agreement.[21] The separation agreement addressed all currently pending matters.[22] All previously closed matters were unaffected.[23] For example, the monthly payments on two closed cases continued on a monthly basis after the separation agreement.[24] The payment for $112.13 on Exhibit N made via ACH transfer on April 15th, 2016 was for the promissory note on a closed case attached as Exhibit K, while the payment on the same date for $71.67 was for a similar, closed case that generated monthly income.[25]

### b.   Status of Accounting and Payments

When Ferguson and Ghrist met to discuss and execute the separation agreement, Ferguson told Ghrist that payments would be made on a monthly basis.[26] Even though payments had been

---

[16] *Id.*; Ex. J, p. 3 (email sent by Ferguson to Coker dated 06/04/2016).
[17] Ex. I passim; Ex. J p. 7, passim.
[18] Ex. A., p. 3, ¶ 9.
[19] *Id.*
[20] Ex. A, p. 3, ¶ 10.
[21] Ex. B.
[22] Ex. A, p. 3, ¶ 10.
[23] Ex. A, p. 3-4, ¶ 10.
[24] *Id.*; Ex. N, p. 2.
[25] *Id.*; Ex. K.
[26] Ex. A, p. 4, ¶ 11.

60

coming in for twenty months by June of 2016, Ferguson had made only five payments to the Original Plaintiffs and zero payments to Ghrist.[27]

Ferguson has not made any payments to Ghrist from Portfolio incomes.[28] Ferguson also has struggled to make payments to Ghrist on matters that were not related to the Portfolio. On October 2nd, 2015, for example, Ferguson wrote a check to Ghrist for the payments due for May and September of 2015 billing.[29] This check was a full six months late. It was not the first late payment that Ferguson made.[30] Ferguson had become habitually late on payments and by late 2015, without providing any reasonable excuse.[31]

Ferguson has produced four accounting spreadsheets to Ghrist.[32] The first on June 1st, 2015, the second on November 24th, 2015, the third covering months ending February 29, 2016, and the fourth covering months ending March 31st, 2016.[33] None of the spreadsheets appear to have been reconciled with any appropriate bank accounts.[34] All of the spreadsheets indicate that standard, reasonable double-entry bookkeeping is not being done.[35] No substantiating information has been provided for the numbers displayed.[36] Ghrist's share was on the spreadsheets in 2015, but suspiciously vanished in 2016, indicating Ferguson's intent to convert that share to his own use.[37]

---

[27] Ex. A, p. 4, ¶ 12.
[28] Ex. A, p. 4 ¶ 12.
[29] Ex. C, p. 4.
[30] Ex. A, p. 3, ¶ 10; p. 6, ¶ 18.
[31] *Id.*
[32] Ex. A, p. 4, ¶ 13; Ex. E, Ex. F, Ex. G, Ex. H.
[33] Ex. A, p. 4, ¶ 13, p. 5-6, ¶ 17; Ex. E, Ex. F, Ex. G, Ex. H.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] Ex. F, p. 5, 7; Ex. G, p. 1, 8; Ex. H, p. 1, 8.

The spreadsheets show that Ferguson is charging loan servicing fees to the Portfolio, despite not having a license to service loans.[38] The spreadsheet provided on November 24th, 2015 shows a $60,790.95 expense, marked "Exhibit A."[39] On May 6th, 2016, Ghrist requested this exhibit.[40] Mr. Ferguson's response was to ignore the request and, instead, to threaten to invoice Ghrist for Ferguson's open invoices, money that Ferguson spent or lost on unrelated projects, and to tell Ghrist that Ferguson was unilaterally modifying the separation agreement, in several ways, to unlawfully subtract amounts owed to Ghrist.[41] Ferguson even went to far as to state that his intent in doing so was to cause Ghrist to refrain from requesting payment of amounts that Ferguson acknowledged were owed.[42] In addition, Ferguson offered to purchase all of Ghrist's interests, worth hundreds of thousands of dollars, for $40,000.00, which was only slightly more than Ferguson owed to Ghrist already and which included virtually no consideration for the payments that Ferguson will owe to Ghrist for the next fifteen to twenty years.[43] Ferguson made abundantly clear his bad faith intent to coerce Ghrist into selling out for pennies on the dollar instead of remitting the money owed to Ghrist in a timely manner, together with the tax and accounting statements that Ghrist is paying Ferguson to produce by the loan servicing fees that Ferguson is collecting from Ghrist's assets.[44]

The things that Ferguson threatened to bill Ghrist for in his May of 2016 emails were never discussed by the parties, were not part of the parties' agreement, and were raised for the first time only after Ferguson failed to pay Ghrist; was about to be sued by his clients, the Original Plaintiffs; and refused to substantiate his own self-serving invoices. To protect the money in

---

[38] Exs. F p. 1, G p. 1, H p. 1, Ex. A p. 5, ¶ 16.
[39] Ex. F, p. 2.
[40] Ex. I, p. 6.
[41] Ex. I, p. 4–13.
[42] Ex. I, 12.
[43] *Id.*
[44] Ex. I passim.

dispute until an accounting by a licensed professional accountant either agreed to by the parties or approved by the Court, a receiver should be appointed over the portfolio assets and the portfolio incomes estimated to be approximately $7,000.00 to $10,000.00 per month should be paid into this Court's registry pending trial of this cause.

### c. Evidence of Plaintiff's Interest in the Portfolio

Ferguson's acknowledgement of Ghrist's 13.33% stake in the Portfolio is in writing and signed by Ferguson.[45] As further evidence in support of this agreement between the parties , the course of dealing of the parties as represented by the sample monthly billing sheets attached as Exhibit C evidence Plaintiff's interest in the assets in dispute.[46] At the end of each month, Ghrist would total up the legal fees generated and Ferguson would pay to Ghrist 1/3 of those fees net of expenses.[47] For example, when Ghrist settled a 40.00% contingent fee case for Ferguson involving equitable subrogation to a mortgage loan and the settlement involved the defendant executing a note and deed of trust to the plaintiff, the plaintiff conveyed a 26.66% interest in the note to Ferguson and a 13.33% interest in the note to Gasget, LLC, a company wholly owned by Ghrist.[48]

Additionally, on June 6th, 2015, Ferguson sent an email to Mr. Coker demanding that Mr. Coker put the Portfolio into an irrevocable trust, which would be owned 60% by Coker, 26.67% by Ferguson, and 13.33% by Ghrist.[49] Ferguson also sent an accounting to Ghrist on or about November 24th, 2015 showing Ghrist's "ownership" at 13.33%.[50] In Ferguson's accounting file updated through February 2016, and provided to Ghrist in March of 2016, Ferguson arbitrarily

---

[45] Ex. B, p. 1, ¶ 14.
[46] *Also see* Exs. K, L, and N for additional evidence of the parties' fee sharing agreement.
[47] Ex. C passim, Ex. A, p. 2, ¶ 5.
[48] Exs. K, N, A p. 7, ¶ 24.
[49] Ex. L, p. 2, 4–12.
[50] Ex. F, p. 5, 7.

deleted without explanation, Ghrist's 13% interest and switched the percentages to 50% owned by Ferguson, 50% owned by Coker, with 40% incomes going to Ferguson and 60% incomes going to Coker, nothing to Ghrist.[51]

Ghrist's 13.33% interest in the Portfolio was based on the "1/3 to Ghrist, 2/3 to Ferguson" course-of-dealing fee split that Ferguson and Ghrist had always used in all ventures,[52] was recognized and acknowledged by Ferguson multiple times in emails and documents produced to Ghrist and Shawn Coker, and was acknowledged again later when Ferguson executed the written separation agreement dated December 4th, 2015.[53]

In 2016, Ferguson and Ghrist exchanged a series of emails related to the lack of payments that Ferguson made to Ghrist after Ghrist and Ferguson separated.[54] Ferguson's responses repeatedly acknowledged Ghrist's interest in the Portfolio, yet provided a litany of vague or unreasonable excuses for non-payment, followed by a buy-out offer for pennies on the dollar.[55] Taken as a whole, Ferguson's emails offer no reasonable explanation or justification for non-payment and strongly indicate that the money being generated from the jointly owned assets is at risk and should be managed by an independent third-party appointed by the Court to manage the Portfolio, and the monthly incomes should be deposited to the Court's registry pending a full accounting, agreement by the parties or trial of this cause.

In sum, Ferguson assigned, acknowledged, and agreed to Ghrist's interest in 1/3 of whatever Ferguson obtained from the suit against David Boles *et. al.* This interest in the assets that

---

[51] Ex. G, p. 1, 8; Ex. H, p. 1, 8.
[52] *See* Ex. C (sample monthly billing sheets and payments).
[53] Ex. B.
[54] Ex. I.
[55] *Id.* passim.

Ferguson claims ownership of or control over is not reasonably in dispute, yet Ghrist is being excluded and a receiver should be appointed.

### 3.    ARGUMENTS AND AUTHORITIES FOR PRE-JUDGMENT RECEIVERSHIP

Section 64.001 of the Texas Civil Practice and Remedies Code allows for appointment of a receiver over parties "jointly . . . interested in any property or fund" when the property or fund is in danger of being "lost, removed, or materially injured."

If receivership is granted under this statute, then the receivership is "not dependent on the general rules of practice in courts of equity, and cannot be attacked on the ground that it is harsh, that plaintiff had an adequate remedy at law, or a less drastic remedy." *M. Guerra & Son v. Manges*, 442 S.W.2d 441, 445 (Tex. Civ. App. Waco 1969). In *Manges*, receivership was granted under the statute because the partners could not agree on how to wind up their affairs and the business was carried on in a "loose and disconnected manner." *Id.* at 442. In this case, Plaintiffs will show that "loose and disconnected" would be an extremely generous way to describe the haphazard management of the portfolio assets and the accounting therefor. "A trial court may appoint a receiver to take charge of the partnership business where the parties are unable to agree upon the management of a business and the partnership assets are in danger of being lost, removed, or materially injured." *Rubin v. Gilmore*, 561 S.W.2d 231, 234 (Tex. Civ. App. Houston 1st Dist. 1977).

Pre-judgment receivership has also been granted under the statute when "partners disagree" or an interested party is "excluded from the management" of the assets or properties are being "carelessly and incompetently handled." *Alexander v. Alexander*, 99 S.W.2d 1062, 1063 (Tex. Civ. App. 1936).

"A receiver may be appointed **when partners disagree**, or **when a partner has been ousted from participation in the management of the firm's affairs**, or **when an accounting and settlement is sought**, or ordered, or **when it is sought to dissolve and wind up the affairs of the firm**. It is also the settled rule that in a proper case a receiver may be appointed, although the existence of the partnership is denied, and regardless of whether the business is in full operation, or is in the course of dissolution. **It is also further settled that where a partner has been excluded from participation in partnership affairs, he need not show that the property is in danger of loss**. 36 Tex. Jur., §16, pp. 41 and 42, and cases cited in footnotes 3 to 10."

*Id.* at 1064 (emphasis added).

Mr. Ghrist has been excluded from management[56] and the properties have been improperly managed in that (a) no double-entry bookkeeping system has been used to account for incomes and expenses, which makes the financial records nigh impossible to balance or reconcile, (b) Defendant Ferguson and other Defendants billed the Portfolio for legal and other work, failed to provide those invoices, and paid themselves out of Portfolio funds without providing invoices, providing incorrect invoices, or failing to reasonably explain amounts charged, (c) no 2015 tax statements have been provided,[57] (d) Defendant Ferguson is not keeping the borrower's tax and insurance money in separate accounts, but instead is intermingling the borrower's money with his operating funds for unrelated business activity,[58] (e) Mr. Ferguson is servicing the loans without a valid Texas loan servicing license as required by Section 158.051 and 158.052 of the Texas Finance Code,[59] (f) Mr. Ferguson is clouding title, opening up the Portfolio assets to borrower lawsuits, by conveying properties that he does not own and by treating MBH Real Estate, LLC as the owner of the assets, when in fact, MBH Real Estate, LLC

---

[56] Mr. Ferguson has complete control of the portfolio. He responds to simple questions and requests for payment with lengthy, rambling tirades. See all pages of Exhibits I and J. He told Shawn Coker by email on 06/07/2016 "If you email me anything with Ian included in it, it will be ignored." Ex. J, p. 7; *Also see* Ex. J, p. 4 wherein Ferguson adamantly refuses to ever allow a third-party to service the loans so that he can keep collecting fees from the Portfolio.
[57] Ex. A, p. 5, ¶ 15.
[58] Ex. A, p. 3, ¶ 9.
[59] Ex. A, p. 5, ¶ 16.

is not in the chain-of-title on most of the Portfolio assets,[60] (g) Mr. Ferguson is withholding financial information,[61] or providing incomplete reports replete with missing or incorrect information, (h) Mr. Ferguson's spreadsheets and correspondence with Mr. Coker indicate that he is trying to convert and misappropriate Mr. Ghrist's interest in the portfolio by keeping it for his own use,[62] (i) Mr. Ferguson claimed by email to Shawn Coker dated 06/07/2016 to own half of the portfolio assets and to own Plaintiff's interest in the portfolio, which further indicates intent to convert Ghrist's share,[63] (j) there is no reconciliation being performed on the books and records of the Portfolio, meaning that the accounting is highly prone to errors, and (k) Ferguson's spreadsheets show that he has engaged in a substantial amount of self-dealing, that his exclusive management and control of the portfolio gave rise to a fiduciary duty,[64] and that he cannot demonstrate good faith in the exercise of those fiduciary duties.

Based on the foregoing, the statement of facts herein, the verified pleadings, the evidence contained herein, and the testimony to be offered at the hearing on this motion, the Plaintiffs have met or will meet their burden of showing joint interests in the portfolio and risk of loss, removal, or material injury to the portfolio assets. Accordingly, to protect the portfolio assets pending trial of this cause, a receiver should be appointed over the portfolio on the following terms as contained in the Prayer herein.

### 4. PRAYER

---

[60] Ex. N (4228 Ave. N., Fort Worth, Texas 76105, Instrument Number D216074238, Tarrant County, Texas); Ex. D; Ex. A p. 2–3, ¶ 8.
[61] Mr. Ferguson's accounting spreadsheets show over $60,000.00 in expenses on "Exhibit A" Exs. E p. 1, F p. 2. Mr. Ghrist emailed Ferguson on 05/06/2016 asking to see this "Exhibit A." Ex. I, p. 6. The exhibit was never provided. Ex. A p. 7, ¶ 25. More importantly, the spreadsheets provided show an unreasonable lack of double-entry bookkeeping and cannot be properly reconciled, or due to Ferguson's intermingling of funds, reconciliation is impracticable.
[62] Exs. F, G, H, I, J.
[63] Ex. J, p. 9.
[64] *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 261 (1951).

Plaintiff requests that a receiver be appointed and given the following powers and duties in order to protect the property and the parties' interests in it:

The word "Portfolio" as used herein refers to all loans, properties, and anything of value recovered from or related to Cause Numbers 236-269254-13 and 236-248435-10 in the 236th Judicial District Court of Tarrant County, Texas.

1. Power to service, manage, and administer the Portfolio and to hire a loan servicing company to service the Portfolio.

2. Power to compel production of all documents or things necessary to perform a complete, detailed, and thorough accounting of all incomes and expenses related to the Portfolio and to provide access to all documents or things produced to the parties.

3. Power and duty to deposit the incomes net of expenses into this Court's registry pending final trial of this cause or to possess the funds in an appropriate trust or escrow account to which the parties do not have access.

4. Power and duty to submit monthly reports to this Court showing actions taken, incomes, expenses, and a current balance sheet.

5. Power over all bank accounts and any other accounts of any nature related to the Portfolio.

6. Plaintiffs ask this Court to set a receivership bond.

7. The authority and power to manage and administer the Portfolio shall be solely vested in the receiver pending the resolution of this suit. Accordingly, Plaintiffs and Defendants together with all affiliates, agents, or persons acting in concert therewith are prohibited from managing or administering the Portfolio or from servicing the loans in the Portfolio or from conveying title to or encumbering the Portfolio assets.

8. The receiver shall be empowered and authorized to execute documents and other instruments of title to release liens when loans are paid off, to authorize trustees or substitute trustees to foreclose upon Portfolio assets, to convey title to Portfolio properties to buyers, and to take such other and further actions as are necessary to run the business of generating incomes using Portfolio assets.

68

Respectfully submitted,

Law Firm of Caleb Moore, PLLC
2205 Martin Drive, Suite 200
Bedford, Texas 76021
Phone: (817) 953-2420
Fax:     (817) 581-2540
cmoore@thedfwlawfirm.com

By: /s/ Caleb Moore_____
Caleb I. Moore
Texas Bar No. 24067779

### Certificate of Service

I hereby certify that on this the 13 day of December, 2016, a true and correct copy of the foregoing was sent to Sullivan & Cook, LLC, Jeffrey Cook, M. Jason Ankele, 600 E Las Colinas Blvd., Suite 1300, Irving, Texas 75039, (214-520-7494, Fax 241-528-6925, Attorneys for Defendants J. Michael Ferguson PC, J. Michael Ferguson, Anson Financial, Inc. and MBH Real Estate, LLC via electronic service.

/s/ Caleb Moore_____
Caleb Moore

69

Exh DEF027 - Page 16 of 25

017-287611-16

# Exhibit A

CAUSE NO. 017-287611-16

| | | |
|---|---|---|
| GHRIST LAW FIRM, PLLC, AND IAN GHRIST | § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| VS. | § § | 17th JUDICIAL DISTRICT |
| J. MICHAEL FERGUSON, P.C.; J. MICHAEL FERGUSON; ANSON FINANCIAL, INC.; AND MBH REAL ESTATE, LLC | § § § § | |
| Defendants. | § § § | TARRANT COUNTY, TEXAS |

### AFFIDAVIT OF IAN GHRIST

BEFORE ME, the undersigned authority, on this day personally appeared Ian Ghrist, who swore on oath that the following facts are true:

1. "My name is Ian Ghrist. I am over the age of 21 years, I am of sound mind, and competent to make this affidavit, and the information stated below is true, correct, and personally known to me.

2. Defendant Ferguson is a licensed Texas attorney who had a contingency fee agreement with various entities (the "Original Plaintiffs") who were defrauded by David Boles and various business entities managed by Mr. Boles.

3. Attorney Ferguson agreed to share 1/3 of the recovery to him with me in exchange for my work on the case.

4. This is the same financial arrangement that Ferguson and I had on every other case that we worked on jointly, so there is no confusion regarding what the arrangement was. While I worked with Ferguson, my law firm, Ghrist Law Firm, would submit a monthly invoice showing

71

the total fee income generated by outside clients. Those invoices would be paid. Every single one of those invoices was for 1/3 of the fees generated, net of expenses. That was always the agreement, "2/3 to Ferguson, 1/3 to Ghrist" regardless of how the cases were billed.

5.   While I worked with Ferguson, I was a salaried employee of Anson Financial, Inc., a company wholly-owned by Ferguson. I performed extensive, ongoing work for Anson Financial, Inc. on a weekly basis. The work that I did for Anson Financial, Inc. was paid for by my salary. I brought in income from outside clients by doing legal work for them. Ferguson took 2/3 of these fees, after expenses, and I took 1/3. Anson Financial, Inc., thus, got an attorney on call at all times to handle whatever legal matters arose, which were numerous for such a small company, and on top of that, Ferguson earned income from the legal fees that I generated. Thus, Anson Financial, Inc. essentially got a general counsel on staff who could handle Anson Financial, Inc. legal matters and also generated income for Ferguson.

6.   In reliance upon such agreement, I conducted depositions, performed discovery, sent record requests, served subpoenas, put David Boles and his entities into receivership, and seized a portfolio (the "Portfolio") as receiver.

7.   The word "Portfolio" as used herein refers to all loans, properties, and anything of value recovered from or related to Cause Numbers 236-269254-13 and 236-248435-10 in the 236th Judicial District Court of Tarrant County, Texas. The Portfolio mostly consists of promissory notes secured by deeds of trust on residential real property located in the Dallas-Fort Worth metroplex, but there are also mineral rights and real estate in inventory that needs to be owner-financed or otherwise sold.

8.   On or about June 1st, 2015, I and the agent for the Original Plaintiffs, Shawn Coker (hereinafter "Coker"), attended a mediation and entered into a settlement agreement with

an associate of Mr. Boles that resulted in recovery of an additional thirteen notes and properties. The settlement paperwork, directed by Ferguson, caused these properties to be assigned to MBH Real Estate, LLC. Consequently, those thirteen notes and properties are the only notes and properties, in fact, that could arguably by owned by MBH Real Estate, LLC.

9.      Attorney Ferguson has been managing the Portfolio since about November of 2014. After Attorney Ferguson made inconsistent and haphazard payments to the Original Plaintiffs, provided incomplete and incompetent bookkeeping to Ghrist and Coker, failed to deliver tax reports, refused Coker's demand for an independent third-party to service the loans, unlawfully claimed ownership of half of the Portfolio that was clearly owned by the Original Plaintiffs, admitted to failing to keep the borrower's tax and insurance money in an escrow account, and unreasonably and unprofessionally insulted and threatened Coker and Ghrist, the Original Plaintiffs threatened to file suit against Ferguson. Ferguson entered into a settlement agreement with the Original Plaintiffs.

10.      I separated from Ferguson in December of 2015. At or just before the time of the separation, Ferguson finally paid a nearly six-month old invoice from Ghrist Law Firm, and had become habitually late on Ferguson's monthly payments to Ghrist Law Firm. Moreover, Ferguson and Ghrist disagreed on several issues including which clients to take on, which cases to maintain, what type of cases or matters to spend time and effort on, and Ferguson's multiple late payments and increasingly weak excuses for making tardy payments. I was having to ask Ferguson multiple times about delinquent payments and the excuses were becoming worse over time. At the time of separation, Ferguson and I entered into a written separation agreement. The separation agreement addressed all currently pending matters. All previously-closed matters

73

were unaffected. For example, the monthly payments on closed cases continued on a monthly basis after the separation agreement.

11.     When Ferguson and I met to execute the separation agreement, Ferguson told me that because the Portfolio incomes had exceeded Portfolio expenses, payments would begin on a monthly basis starting in January of 2016. To date, Ferguson has not made a single payment, monthly or otherwise. When I ask Ferguson about getting paid, he responds with long, rambling, barely-comprehensible diatribes wherein he blames me for his various misfortunes, acknowledges that he owes me money, tries to buy me out for a tiny fraction of what I am owed, and does everything that he can to divert my attention away from the money that he owes to me with ludicrous allegations unrelated to the Portfolio that he never discussed with me while we worked within earshot of each other for over two years. Ferguson's intent seems clear—to bully me into selling my shares to him for a fraction of what they are worth, while he hoards the cash incomes, and fails to account for the money that he is collecting.

12.     Even though payments had been coming in for twenty months by June of 2016, Ferguson had made only five payments to the Original Plaintiffs and zero payments to me.

13.     Ferguson has produced four accounting spreadsheets to me. Despite my request, he has not provided substantiating information for the numbers displayed in the spreadsheets. It appears that no double-entry bookkeeping is being done and the numbers are not being reconciled in any reasonable manner to verify their accuracy.

14.     I have been wholly excluded from management and control of the Portfolio. Ferguson tried to sell my stake in the Portfolio to Shawn Coker without talking to me about it. Mr. Ferguson represented to Mr. Coker that Mr. Ferguson owns half of the Portfolio. Mr. Ferguson does not consult with me before he takes any action related to the Portfolio. Mr.

Ferguson is carrying on as if he owns the entire Portfolio and was doing so even before he entered into a settlement agreement with Mr. Coker. Mr. Ferguson dictates terms to me without discussing those terms with me, even when the terms differ from our previous agreements and course of dealings.

15.    I have not received any tax statements related to the Portfolio, including the required K-1s or, at least, 1099s.

16.    None of the Defendants have a valid Residential Mortgage Loan Servicer Registration, which is required in the State of Texas to service loans. Specifically, such registration is required of any person/entity who receives scheduled payments from a borrower under the terms of a residential mortgage loan, including amounts for escrow accounts; and makes the payments of principal and interest to the owner of the loan or other third party and makes any other payments with respect to the amounts received from the borrower as may be required under the terms of the servicing loan document or servicing contract.

17.    The financial statement attached to the Application for Appointment of Receiver as Exhibit E was provided to me in PDF format on or about June 1st, 2015 and it is a true and accurate copy of the document that I was provided. J. Michael Ferguson prepared the document and delivered it to me. The financial statement attached to the Application for Appointment of receiver as Exhibit F was provided to me on or about November 24th, 2015 and it is a true and accurate copy of the excel spreadsheet that I was provided by Ferguson. I converted the Excel file to a PDF file, without modifying it, using a setting that would save each tab to a separate page of the PDF. Each page of the PDF statement was a tab on the original Microsoft Excel file. The financial statement attached to the Application for Appointment of receiver as Exhibit G was provided to me on or about March 1st, 2016 and it is a true and accurate copy of the excel

75

spreadsheet that I was provided by Ferguson. I converted the Excel file to a PDF file, without modifying it, using a setting that would save each tab to a separate page of the PDF. Each page of the PDF statement was a tab on the original Microsoft Excel file. The financial statement attached to the Application for Appointment of receiver as Exhibit H was provided to me on or about April 1st, 2016 and it is a true and accurate copy of the excel spreadsheet that I was provided by Ferguson. I converted the Excel file to a PDF file, without modifying it, using a setting that would save each tab to a separate page of the PDF. Each page of the PDF statement was a tab on the original Microsoft Excel file.

18. The monthly bills sheets and payments attached to the Application for Appointment of Receiver as Exhibit C are true and accurate copies of the records that I kept at or near the time of the acts, events, or conditions recorded by me with knowledge, in the course of a regularly conducted business activity. Making the records was a regular practice for me on behalf of Ghrist Law Firm. I am custodian of records for Ghrist Law Firm and had a business duty to make the records. These are just a sampling of the monthly billing sheets. I did a monthly billing sheet like these for each month that I worked with J. Michael Ferguson. I do not have all of the billing sheets because I only started making an effort to keep them once Ferguson started getting behind on his monthly payments and once I recognized that he was going to be habitually late on making payments on the billing. For example, the check dated 10/02/2015 shows that it was for the May and September billing and was six full months late.

19. The emails in Exhibit I to the Application for Appointment of Receiver are true and accurate copies of the emails that Ferguson sent to me.

20. The note in Exhibit K is a true and accurate copy of the note. The note was made at or near the time of the acts, events, or conditions recorded by a person, myself or J. Michael

76

Ferguson, with knowledge, in the course of a regularly conducted business activity. Making the note and keeping a record of the note was a regular practice for me on behalf of Ghrist Law Firm. I am custodian of records for Ghrist Law Firm and had a business duty to make records.

21.     The emails and attached Trust Agreement in Exhibit L to the Application for Appointment of Receiver are true and accurate copies of those documents. The trust agreement was an attachment to J. Michael Ferguson's email dated June 6th, 2015.

22.     The emails attached as Exhibit M to the Application for Appointment of Receiver are true and accurate copies.

23.     The bank statement attached as Exhibit O is a true and accurate statement, kept by me for Ghrist Law Firm in the ordinary course of business, the record was made at or near the time of the acts, events, or conditions recorded by a person with knowledge, the banker, in the course of a regularly conducted business activity. Keeping the bank records was a regular practice for me on behalf of Ghrist Law Firm. I am custodian of records for Ghrist Law Firm and had a business duty to make records.

24.     Gasget, LLC is a company wholly owned by me.

25.     Defendant Ferguson never produced "Exhibit A" to me in response to my emailed request dated 05/06/2016.

Further affiant sayeth naught."

Ian Ghrist

State of Texas §
County of Tarrant §

    This instrument was acknowledged before me on this the ___14th___ day of ___November___,

2016 by Ian Ghrist.

DAISY LORENA REYES
MY COMMISSION EXPIRES
AUGUST 14, 2019

Notary Public in and for the State of Texas

78

Certified True Copy

===================================================================================================

THE STATE OF TEXAS


COUNTY OF TARRANT


I, _____Thomas A. Wilder_____ , Clerk of the District Courts of Tarrant
County, Texas, do hereby certify that the documents contained in this record
to which this certification is attached are all of the documents specified by
Texas Rule of Appellate Procedures 34.5(a) and all other documents timely
requested by a party to this proceeding under Texas Rule of Appellate
Procedure 34.5(b).

GIVEN UNDER MY HAND AND SEAL at my office in Tarrant County, Texas, this
date of November 20, 2018.




                                    Thomas A. Wilder
                                    District Clerk
                                    Tarrant County, Texas




                              By: _Michelle Carter_____
                                  MICHELLE CARTER
                                  Deputy District Clerk