342-288776-16

FILED
TARRANT COUNTY
1/26/2018 3:31 PM
THOMAS A. WILDER
DISTRICT CLERK

### CAUSE NO. 342-288776-16

| | | |
|---|---|---|
| B. FRAZIER MANAGEMENT, INC, FORMERLY KNOWN AS FRAZIER ASSET MANAGEMENT, INC. and BRIAN H. FRAZIER, Individually, | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § § | |
| V. | § § § | 342nd JUDICIAL DISTRICT |
| ANSON FINANCIAL, INC. AS SUCCESSOR IN INTEREST TO JENTEX FINANCIAL, INC., | § § § § | |
| *Defendant.* | § | TARRANT COUNTY, TEXAS |

---

### MOTION TO COMPEL REQUEST FOR PRODUCTION No. 2 AND SANCTIONS

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** B. Frazier Management, Inc., Formerly known as Frazier Asset Management, Inc., and Brian H. Frazier, (Frazier) Plaintiffs in the above-styled cause of action, and files this Motion to Compel Request for Production No. 2 and Sanctions:

### SUMMARY

As the Court will recall this suit involves a dispute between two members of a Joint Venture that was created and operated under a written agreement, with some written amendments. Anson has purchased Jentex's interest and stands in Jentex's shoes as Frazier's new partner. The issue before the Court is a simple one. Do both members of the Joint Venture get equal access to view the Joint Venture's bank account statements? Of course they do. Frazier under the JV Agreement or simply by being a member of the JV under Texas common law is entitled to see the unredacted bank statements that JV money is flowing in and out of.

Anson has unrestricted access and as a 50% owner so should Frazier.  Anson objects to the request arguing that Frazier is only entitled to see the reports that Anson creates documenting what it says the revenue, expenses etc are for the JV.  Frazier desires to see the bank records to verify the accuracy of the financial reports he has received as well as confirm that in fact JV money is not being used for non -JV purposes or being removed, then put back or that it in fact is in the bank to begin with.  Only unredacted JV bank account records will show this.

Reasonable sanctions for attorney fees incurred by Frazier in preparing this motion are appropriate in this instance because common law, common sense and the JV Agreement itself all make it overwhelmingly clear that Frazier is entitled to see the bank records for a JV that he is 50% owner of.  The objections are truly frivolous and meant to delay and create unnecessary expense.  There is no reasonable explanation for not producing the bank records and while discovery sanctions are extremely rare, Plaintiff respectfully requests the Court grant them here and stop or at least deter the continuous delay tactics and frivolous objection to routine issues by Defendants.

## I. FACTS

1. Responses to Requests for Production were received on April 20, 2017 and Defendant objected to Request 2 and did not produce the requested bank records. Exhibit 2.

2. Multiple conversations and requests for the bank records took place with previous counsel and an email was sent to current counsel requesting the bank records. Anson's Counsel, and J. Michael Ferguson responded on behalf of Anson on January 11, 2017 stating that it would not produce bank records and that real issue is limited to whether or not Anson has paid the correct principal and interest.

Suggesting that Mr. Frazier should calculate that amount in his head from the pay histories Anson has provided. Exhibit 4.

3. Frazier requests the bank statements because

## II. Evidence in Support of Motion to Compel

1. "Exhibit 1" Affidavit of Brian Frazier

2. "Exhibit 2" Requests for Production and Defendant's Responses.

3. "Exhibit 3" Joint Venture Agreement.

4. "Exhibit 4" Follow up email dated January 11, 2017 requesting production sent to Anson's Counsel, and J. Michael Ferguson's response

## III. Scope of Discovery/Access to JV Records

The law governing the issue of the scope of discovery is well established. "Parties are 'entitled to full, fair discovery' and to have their cases decided on the merits." *Ford Motor Co. v. Castillo,* 279 S.W.3d 656, 663 (Tex.2009) (quoting *Able Supply Co. v. Moye,* 898 S.W.2d 766, 773 (Tex.1995) (orig .proceeding)). "A trial court abuses its discretion when it denies discovery going to the heart of a party's case or when that denial severely compromises a party's ability to present a viable defense." *Id.* "Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution." *In re CSX Corp.,* 124 S.W.3d 149, 152 (Tex.2003) (orig. proceeding).

A joint venture is generally governed by the same principles of law as apply to partnerships. *See Truly v. Austin,* 744 S.W.2d 934, 937 (Tex.1988) (Kilgarlin, J., concurring); *Brown v. Cole,* 155 Tex. 624, 631, 291 S.W.2d 704, 709 (1956); *Heinrich v. Wharton County Livestock, Inc.,* 557 S.W.2d 830, 833 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.)

Even in the absence of an agreement authorizing Frazier's access to the JV bank records, in Texas the common law rule is that partners are each fully entitled to full access to partnership records. *See*, *Rush v. Browning*, 103 Tex. 649, 652, 132 S.W. 763, 765 (1910), ("a partner is entitled to the possession of the books for examination as they belong to him as much as to his copartner."); *B & R Communications v. Lopez*, 890 S.W.2d 224, 227 (Tex. App.—Amarillo 1994, no writ) (*holding* that a minority partner has the express right to review partnership records whether or not they are relevant to the case in dispute even when the partner has no right to direct the business of the partnership).

Here, the issues in dispute include the movement of JV money by Anson in violation fo the JV agreement, self dealing, improper accounting of JV money, improper distribution of money. Currently, Defendant have produce voluminous reports and records, nearly every one of which was created by Defendant. They could be utter fiction, accurate or somewhere in between. Plaintiff needs the bank records to determine if proper account balances have been maintained for the JV at all times. The requested records are relevant to all the claims and defenses by each party.

Requests for Production were served on Defendant Anson Financial, Inc. as successor in interest to Jentex Financial, Inc. (Anson), who objected to Request for Production No. 2 (RFP2) requesting production of all statements for the JV bank account for 2014, 2015, 2016, and 2017. See Exhibit 2, pg. 3 ¶ 4. Defendant's objections were based on the following: (a) as seeking information not relevant, admissible, or reasonably calculated to lead to the discovery of admissible evidence, and is therefore, outside the scope of permissible discovery; (b) on the ground that it is overly broad, unduly burdensome, insufficiently limited in time and scope, and constitutes an impermissible "fishing expedition," and; (c) it seeks highly personal and

confidential information and invades the personal and constitutionally protected privacy rights of persons not party to this suit. See Exhibit 2, pg. 3, ¶ 5.

Anson is bound by the JV agreement (the JV) as successor in interest to Jentex, and Joint Venturer under the JV. The JV sets out specific responsibilities and rights of the joint venturers relating to the maintenance and access of its bank accounts and access to records. Article IV of the JV, as amended states:

> The Joint Venture shall keep and maintain correct and complete books of account at all times, showing Joint Venture assets and liabilities and all income received and all monies paid out, which said books of account shall be kept at the office or offices of the Joint Venture and used in common by the Joint Venturers so that any one of them may have access thereto at all times without interruption or hindrance from the other.

See Exhibit 3, pg. 2, ¶ 3.

Article V as amended of the JV states:

## ARTICLE   V

### JOINT VENTURE'S DUTIES

Joint Venturers will share equally in the duties of   management   of the Joint Venture property.   All decisions affecting the   Joint   Venture or its business will be determined by a majority vote of   the   ownership interest.

Notwithstanding the general duties set forth above,   the   Venturers agree to specific duties as outlined herein:

Jentex Financial, Inc. will;

Service all loans resulting from the sale of tracts out of the said land.

Prepare a ~~semi~~ bi-monthly accounting to the Venturers.

Prepare year-end documents and financials.

Maintain a bank account for   the   Joint   Venture   and   account monthly for all transactions.

Frazier Asset Management, Inc. will;

Sell and market the tracts out of said land according   to   the pricing and terms agreed to by the Ventures.

Install the septic systems on each   tract   as   needed   at   the lowest possible cost and at a price agreed to by both parties. The cost of the septic systems shall be   borne   by   the   Joint Venture.

Oversee the installation of a well on each of   the   tracts   or arrange   for   a   water system   as   the   situation dictates; Joint

EXHIBIT 3, pg. 11

Article IX as amended states:

<u>ARTICLE IX</u>

<u>BANK   ACCOUNTS</u>

Accounts in the name of the Joint Venture shall  be  maintained  in such bank or banks as the  Joint  Venturers  shall  from  time  to  time select.  All money in the Joint Venture  and  all  instruments  for  the payments of money when received shall be deposited to the credit of  the Joint Venture on a  timely  basis.   All  checks  drawn  for  more  than $10,000.00 on any bank account shall be signed by both Joint  Venturers; however, either Joint Venturer may waive this provision if  notified  by the other Joint Venturer in advance and giving  authorization  for  such check to the  the signing  Joint Venturer; this  provision  shall  be retroactive to include checks drawn to date as well as those  from  this date forward.

*Id.* at pg. 12.

These sections of the JV collectively and independently provide Frazier the express right

to have access to the bank account records of the JV. Article IV gives both members access to all

JV records "at all times without interruption or hindrance from the other."  Anson's denial

violates this section.  Section V provides all decisions affecting the JV will be determined by a

majority vote.  There has bene no majority vote of the members authorizing the restriction of

information provided to Frazier, no majority vote allowing the previously maintained JV bank

accounts to be closed, for funds to be transferred to Anson's operating account or restricting

Frazier from sharing "equally in the duties of management of Joint Venture Property.  Anson's

denial of Frazier's request to see JV bank account records violates Section V.  Section IX

requires the accounts in the name of the Joint Venture to be maintained in the bank or banks that

the Joint **<u>Venturers</u>** (emphasis added to point out the **<u>plural</u>** use of the word) select.  Frazier has

not selected Anson's operating account as a JV bank account.  Clearly, the JV provides Frazier

the unlimited right to view bank records of the JV that are unredacted.

A follow up email was sent further requesting Anson provide the documents no later than

Monday, January 15th. See Exhibit 4.  Anson responded stating the "Anson bank account is not

being disclosed" *Id.* The requests seeks the JV bank account, not the Anson bank account." If Anson has deposited all JV funds into the Anson bank account making the Anson bank account also the JV bank account, then those bank records must be disclosed. It is counsel's understanding from other correspondence that Anson's operating account is also the JV's account.

As shown above Texas common law provides that Plaintiff should have access to the bank account records, the joint venture agreement grants access to any and all JV record to Frazier and under general rules and standards of discovery the bank records should be produces as being relevant to the issues in dispute. Any expert to be retained by Plaintiff must see the bank records in order to render any opinions regarding the accuracy to the records Defendant has created and produced. We request the Court compel the request for production and award reasonable and necessary attorney fees for the filing of this motion.

## IV. Requests for Production

Plaintiff requests the Court to compel Anson to comply with the Request for Production No. 2, by providing all bank account statements for the JV bank account for 2014, 2015, 2016, 2017 to the Law Firm of Caleb Moore, PLLC, at 2205 Martin Drive, Suite 200, Bedford, Texas, 76021, within 10 days of the Court's order.

The requested information is discoverable and absolutely necessary for Plaintiff to verify on this motion and award reasonable and necessary attorney fees to Plaintiff for the cost of preparing this motion.

## V. Attorney's Fees.

Defendants' failure to produce the requested statements has necessitated the filing of this Motion to Compel.  Trial courts have broad discretion to impose discovery sanctions to secure compliance with discovery rules, to deter other litigants from similar misconduct, and to punish violators. *In re Estate of Preston,* 346 S.W.3d 137, 156 (Tex. App.—Fort Worth 2011, no pet.); *see Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992). In discovery-sanction cases, a trial court's discretion is limited by the requirement of rule of civil procedure 215.2(b) that the sanctions be "just" and by the parties' constitutional right to due process. *TransAm. Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917–19 (Tex. 1991) (orig. proceeding); *Estate of Preston,* 346 S.W.3d at 156. A sanction is just if a direct relationship exists between the offensive conduct and the sanctions imposed. *TransAm. Natural Gas Corp.,* 811 S.W.2d at 917; *Estate of Preston,* 346 S.W.3d at 156. A direct nexus exists when the sanction is directed against the true offender and is tailored to remedy any prejudice the discovery abuse caused. *TransAm. Natural Gas Corp.,* 811 S.W.2d at 917; *Estate of Preston,* 346 S.W.3d at 157. To be just, a sanction must also not be excessive. *TransAm. Natural Gas Corp.,* 811 S.W.2d at 917; *Estate of Preston,* 346 S.W.3d at 157. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. *Cire v. Cummings, 134 S.W.3d 835, 839 (Tex. 2004)*; *Estate of Preston,* 346 S.W.3d at 157.

The requested bank statements that have not been produced contain clearly discoverable information, and the production required was not voluminous or reasonably disputed.  Plaintiffs request that a sanction in the amount of the reasonable and necessary attorney fees incurred by Plaintiffs in having to have this motion filed and argued to the Court should be awarded against Defendants as the objections are unreasonable in this case. Therefore, pursuant to Texas Rule of

Civil Procedure 215, Defendants should be required to pay reasonable attorney's fees and expenses incurred in connection with this Motion. There is a direct nexus between the amount of the sanction with the harm to Plaintiff and it is just to sanction Defendants.

## VI. Certificate of Conference

Efforts to resolve these matters without court intervention were attempted as evidenced by the Certificate of Conference included herein and the attached email.

## VII. Prayer

**WHEREFORE, PREMISES CONSIDERED**, Movant prays that, upon hearing thereof, the Court order Defendant Anson to completely and fully respond to the Request for Production No. 2 as requested hereinabove, that reasonable attorney's fees and expenses be awarded, and for such further relief that may be awarded at law or in equity.


Respectfully submitted,


**LAW FIRM OF CALEB MOORE, PLLC**
2205 Martin Drive, Suite 200
Bedford, TX 76021
Telephone: (817) 953-2420
Facsimile:  (817) 581-2540
cmoore@thedfwlawfirm.com


By: */s/ Caleb Moore*
Caleb I. Moore
cmoore@thedfwlawfirm.com
Texas Bar No. 24067779

**ATTORNEY FOR WOOLBRIGHTS**

## CERTIFICATE OF CONFERENCE

I certify that on January 11, 2018, I attempted to confer regarding the Defendants' objections to discovery, but an agreement was not reached. Therefore, reasonable effort has been made to resolve this dispute without the necessity of Court intervention, but such efforts have been unsuccessful and it is necessary to set this Motion for a hearing.

*/s/ Caleb Moore*
Caleb Moore

## CERTIFICATE OF SERVICE

I certify that on January 26, 2018, a true and correct copy of the above was served in accordance with the Texas Rules of Civil Procedure –certified mail on Defendant.

*/s/ Caleb Moore*
Caleb Moore

342-288776-16

FILED
TARRANT COUNTY
9/13/2019 10:54 PM
THOMAS A. WILDER
DISTRICT CLERK

## CAUSE NO. 342-288776-16

| | | |
|---|---|---|
| B. FRAZIER MANAGEMENT, INC, FORMERLY KNOWN AS FRAZIER ASSET MANAGEMENT, INC. and BRIAN H. FRAZIER, Individually, | § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § § | |
| V. | § § § | **342nd JUDICIAL DISTRICT** |
| ANSON FINANCIAL, INC. AS SUCCESSOR IN INTEREST TO JENTEX FINANCIAL, INC., | § § § § § | |
| *Defendant.* | § | **TARRANT COUNTY, TEXAS** |

## MOTION TO COMPEL INSPECTION OF THE BANK RECORD AND SANCTIONS

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** B. Frazier Management, Inc., Formerly known as Frazier Asset Management, Inc., and Brian H. Frazier, (Frazier) Plaintiffs in the above-styled cause of action, and files this Motion to Compel review of JV bank records and sanctions:

## SUMMARY

This Motion requests that the Court order that Anson produce either to the Auditor or the Court for an in camera review 12 monthly statement of the bank account holding the JV money to be compared to the stated balance owed to the JV by Anson on that month.   Plaintiff requests it be 4 statements from each year from 2016-2018.  Additionally, the Motion requests sanctions be assessed against Anson for failing, either intentionally or through lack of effort, to provide the Auditor with sufficiently organized records to enable the Auditor to complete its review and report of the JV's finances in a timely manner and in time for more than one past or current trial

setting.

The Auditor confirmed on August 26, 2019 that he was not viewing any bank records and has not confirmed that the money that the Anson records show is being held or owed to the JV is actually in a bank account on any given day. The Auditor also reports that the Anson financial reports he has received have been repeatedly changed during the review, have been grossly incomplete and the records verifying the content of those reports have been so unorganized that the review and report could not be completed in the time he has had or for the amount of the budget. These changes have been going on into August of 2019.

The auditing rules published by Public Company Accounting Oversight Board governing review of related party transactions supports the review of Anson's bank records in which the JV money is held. Anson, who is holding all of the JV's cash and assets, is a "related party" (an owner of the JV) and is using its account to hold an "intercompany receivable." or money owed by Anson to the JV, which it is a 50% partner of. For these reasons, Anson should be ordered to produce to the Court or the Auditor at least 12 monthly account records. Anson should also be sanctioned as its neglect or intentional disorganization of the JV records has delayed this trial yet again and is not in compliance with the January 18, 2019 Order Appointing Alternate Auditor.

### I. FACTS

1. The Court's Order Appointing Alternate Auditor was signed on January 18, 2019 and required that any party provide the Auditor with requested information within 10 business days of the request being sent by the Auditor, unless objected to. See Court's Docket

2. On February 4, 2019, the Auditor issued its engagement letter and agreed upon procedures, which the parties later signed. Exhibit 3. Included in the Agreed Upon Procedures were the following agreements:

- Cash
  - o Agree cash receipts and disbursements to bank statement, if needed, including notes receivable, loan payments, partner distributions, and expenses.
  - o Recalculate balances and activity in Alvord 287 JV due to/due from account on Anson's books.

- Notes Receivable
  - o Agreement payments received to note amortization tables. Trace payments to bank statements, if needed. Recalculate amounts due as of each year-end and as of 10/23/2018.
  - o Confirm all new note receivables were added to the notes receivable sub-ledger.

  - Loan Payable (Affiliate loan payable and Bank Notes)
    - o Agreement payments made to note payables. Trace payments to bank statements, if needed.
  - Partner Distributions
    - o Agree all payments made to partners to general ledger (G/L), check copies, and bank statements, if needed.

*Id.*

3.    Kyle Hendrick has been the primary point of contact in obtaining and reviewing records provided by Mike Ferguson/Anson for the Auditor.  Exhibit 1, pg. 28, an email from Kyle, summarizes a small amount of the email correspondence chronicling the delays and lack of organization of the records and states:



Mike,

Regarding your letter dated 9/6/2019.

**TIMELINE:**

I believe you have some items incorrect in your timeline.  I'll point at a few of the issues for brevity.

(Your Letter Page 1) We did meet initially on 2/25/2019.  You provided a flash drive, no binders or QuickBooks file at that time.  You can see my response on 3/7/2019 to Nate and Caleb in the e-mail below:
In that e-mail, based on a quick scan, I mentioned what appeared to be missing.  In addition, I brought out an example of information that was provided; however, not well organized.  Furthermore, on the initial flash drive only information you provided under invoices paid was the following:

| Invoices Paid  Directory | JMFPC Statement Directory | Anson Invoice Directory |
| --- | --- | --- |
|  | 1-2016 | 01-2016 |
|  | 2-2016 | 02-2016 |
|  | 3-2016 | 03-2016 |
| Anson Invoice | 4-2016 | 04-2016 |
| JMFPC Statements | 5-2016 | 05-2016 |
| Smith Legal Fees and Taxes Lot 33 | 06-2016 | 06-2016 |
| Listing of Taxes to Wise County_0033 | 07-2016 | 07-2016 |
| Wise County Taxes Paid | 08-2016 | 08-2016 |
| CoServ Bill_0030 | 09-2016 | 09-2016 |
| NTW Septic Invoices Paid_0029 | 9-2014 through 10-9-2016 | Anson Invoice Jan 12 2015 |

Nothing appeared to be provided for 2017 or 2018 for expenses.

We received the 1st QB file Version #1 – Dated 3/7/2019 @ 11:00 am.  Note:  This version didn't include any expenses, outside of loan servicing fees, for 2018.

(Your Letter Top of Page 2).  We did meet at my office on 5/22/2019.  On 5/21/2019, I sent an e-mail (see e-mail chain below) to request a meeting with either you or someone in your office that could explain how the JV was booking expenses and how the support that had been provided could be tied back to the QB file for the JV.  (FYI:  At this point in time we had QB version #2 – Dated 5/13/2019 @ 1:34pm).

You and I met on 5/22/2019.  During the meeting I let you know that I needed the support for the expenses that agreed to the entries in the JV's QB file.  I also stressed the importance of having items well organized to speed the process and keep my hours down.  Here is the e-mail that I sent you after the meeting to summarize.

You e-mailed me on 6/3/2019 to let me know that you had put some support for expenses on the Sharepoint Drive for 2014 as an example of how you were organizing information.

On 6/10/2019 at 8:59 on you e-mail me that you had updated the Sharepoint drive through 4-2019 and provided an updated QB file (QB Version #3 – Dated 6/10/19 @ 8:52 pm)

If you look at the billing support Kent provided to you, most of hours from June came after 6/10, which is when you provided the 3rd QB file and expense support.

As I continued to move forward with this engagement I sent the following updates via e-mail:
- 5/22 – Loan Serving fee
- 6/20 - Cash and the Due to/from account with Anson Financial
- 6/20 – Beginning loan balance comparison
- 6/20 – Lot inventory questions
- 6/26 – Lot inventory
- 6/26 – JV Expenses

After I sent out the various updates.   You e-mailed me on 6/30/2019, stating that you were going to reorganized every transaction since Anson took over the JV.  I said I would hold off on all work until we hear back from you.  I've attached the e-mail chain.

Exhibit 1 pg. 28.

4.   The Auditor's report has been delayed numerous times by Mr. Ferguson/Anson completely

re doing the Quick Book files, providing incomplete Quick Book files and from Anson being more

than a year behind at times in inputting data into the Quick Book file or in failing to provide

supporting documentation. *See* Exhibit 1 pgs 28, 29, 32,:

A new QB file (Version #5 – dated 8/2/19 @ 8:17pm) was provided on 8/2/2019.   With that file you stated "This is finally ready. I got rid of all the clutter. Every expense is bookmarked if we have it and a check is present or the view of statment if we have it. If its not there, please just mark that there are not 2 types of backup, i.e. there is invoice but no check or check but no invoice or there is no support at all. It does not matter. Just please mark them as they are with as little time as possible. I need you to estimate the time and we need to discuss that. Thanks."   Based on a scan of that QB file I e-mailed everyone on 8/16/2019 when a revised estimate to complete and timeline.   I outlined in my e-mail the various account that had changed, besides just the expenses.

**From:** Kyle Hendrick <kyle@milbern-ray.com>
**Sent:** Tuesday, May 21, 2019 5:05 PM
**To:** J. Michael Ferguson <mike@fnalegal.com>; Caleb Moore <cmoore@thedfwlawfirm.com>
**Cc:** Thomas Herald <tom@taheraldpc.com>; Nate Richards <nate@fnalegal.com>; Kent Ray <kar@milbern-ray.com>
**Subject:** RE: Alvord 287 JV

Mike,

A few items:

- I need to meet with whomever in your office is booking the expense into the QB file. I need someone that can show me which invoice go to which entries. Specifically all expense that hit the Service and Sale expense account in 2017 were booked between 10/24/2017 and 10/26/2017. Do you or someone in your office have time tomorrow?
- Regarding the updated QB file that you posted on the sharepoint site. I know you mentioned that the original file didn't have all the expenses posted for 2018. I didn't see any changes to 2018 expenses from the original file that we received. Are you still working on the 2018 QB File?
- For the monthly loan servicing fee entry. How is the calculated? Is their a formal agreement that specifies the calculation? Has it changed over the period we are reviewing? I don't recall seeing anything in the JV agreement regarding a calculation.
- Where are the monthly late fees and service book on a monthly basis? Or is there an agreement that these fees are not due to the JV?

**From:** J. Michael Ferguson <mike@fnalegal.com>
**Sent:** Thursday, May 16, 2019 2:16 PM
**To:** Caleb Moore <cmoore@thedfwlawfirm.com>
**Cc:** Kyle Hendrick <kyle@milbern-ray.com>; Thomas Herald <tom@taheraldpc.com>; Nate Richards <nate@fnalegal.com>; Kent Ray <kar@milbern-ray.com>
**Subject:** RE: Alvord 287 JV

Everyone,

I shared a link to the Audit Folder with Kyle Hendrick and with Caleb Moore.

We updated the Monthly reports through 4/30/2019.

We updated copies of all payments received including ACH payments through 12/31/2018. We will continue to update this folder through 4/30/2019.

Yesterday was May 15, 2019 and the Franchise Tax Report was filed or extended. I will update that when confirmed. Bill Spore, the CPA that has done the Tax Returns for 2014-2017, should have both the Franchise Tax Return and the Tax Return for 2018 to us by tomorrow hopefully.

    5. Exhibit 1 is 43 pages long and is only a sampling of the significant number of emails

exchanged related to getting the Auditor the information needed to get the report done.  The length

was needed to demonstrate the gross neglect or intentional disorganization of the JV records as

well as the lack of reliability in the Quick Book files and "spreadsheets" provided by Anson, which

are to date the only records produced or viewed by the Auditor that show Anson is or should be in

possession of hundreds of thousands of dollars in cash that is owed to or owned by the JV.   Of

note:

**From:** Kyle Hendrick <kyle@milbern-ray.com>
**Sent:** Thursday, May 30, 2019 5:42 PM
**To:** Caleb Moore <cmoore@thedfwlawfirm.com>; Thomas Herald <tom@taheraldpc.com>; Nate Richards <nate@fnalegal.com>; Kent Ray <kar@milbern-ray.com>; J. Michael Ferguson <mike@fnalegal.com>
**Subject:** RE: Quick Book Files and Audit

Caleb,

Regarding the expenses, see my e-mail that I sent 5/22/19. The QuickBooks (QB) file that has been provides does not include any expenses, with the exception of the Loan Service Fee for 2018. The 2017 expenses (non-loan service fee) were entered into the JV QV between 10/24 and 10/26/2017, the total amount of expense in QB for 2017 agrees to the 2017 tax return provided. My understanding, per Mike Ferguson e-mail on 5/21/19 is that he is waiting on their external CPA (Mr. Spores) to post the 2018 expenses. I have not received an ETA on when that will be ready.

Mike provide some additional expense documents via the Sharepoint drive, but they were not organized in a way for me to tie them back to the JV's QB file (based on my previous request). I spoke with Mike yesterday and explained exactly what we need to see on the non-loan service fee expenses. He was going to have some in his office organize the file/support to match the JV's QB transaction detail (see excel file of expenses in attached e-mail.)

I can't give you an ETA for completion until we have the needed support on the expenses and the completed QB that is updated through Oct 2018.

Kyle

## Ex. 1, Pg. 42.

**From:** Caleb Moore <cmoore@thedfwlawfirm.com>
**Sent:** Thursday, March 7, 2019 10:36 AM
**To:** Kyle Hendrick <kyle@milbern-ray.com>
**Cc:** Nate Richards <nate@jmichaelferguson.com>; Kent Ray <kar@milbern-ray.com>
**Subject:** Re: FW: Alvord 287 JV

Kyle, Kent:

Nate has reported to me that all of the documents you have requested or at least sufficient documents to start the audit have been delivered to your office as we sit here today.

Please confirm you have what you need.

I know you are busy in tax season, but we also have a hard trial date with the Court, please do your best to look ahead and if you see missing information or any issues on our end that will cause a delay, please email us and let us know that if possible we can make sure and stay ahead of you with regard to making sure you have what you need to complete your audit.

Don't hesitate to email us if there are any questions. When possible, please update us on progress so we can plan accordingly.

## Ex. 1, Pg. 39

**From:** Caleb Moore <cmoore@thedfwlawfirm.com>
**Sent:** Friday, April 19, 2019 12:03 PM
**To:** Kyle Hendrick <kyle@milbern-ray.com>
**Cc:** Nate Richards <nate@fnalegal.com>; J. Michael Ferguson <mike@fnalegal.com>; Kent Ray <kar@milbern-ray.com>
**Subject:** Re: FW: Alvord 287 JV

Kyle, Kent:

Can you please update me on the audit's progress?

Kind Regards,

Caleb Moore

## Pg. 37

**From:** Kyle Hendrick <kyle@milbern-ray.com>
**Sent:** Tuesday, May 21, 2019 5:05 PM
**To:** J. Michael Ferguson <mike@fnalegal.com>; Caleb Moore <cmoore@thedfwlawfirm.com>
**Cc:** Thomas Herald <tom@taheraldpc.com>; Nate Richards <nate@fnalegal.com>; Kent Ray <kar@milbern-ray.com>
**Subject:** RE: Alvord 287 JV

Mike,

A few items:

- I need to meet with whomever in your office is booking the expense into the QB file. I need someone that can show me which invoice go to which entries. Specifically all expense that hit the Service and Sale expense account in 2017 were booked between 10/24/2017 and 10/26/2017. Do you or someone in office have time tomorrow?
- Regarding the updated QB file that you posted on the sharepoint site. I know you mentioned that the original file didn't have all the expenses posted for 2 didn't see any changes to 2018 expenses from the original file that we received. Are you still working on the 2018 QB File?
- For the monthly loan servicing fee entry. How is the calculated? Is their a formal agreement that specifies the calculation? Has it changed over the period reviewing? I don't recall seeing anything in the JV agreement regarding a calculation.
- Where are the monthly late fees and service book on a monthly basis? Or is there an agreement that these fees are not due to the JV?

    For example on the March 2015 Notesmith Receipt report

    Principal 485.83

    Interest Income 6,348.09

    Discount Earned 539.04

    Late Fees 155.00

    Service Fees 15.00

    Total Payments received - 7,542.96

QB Entry that was booked 3/31/2015

Credit – Mortgage Notes Receivable (485.83) I'm good here, lowering the Notes receivable for Principal Received

Credit – Mortgage Notes Receivable (539.04) I'm good here, lowing the Notes receivable for the deferred gain earned

Credit – Mortgage Interest Income (6,348.09) I'm good here, recording your interest income

Credit – Notes Discount Income (539.04) I'm good here, recording your deferred gain earned.

Debit – Mortgage unearned discounts 539.04 I'm good here, lowering your deferred gain for amount earned.

Debit – Loan Servicing fee 552.54 **How was this calculated. See question above**

Debit – AFI – Payments (Due to/from account) 6,820.42 **I'm off by the Late fees and Service Fees, see question above**

Thanks,

Kyle

Pg. 32

6.   To attempt to move this along before the prior trial date, Caleb Moore asked the Auditor to email a few Quick Book reports from the file the Auditor had been provided, counsel for Anson objected. Exh 1, pg. 36.

7.   Exhibit 1, pg. 24, is an exchange between Caleb Moore and Mr. Ferguson on February 25, 2019 in which Mr. Ferguson accuses Mr. Moore of making misrepresentations to the Auditor regarding the records; stating that Plaintiffs have had "all records" in drop box and thumb drives for more than two years; calling Caleb Moore a liar; that "all records necessary" are being provided to Mr. Ray; that Caleb Moore is making false allegations among other statements.

8.  Mr. Moore responds on the same day with a detailed letter showing that in November of 2018, Mr. Ferguson in fact told the Auditor that no bank account is kept for the JV, that Anson Financial Inc. services loans and "just accounts for the funds due the JV as payable. Exhibit 2, pg. 1. Mr. Moore goes on in the letter to reiterate that the issues in dispute include Anson unilateral decision to close the JV bank account when it took over and the dispute over whether sufficient and accurate records have been produced showing how the money Anson is receiving is being spent, kept and the lack of records showing the amounts in the account on any given day. *Id.* pg. 2.

9.  Mr. Ferguson responds and confirms he was mistaken and he did in fact tell the Auditor that the JV did not have a bank account. Exhibit 4. This is all taking place in February of 2019.

10.  Other efforts were made to explain how the records being produced are confusing, incomplete, inaccurate or unusable to Mike Ferguson of Anson. Exhibit 5. On March 1, 2019, Mike again says I have all the information I need to account for the JV's profit, loss, balance sheet and that:

**"Alvord 287 JV does not have a bank account Caleb so there is nothing to verify to a bank statement**. We have copies of checks and ACH's that verify the payments. The Balance have many methods of being verified under GAAP. I assume if the method used is a method that the Association of Certified Public Accounts vouches for, you will accept that method. **Notes are not complicated like you continue to try and make them. The numbers do not lie and there is a set amount of money collected on each note and it can be verified in several ways. None of which has to be a bank account."**

*Id.* (emphasis added)

11. The disagreement on whether or not there are records produced documenting how the money coming in is being spent, held, how much is left, who was paid, expenses dates back to the very beginning of this suit in 2016 and continues to this day. On or about August 27, 2019, approximately 33 days before trial, Anson provided the Auditor more than1,649 new pages of information. Exhibit 1, pg 27. As of that date there were multiple conflicting quick book files that

could be used, but the most recent files have not been reviewed by the Auditor and the changes may or may not be accurately updated. *Id.* There is also now a significant outstanding payment balance owed to the Auditor by the JV.

12. On July 2, 2019, counsel Caleb Moore requested the parties agree on a date that no more records were going to be provided and the Auditor would then state what is and is not supported, but opposing counsel at the time rejected this plan. Exhibit 1 pg. 5

13. June 30, 2019, Mr. Ferguson discusses that Anson "netted" what Anson paid/received on all transactions and that it may not be the best way, but he doesn't want it marked as cash Anon failed to account for. Exhibit 1, pg. 1. He also acknowledges they have made "batch" entries making it hard to track each entry or expense, he will break those entries down and states various monies were not in fact paid to Anson. *Id.*

14. August 26, 2019, Mr. Ferguson emails the auditor stating there are only 36 loans and explains at length how easy this review should be. Exhibit 6. Mr. Ferguson discusses how he went through the entire file and made a spreadsheet **"in less than 4 hours."** (emphasis added). Mr. Ferguson's review found $6,413.51 in unreported expenses, but he only "verified" the expenses by group. *Id.*

15. Mike Ross, CPA, Certified Fraud Examiner, hired by Plaintiffs has opined that because Anson is a "related party" using an "intercompany account" with the JV that under the auditing standards a "related party" transaction should be reviewed for the financial capability to pay the receivable. Exhibit 7. No bank records have been viewed to date by Plaintiff's, the Auditor or the Court.

## III. ARGUMENT

3.1  This Audit was ordered in January of 2019, it seems impossible that almost 9 months have gone by and the Auditor cannot issue his report, yet here we are.  The exhibits speak for themselves.  There have been multiple attempts to have a completion date, but prior counsel objects to that plan. Exhibit 1, pg. 36.  The record of communications shows that Anson and Mr. Ferguson have either intentionally provided unorganized and incomplete records or they have simply not set aside sufficient time in the 9 months since this audit was ordered.  We should not be dealing with "batch" entries or having to unbundle expenses. There has been enough time for Anson to provide the records needed, especially when Mr. Ferguson and his previous counsel in emails to Plaintiffs' counsel and in argument to this court have been stating that all the records needed have been produced for more than 6 months. The money coming in has been documented for months, but what has happened to that money is still the big mystery.

3.2.  We are at the point that Auditor should report what he can verify from the records provided.  If there is not a check, receipt, invoice or other record showing the payment out then auditor should report that as well.  Anson can argue and explain why that is however it chooses and leave it to the jury to determine what money the JV should have in its possession and who it is owed to.  It's time to move forward.  The record before the Court shows there has been ample time Anson is either intentionally providing confusing unorganized records or it is failing to put in time to organize them.

3.3  As the last piece, it needs to be determined if Anson has engaged in self dealing, embezzlement or otherwise used the JV funds for its own interests.  This can only be determined by review of the bank records.  As Mr. Ross points out in his sworn statement, Anson is 50% owner of the JV.  It chose, over the objection of Frazier, to close the JV bank account.  That

makes Anson a "related party" using an intercompany account making Anson's account the JV's account.  Exhibit 7.  Anson should be required to demonstrate it has the capability to pay the amounts owed the JV and that it has not engaged in self dealing.  It should be treating these funds as a fiduciary as they are owed, at least in part to Plaintiffs.  Plaintiffs propose that the Auditor  or the court pick three or four months of each year 2016-2018 and determine the balance that should be held for the JV and check the account statement for each month.  If other entities' money is comingled with the JV's money in the account for those months, then Anson should obtain an affidavit from each entity stating the amount of money Anson was holding for it that month.  As a loan servicer, this is not a substantial burden. This can be done through in camera inspection by the Court or through the Auditor.  If the correct amounts are in the account, it can be noted for the record and Plaintiffs do not need to pursue further. It may well resolve some or all of the claims related to self dealing.  If the amounts are not correct and there are insufficient funds to pay the total debts owed by Anson in any particular month then it would be appropriate to make that known and further motions and orders can be filed and issued based on what the records show.

## SANCTIONS

3.4  Currently, the Auditor is being paid from Joint Venture funds by agreement.  The remaining amount owed should be paid by Anson from separate funds as a sanction for failing to produce organized records.  Anson is charging the JV to service the loans.  The records should have been organized and readily available as that is Anson's job under the JV and what it is charging the JV to do.

3.5 Additionally, Anson should be sanctioned for failing to follow the Court's order to provide the requested records within 10 business days or within 6 months for that matter. Anson should be fined at least $5,000.00.

## IV. Certificate of Conference

Efforts to resolve these matters without court intervention were attempted as evidenced by the Certificate of Conference included herein and the attached Exhibit 1. Prior counsel was conferred with and Mr. Ankele was also conferred with via phone conference and the motion is objected to in full.

## V. Prayer

**WHEREFORE, PREMISES CONSIDERED**, Movant prays that, upon hearing thereof, the Court order Defendant Anson to produce the bank records requested to the Auditor or the Court, that Anson be sanctioned for failing to organize the records of the JV for the Auditor in the almost 9 months that have gone by since the Audit was ordered in the amount needed to pay for the completion of the Audit, an additional amount for forcing Plaintiffs to file this motion and that the Auditor be ordered to complete the report using the records it has.

Respectfully submitted,

**LAW FIRM OF CALEB MOORE, PLLC**
2205 Martin Drive, Suite 200
Bedford, TX 76021
Telephone: (817) 953-2420
Facsimile: (817) 581-2540
cmoore@thedfwlawfirm.com

By: */s/ Caleb Moore*
Caleb I. Moore
cmoore@thedfwlawfirm.com
Texas Bar No. 24067779

## ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF CONFERENCE**

I certify I conferred with Opposing Counsel over the phone regarding the issues raised in this motion as well as in past emails, which are included as exhibits, but an agreement was not reached. Therefore, reasonable effort has been made to resolve this dispute without the necessity of Court intervention, but such efforts have been unsuccessful and it is necessary to set this Motion for a hearing.

*/s/ Caleb Moore*
Caleb Moore

**CERTIFICATE OF SERVICE**

I certify that on September 13, 2019, a true and correct copy of the above was served in accordance with the Texas Rules of Civil Procedure –via email on Defendant.

*/s/ Caleb Moore*
Caleb Moore

Exh DEF041 - Page 25 of 35

342-288776-16

FILED
TARRANT COUNTY
11/8/2019 2:48 PM
THOMAS A. WILDER
DISTRICT CLERK

## CAUSE NO. 342-288776-16

| | | |
|---|---|---|
| B. FRAZIER MANAGEMENT, INC, FORMERLY KNOWN AS FRAZIER ASSET MANAGEMENT, INC. and BRIAN H. FRAZIER, Individually, | § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § § | |
| V. | § § § | **342nd JUDICIAL DISTRICT** |
| ANSON FINANCIAL, INC. AS SUCCESSOR IN INTEREST TO JENTEX FINANCIAL, INC., | § § § § § | |
| *Defendant*. | § | **TARRANT COUNTY, TEXAS** |

## MOTION TO COMPEL PRODUCTION OR INSPECTION OF THE BANK RECORDS

### TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COMES** B. Frazier Management, Inc., Formerly known as Frazier Asset Management, Inc., and Brian H. Frazier, (Frazier) Plaintiffs in the above-styled cause of action, and files this Motion to Compel review of JV bank records:

### I. SUMMARY

If Anson had the JV money it was supposed to have in its account, it should want to use those records to defeat the self-dealing claims and to minimize or eliminate the punitive damage claims. It is highly troubling that it would go to such lengths to avoid anyone looking at those records. On January 26, 2018 Plaintiffs filed a Motion to Compel Responses to Request for Production Number 2 seeking the bank records holding the JV's money. That motion and the responses were heard by the Court (including multiple visiting judges) over the course of multiple settings, but has not been ruled on. This Motion briefly summarizes and compiles the

pending issues and adds the new information available to date from the Auditor, but is not intended to replace any previous motion or response. Simply put, the rules of discovery require the production of relevant information and the bank records holding the JV's money are relevant.

Additionally, the below chart shows that Anson has in its sole possession the JV's money, or at least it should, and Plaintiffs are entitled under the rules of discovery generally and the Joint Venture Agreement specifically to see the bank statements for any account that should be holding its money to confirm in fact that money is there. Plaintiffs request the Court order that Anson produce to Plaintiffs or the Court for an in-camera review at least 12 monthly statements of the bank account holding the JV money to be compared to the stated balance owed to the JV by Anson on that month. Plaintiff requests it be the statements from each year from 2016-2018 corresponding with the dates shown below. Plaintiffs have no objection to limited redactions to protect any privacy concerns or a protective order limiting the disclosure or an in-camera production. However, if third party money is in the account, Defendants should be required to obtain a statement from each third party confirming the amount in the account that belongs to each third party, as opposed to the JV.

## II . FACTS

2.1 According to the preliminary reports and numbers available to date from the Auditor, as of **10/31/18 Anson should be holding $317,076.46** of money due to the JV. Exhibit 1. Without taking into account whether an expense, disbursement or withdrawal was authorized or not that is the number reported. *Id*. According to the due to/due from account produced by Anson to Mr. Hendrick or compiled by Mr. Hendrick from Anson's Quick Books files, Anson was holding funds owed to the JV at various points in time. Some of these dates are noted below from Exhibit 2:

a.  10/31/14        $29,905.38 of funds owed to the JV;

b.  1/12/15         $30,653.06 of funds owed to the JV;

c.  4/23/15         $44,798.94 of funds owed to the JV;

d.  7/27/15         $143,615.34 of funds owed to the JV;

e.  12/31/15        $201439.51 of funds owed to the JV;

f.  4/30/16         $243,638.67 of funds owed to the JV

g.  7/14/16         $323,758.41 of funds owed to the JV;

h.  10/31/16        $71,972.78 of funds owed to the JV;

i.  3/31/17         $120,000.18 of funds owed to the JV;

j.  7/31/17         $91,546.71 of funds owed to the JV;

k.  10/26/17        -$34,686.43 of funds owed to the JV;

l.  1/15/18         $19,698.22 of funds owed to the JV;

m. 5/31/18          $127,149.01 of funds owed to the JV; and

n. 9/30/18          $307,805.10 of funds owed to the JV;

    2.2  Responses to Requests for Production were received on April 20, 2017 and

Defendant objected to Request 2 and did not produce the requested bank records.  Exhibit 5.

Multiple conversations and requests for the bank records took place with previous counsel and

an email was sent to current counsel requesting the bank records.   Exhibit 4  Anson's Counsel,

and J. Michael Ferguson responded on behalf of Anson on January 11, 2017 stating that it

would not produce bank records and that the real issue is limited to whether or not Anson has

paid the correct principal and interest. *Id.*  They went on to suggest that Mr. Frazier should

calculate that amount in his head from the pay histories Anson has provided.  *Id.*  That is part of

the issue, but the other part is what is Anson doing with the money in the months and months

between distributions.  The bank records will show that.

2.3  Frazier requested in 2014 and 2015 that the JV money be kept in the JV bank account and Anson refused.  Exhibit 7.  Anson is deliberately hiding from Frazier what it is doing with the money.

2.4  The JV Agreement has the following relevant sections that, in addition to the general rules of discovery, entitle Frazier to have full access to the account holding the JV's money:

> The Joint Venture shall keep and maintain correct and complete books of account at all times, showing Joint Venture assets and liabilities and all income received and all monies paid out, which said books of account shall be kept at the office or offices of the Joint Venture and used in common by the Joint Venturers so that any one of them may have access thereto at all times without interruption or hindrance from the other.

See Exhibit 6, pg. 2, ¶ 3.

### ARTICLE V

### JOINT VENTURE'S DUTIES

Joint Venturers will share equally in the duties of management of the Joint Venture property.  All decisions affecting the Joint Venture or its business will be determined by a majority vote of the ownership interest.

Notwithstanding the general duties set forth above, the Venturers agree to specific duties as outlined herein:

Jentex Financial, Inc. will;

Service all loans resulting from the sale of tracts out of the said land.

Prepare a bi-monthly accounting to the Venturers.

Prepare year-end documents and financials.

Maintain a bank account for the Joint Venture and account monthly for all transactions.

Frazier Asset Management, Inc. will;

Sell and market the tracts out of said land according to the pricing and terms agreed to by the Ventures.

Install the septic systems on each tract as needed at the lowest possible cost and at a price agreed to by both parties. The cost of the septic systems shall be borne by the Joint Venture.

Oversee the installation of a well on each of the tracts or arrange for a water system as the situation dictates; Joint

EXHIBIT 6, pg. 11

Article IX as amended states:

ARTICLE IX

BANK ACCOUNTS

Accounts in the name of the Joint Venture shall be maintained in such bank or banks as the Joint Venturers shall from time to time select. All money in the Joint Venture and all instruments for the payments of money when received shall be deposited to the credit of the Joint Venture on a timely basis. All checks drawn for more than $10,000.00 on any bank account shall be signed by both Joint Venturers; however, either Joint Venturer may waive this provision if notified by the other Joint Venturer in advance and giving authorization for such check to the the signing Joint Venturer; this provision shall be retroactive to include checks drawn to date as well as those from this date forward.

*Id.* at pg. 12.

According to the JV Agreement, Anson has no unilateral right to close the JV bank account, to put the JV money in its own account, or to unilaterally do anything, hence this suit.

## III. ARGUMENT

3.1  This Audit was ordered in January of 2019 and it seems impossible that almost 9 months have gone by and the Auditor cannot issue his final report, yet here we are being forced to use preliminary reports.  Those records show substantial funds should be in Anson's possession and show a specific amount that should be in its possession on a particular date.  No one but Anson has seen whether or not what is reflected in Anson's books for the JV is in fact tied to or accurate to the bank accounts.  Anson has to date delayed or stopped all efforts to have this verified by anyone.

3.2   Section V of the JV Agreement provides all decisions affecting the JV will be determined by a majority vote.  There has been no majority vote of the members authorizing the restriction of information provided to Frazier, no majority vote allowing the previously maintained JV bank accounts to be closed, or for funds to be transferred to Anson's operating account or restricting Frazier from sharing "equally in the duties of management of Joint Venture Property."  Anson's denial of Frazier's request to see JV bank account records violates Section V.  Section IX requires the accounts in the name of the Joint Venture to be maintained in the bank or banks that the Joint **Venturers** (emphasis added to point out the **plural** use of the word) select.  Frazier has not selected Anson's operating account as a JV bank account-he has objected in writing.  Clearly, the JV provides Frazier the unlimited right to view bank records of the JV.

3.3  The law governing the scope of discovery is well established. "Parties are 'entitled to full, fair discovery' and to have their cases decided on the merits." *Ford Motor Co. v. Castillo,* 279 S.W.3d 656, 663 (Tex.2009) (quoting *Able Supply Co. v. Moye,* 898 S.W.2d 766, 773 (Tex.1995) (orig. proceeding)). "A trial court abuses its discretion when it denies discovery going to the heart of a party's case or when that denial severely compromises a party's ability to

present a viable defense." *Id.*  "Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution." *In re CSX Corp.,* 124 S.W.3d 149, 152 (Tex.2003) (orig. proceeding).  The bank records go to the heart of Plaintiffs self-dealing and punitive damage claims.  If, in fact, Anson's account had the money in it, Anson should want to show these records to defend itself.  Instead it makes every effort to hide that information from Frazier and the Court.

3.4 A joint venture is generally governed by the same principles of law as apply to partnerships. *See Truly v. Austin,* 744 S.W.2d 934, 937 (Tex.1988) (Kilgarlin, J., concurring); *Brown v. Cole,* 155 Tex. 624, 631, 291 S.W.2d 704, 709 (1956); *Heinrich v. Wharton County Livestock, Inc.,* 557 S.W.2d 830, 833 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.)

3.5  Even if there was an absence of an agreement authorizing Frazier's access to the JV bank records, in Texas the common law rule is that partners are each fully entitled to full access to partnership records.  *See*, *Rush v. Browning*, 103 Tex. 649, 652, 132 S.W. 763, 765 (1910), ("a partner is entitled to the possession of the books for examination as they belong to him as much as to his copartner."); *B & R Communications v. Lopez*, 890 S.W.2d 224, 227 (Tex. App.— Amarillo 1994, no writ) (*holding* that a minority partner has the express right to review partnership records whether or not they are relevant to the case in dispute even when the partner has no right to direct the business of the partnership).  Anson chose this path and has access to the daily balances and Frazier should have equal access to determine whether the money is where it should be now and that it was where it was supposed to be during this dispute.

**Brief explanation of the inapplicability of the various claimed reasons by Anson for not producing the bank records of the account holding the JV's money**

3.6 Anson, in the previous "Motion to Reconsider" and other responsive pleadings, has argued that various federal privacy laws prohibit it from producing its bank account. In an effort to avoid rehashing all of that again, Plaintiffs provide the Court with the following relevant citations related to each privacy law argued at past hearings showing each law has expressly stated exceptions for the production of discovery materials in litigation.

3.7 The Gramm-Leach Bliley Act does not prevent discovery of customer financial information to comply with valid discovery requests. *See Marks v. Glob. Mortgage Group, Inc.,* 218 F.R.D. 492, 496 (S.D.W. Va. 2003) stating ("The court finds that 15 U.S.C. § 6802(e)(8) permits a financial institution to disclose the non-public personal financial information of its customers to comply with a discovery request."); 15 U.S.C. § 6802(e)(8).

3.8 The other laws that Defendant argued in the past that they deemed relevant were addressed in *Marks v. Glob. Mortgage Group, Inc.,* 218 F.R.D. 492, 496 (S.D.W. Va. 2003), which stated:

"The Privacy Act prohibits government agencies from disclosing certain records without consent from the person to whom the records pertain. 5 U.S.C. § 552a(b). There is an exception, however, for information disclosed pursuant to a court order. Id. at § 552a(b)(11). The *Laxalt* court rejected the argument that the "court order" exception prohibited any discovery absent a showing of actual need, rather than mere relevance. See 809 F.2d at 888; the Commodity Exchange Act did not bar disclosure of protected information for discovery purposes."

"The GLBA, like the Privacy Act and the Commodity Exchange Act, does not clearly prohibit the disclosure of information for discovery purposes; in fact, the Act permits disclosures made to respond to judicial process. Therefore, the Federal Rules of Civil Procedure govern the disclosure of information protected by the Act." *Marks v. Glob. Mortgage Group, Inc.*, 218 F.R.D. 492, 497 (S.D.W. Va. 2003).

"The court recognizes, however, that Congress has expressed a strong interest in protecting the privacy of consumers' financial information. For that reason, it is appropriate for a court to

exercise its broad discretion to fashion protective orders. *See Laxalt,* 809 F.2d at 889; *Freeman,* 405 F.2d at 1348. Thus, the court agrees with the Magistrate Judge that a protective order is appropriate." *Id.*

The statute includes an express provision permitting an entity to disclose "nonpublic personal information" pursuant to judicial process. 15 U.S.C. § 6802(e)(8); *see also Marks v. Global Mortgage Group, Inc.,* 218 F.R.D. 492, 496 (S.D.W.Va.2003) (authorizing discovery under the statute's "judicial process" exception). Choate v. State Farm Lloyds, CIV.A.3:03-CV-2111-M, 2005 WL 1109432, at *4 (N.D. Tex. May 5, 2005).

3.9  Further, Defendant's argued concerns that it would be opened up to litigation from its customer has no foundation as there is no private right of action for violations of Gramm-Leach-Bliley Act (GLBA).  *Newcomb v. Cambridge Home Loans, Inc.*, D.Hawai'i 2012, 861 F.Supp.2d 1153.

3.10  Plaintiffs have multiple claims, including breach of contract, defalcation and breach of fiduciary duty and punitive damage claims, making whether or not Anson has engaged in self-dealing, embezzlement or otherwise used the JV funds for its own interests, relevant.  Whether or not this happened can only be determined by a review of the bank records.  Anson chose, over the objection of Frazier, to close the JV bank account and put all JV money in its own account.

3.11  Anson should be required to demonstrate it has the capability to pay the amounts owed by the JV now and in the past and that it has not engaged in self-dealing.  It should be treating these funds as a fiduciary would, as they are owed at least in part, to Plaintiffs.  If other entities' monies are comingled with the JV's money in Anson's account for those months, then Anson should obtain an affidavit from each entity stating the amount of money Anson was holding for each date listed above.  As a loan servicer, this is not a substantial burden. This can

be done through an in-camera inspection by the Court or with a protective order in place. If the correct amounts are in the account, it can be noted for the record and Plaintiffs do not need to pursue further. It may well resolve many aspects of the claims related to self-dealing. If the amounts are not correct and there are insufficient funds to pay the total debts owed by Anson in any particular month then it would be appropriate to make that known and further motions and orders can be filed and issued based on what the records show.

### IV. Certificate of Conference

Efforts to resolve these matters without court intervention were attempted as evidenced by the numerous motions already filed and heard, but not ruled on.

### V. Prayer

**WHEREFORE, PREMISES CONSIDERED**, Movant prays that, upon hearing thereof, the Court order Defendant Anson to produce the bank records requested.

Respectfully submitted,

**LAW FIRM OF CALEB MOORE, PLLC**
2205 Martin Drive, Suite 200
Bedford, TX 76021
Telephone: (817) 953-2420
Facsimile: (817) 581-2540
cmoore@thedfwlawfirm.com

By: */s/ Caleb Moore*
Caleb I. Moore
cmoore@thedfwlawfirm.com
Texas Bar No. 24067779

**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I certify I conferred with Opposing Counsel over the phone regarding the issues raised in this motion as well as in past emails, some of which are included as exhibits, but an agreement was not reached.  Therefore, reasonable effort has been made to resolve this dispute without the necessity of Court intervention, but such efforts have been unsuccessful and it is necessary to set this Motion for a hearing.

*/s/ Caleb Moore*
Caleb Moore

## CERTIFICATE OF SERVICE

I certify that on November 8, 2019, a true and correct copy of the above was served in accordance with the Texas Rules of Civil Procedure via email on Defendant.

*/s/ Caleb Moore*
Caleb Moore