Kathryn Hernandez (TX SBN: 24107854)
Magan Law, PLLC
62 Main St., Ste. 310
Colleyville, Texas 76034
Telephone: (817) 209-4298
E-mail: k.magan@maganlawpllc.com

Jason Ankele (TX SBN: 00786989)
Sullivan & Cook, LLC
600 Las Colinas Blvd. E. Ste. 1300
Irving, Texas 75039-5699
Telephone: (214) 520-7494
E-mail: jankele@sullivancook.com

SPECIAL COUNSEL FOR ANSON FINANCIAL INC.
DEBTOR AND DEBTOR IN POSSESSION

SPECIAL COUNSEL FOR ANSON FINANCIAL INC.
DEBTOR AND DEBTOR IN POSSESSION

And

And

COUNSEL FOR DEFENDANT

COUNSEL FOR DEFENDANT

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ANSON FINANCIAL, INC., | § | CASE NO. 21-41517 |
| | § | |
| DEBTOR. | § | |
| | § | |
| B. FRAZIER ASSET MANAGEMENT, INC. F/K/A FRAZIER ASSET MANAGEMENT, INC., AND BRIAN H. FRAZIER, INDIVIDUALLY | § § § § | |
| | § | Adv. No. 21-04071 |
| Plaintiffs | § | |
| | § | Removed From: |
| vs. | § | Cause No. 342-288776-16 |
| | § | 342nd Judicial District Court |
| | § | Tarrant County, Texas |
| ANSON FINANCIAL, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S TRIAL BRIEF

## Table of Contents

**Preliminary Statement**.................................................................................................. 1

**Statement of Facts**....................................................................................................... 2

**Argument** ..................................................................................................................... 5

    **POINT ONE: Upon forfeiture of its corporate charter, FAM automatically withdrew as a partner from the partnership and, as a result, FAM's sole interest in the partnership is redemption of its withdrawn partnership interest (*as a matter of law per the BOC*)** .......... 5

        *i. Automatic withdrawal as partner* ...................................................................... 6

        *ii. Automatic redemption of withdrawn partner's interest*...................................... 8

        *iii. FAM's reinstatement of its corporate status does not "reinstate" FAM to partner status in JV.* ........................................................................................................... 8

    **POINT TWO: FAM's Claims were extinguished at the end of the three (3) year survival statute window**........................................................................................................... 11

    **POINT THREE: Brian Frazier may claim to be a transferee or successor in interest of FAM, but there is no legal nor factual basis for those claims, nor would Frazier have any interest beyond FAM's withdrawn partnership redemption interest.**............................... 14

    **POINT FOUR: Redemption Value** ................................................................................ 15

    **POINT FIVE: Additional Defenses as to Plaintiffs' Claims** ............................................. 16

        *i. Breach of Fiduciary duty* .................................................................................. 17

        *ii. Defalcation* ....................................................................................................... 19

        *iii. Conversion*........................................................................................................ 20

        *iv. Breach of Fiduciary Duty, Defalcation, and Conversion Claims are barred by the Economic Loss Rule* ............................................................................................... 21

        *V. Plaintiffs did not bring a Derivative Suit* ....................................................... 22

        *vi. Breach of Contract*........................................................................................... 23

        *vii. Accounting* ..................................................................................................... 24

        *viii. Attorney's Fees* ............................................................................................. 25

**Conclusion and Prayer** ................................................................................................ 25

## **Table of Authorities**

**Federal Cases**

*Edge Petroleum Operating Co. v. Duke Energy Trading & Mktg., L.L.C. (In re Aurora Nat. Gas, L.L.C),* 312 B.R. 318 (Bankr. N.D. Tex. 2004) ....................................................... 20

*Founders Ins. Co. v. Billy's Bar & Grill, LLC,* Civil Action No. 3:18-cv-00367-M, 2019 U.S. Dist. LEXIS 183293 (N.D. Tex. Oct. 23, 2019)......................................................... 5, 12

*Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols.,* 954 F.3d 804 (5th Cir. 2020)................................................................................................ 21, 22

*Hiniger v. Case Corp.,* 23 F.3d 124 (5th Cir. 1994) .................................................... 22

*In re Schwager,* 121 F.3d 177 (5th Cir. 1997) ............................................................. 19

*In re Two Wheels Props., LLC,* 625 B.R. 869 (Bankr. S.D. Tex. 2020)............................. 10, 12

*Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635 (5th Cir. 1991) ........................ 20

*Perry v. Dearing (In re Perry),* 345 F.3d 303 (5th Cir. 2003) ........................................... 6

*Sun Packing v. XenaCare Holdings, Inc.,* 924 F. Supp. 2d 749 (S.D. Tex. 2012)....................11

*United States v. Sharon Steel Corp.*, 681 F. Supp. 1492 (D. Utah 1987) ...................... 6

**State Cases**

*Anemelu v. Iraheta,* No. 14-19-00018-CV, 2020 Tex. App. LEXIS 4958 (Tex. App. July 7, 2020) ................................................................................................................. 13

*Atcco Mortg., Inc. v. Beasley*, No. 11-14-00066-CV, 2016 Tex. App. LEXIS 3318 (Tex. App. Mar. 31, 2016) ..................................................................................................... 13

*Cates v. Sparkman,* 73 Tex. 619 (1889)................................................................. 18

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.,* 445 S.W.3d 716 (Tex. 2014) (per curiam) ............................................................................................................... 22

*Cherry v. Hollie,* 2015 Tex. App. LEXIS 1405 (Tex. App.—Eastland 2015, no pet.)................. 20

*Clark v. PFPP Ltd. P'ship,* 455 S.W.3d 283 (Tex. App.—Dallas 2015) .................................... 21

*Cohen Acquisition Corp. v. EEPB, P.C.,* No. 14-14-00330-CV, 2015 Tex. App. LEXIS 5058 at *5-6, 2015 WL 2404869 (Tex. App.—Houston [14th Dist.] May 19, 2015, pet. denied) (mem.op.)...................................................................................... 5, 11, 12, 13

*Eckman v. Centennial Sav. Bank,* 757 S.W.2d 392 (Tex. App. – Dallas 1988, writ denied) ....... 20

*Edlund v. Bounds,* 842 S.W.2d 719 (Tex. App.—Dallas, 1992, writ denied) ............................. 20

*(Continued from previous)*

*Emmett Props. v. Halliburton Energy Servs.,* 167 S.W.3d 365 (Tex. App. 2005) ........................ 5

*Golden State Mut. Life Ins. Co.* v. *Kelley*, 380 S.W.2d 139 (Tex. Civ. App. -- Houston 1964, writ ref'd n.r.e.) ..................................................................................................................... 6

*Goughnour v. Patterson,* No. 12-17-00234-CV, 2019 Tex. App. LEXIS 1665 (Tex. App. Mar. 5, 2019) ....................................................................................................................... 19

*Holloway v. Dekkers,* 380 S.W.3d 315 (Tex. App. – Dallas 2012, no pet.) ................................ 23

*In re Aguilar,* 344 S.W.3d 41 (Tex. App.-El Paso 2011, no pet.)................................................... 5

*In re Brothers Oil & Equip., Inc.,* No. 03-17-00349-CV, 2017 Tex. App. LEXIS 7157 (Tex. App. – Austin Aug. 22, 2017, orig. proceeding) (mem. Op. )……………………………………13

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1 (Tex. 2007)................................ 21

*LAN/STV v. Martin K. Eby Constr. Co.,* 435 S.W.3d 234 (Tex. 2014) ....................................... 21

*LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632 (Tex. App.—Dallas 2012, no pet.)........... 17

*Lord, Lewis & Coleman, LLC v. Bellaco, LLC,* No. 12-18-00126-CV, 2019 Tex. App. LEXIS 1989 (Tex. App. Mar. 12, 2019) ........................................................................................ 11, 13

*M.R. Champion v. Mizell*, 904 S.W.2d 617 (Tex. 1995) ............................................................. 16

*Maykus v. First City Realty & Fin. Corp*., 518 S.W.2d 887 (Tex. Civ. App.—Dallas 1974) ...... 16

*Nguyen v. Manh Hoang*, 507 S.W.3d 360 (Tex. App.—Houston [1st Dist.] 2016) .................... 23

*Pike v. Tex. EMC Mgmt., LLC,* 610 S.W.3d 763 (Tex. 2020) ...................................................... 22

*Pitman v. Sanditen*, 611 S.W.2d 663 (Tex. Civ. App. -- San Antonio 1980), rev'd on other grounds, 626 S.W.2d 496 (Tex. 1982)................................................................................................ 6

*Russell v. Am. Real Estate Corp.,* 89 S.W.3d 204 (Tex. App.—Corpus Christi, 2002, no pet.) .. 20

*Sneed v. Webre,* 465 S.W.3d 169 (Tex. 2015)............................................................................ 18

*Waisath v. Lack's Stores, Inc.,* 474 S.W.3d 444 (Tex. 1971) ..................................................... 20

*Wood Motor Co. v. Nebel*, 238 S.W.2d 181 (Tex. 1951) ............................................................. 6

## State Statutes

TEX. BUS. CORP. ACT ART. 7.12 ................................................................................................. 12
TEX. BUS. ORGS. CODE § 11.001................................................................................... 6, 7, 12, 14
TEX. BUS. ORGS. CODE § 11.201........................................................................................... 10
TEX. BUS. ORGS. CODE § 11.253........................................................................................... 10
TEX. BUS. ORGS. CODE § 11.356................................................................................ 7, 10, 12, 14

*(Continued from previous)*

TEX. BUS. ORGS. CODE § 11.359 ........................................................................................ 12, 15

TEX. BUS. ORGS. CODE § 152.001 ......................................................................................... 8, 14

TEX. BUS. ORGS. CODE § 152.002 ........................................................................................... 6, 7

TEX. BUS. ORGS. CODE § 152.056 ............................................................................................. 22

TEX. BUS. ORGS. CODE §152.101 .............................................................................................. 22

TEX. BUS. ORGS. CODE § 152.204 ................................................................................... 17, 18, 19

TEX. BUS. ORGS. CODE § 152.206 ............................................................................................. 17

TEX. BUS. ORGS. CODE § 152.210 ............................................................................................. 17

TEX. BUS. ORGS. CODE § 152.211 ................................................................................. 16, 23, 24

TEX. BUS. ORGS. CODE § 152.212 ............................................................................................. 24

TEX. BUS. ORGS. CODE § 152.501 ........................................................................................... 6, 7

TEX. BUS. ORGS. CODE §152.502 ............................................................................................ 7, 8

TEX. BUS. ORGS. CODE § 152.503 ............................................................................................ 16

TEX. BUS. ORGS. CODE § 152.601 ............................................................................... 7, 8, 11, 16

TEX. BUS. ORGS. CODE § 152.602 ................................................................................. 11, 15, 16

TEX. BUS. ORGS. CODE § 152.608 ................................................................................. 11, 15, 16

TEX. BUS. ORGS. CODE §152.609 .................................................................................. 11, 15, 16

TEX. BUS. ORGS. CODE §152.612 ....................................................................................... 7, 16

TEX. BUS. ORGS. CODE § 154.002 ............................................................................................ 22

TEX. BUS. ORGS. CODE § 154.201 ............................................................................................ 18

TEX. TAX CODE § 171.251 ......................................................................................................... 11

TEX. TAX CODE § 171.252 ......................................................................................................... 11

TEX. TAX CODE § 171.309 ......................................................................................................... 11

TEX. CIV. PRAC. REM. CODE § 37.006 ........................................................................................ 25

TEX. REV. CIV. STAT. ART. 6132B-4.04 ...................................................................................... 18

## **Other Authorities**

*Aimee Raimer, What's in A Claim?: Utilizing the Bankruptcy Conduct and Pre-Petition Relationship Tests to Evaluate Existing Claims Against a Terminated Filing Entity,* 66 Baylor L. Rev. 760, 781 (2014) ......................................................................................................... 12

Black's Law Dictionary (10th ed. 2014)). ................................................................................... 19

www.sos.state.tx.us/corp/boc.shtml ............................................................................................. 5

**TO THE HONORABLE EDWARD L. MORRIS, U.S. BANKRUPTCY JUDGE:**

Anson Financial, Inc. debtor and debtor in possession and Defendant ("**Anson**," or "**Defendant**"), files this *Defendant's Trial Brief* (the "**Brief**") and, in support thereof would show the Court the following.

## <u>Preliminary Statement</u>

1.      This matter arises from a domestic partnership from which one partner withdrew, setting in action a series of events governed by the Texas Business Organizations Code ("**BOC**") [Chapters 152 (General Partnerships) and 11 (Winding Up and Termination of Domestic Entity)]. In sum, a corporate partner permitted its corporate charter to be forfeited, as was that partner's admitted regular business practice to do so. Upon the forfeit of its corporate charter, that entity became a terminated entity.  Upon becoming a terminated entity, that party was *automatically* withdrawn as a partner from the partnership and as a matter of law that party's <u>only</u> interest in the partnership became the redemption of its *withdrawn partner* interest.  Additionally, the failure to reinstate its corporate charter within the three (3) year survival statute in the BOC caused that party's claims against the continuing party to be *extinguished* as a matter of law.  Finally, the individual principal of the entity that is the withdrawn partner has no standing to assert any claims in this proceeding as he is not a transferee or successor in interest of the withdrawn partner.

2.      Specifically, Plaintiff B. Frazier Management, Inc. f/k/a Frazier Asset Management, Inc. ("**FAM**") permitted its corporate charter to be forfeited and failed to reinstate its corporate charter within three years.  When FAM permitted its corporate charter to be forfeited, FAM became a withdrawn partner as a matter of law, entitled only to a right of redemption of its withdrawn partner interest in the JV.  FAM has not asserted a claim for redemption within the statutorily required timeline to assert same.  While FAM absolutely has the *continuing* right to reinstate its corporate status (in fact, FAM has reinstated its corporate status), the claims, if any,

that FAM had were _extinguished_ as a matter of law three years after the date its corporate charter lapsed. There is no basis for "reinstatement" of the claims.

3.      Plaintiff Brian Frazier ("**Frazier**") is not a transferee of FAM nor a successor in interest of FAM and does not have standing to assert any claim against Defendant. Even if Frazier was either a transferee or successor in interest of FAM, the only rights Frazier would potentially hold would be FAM's right to redemption which, again, has not been timely asserted. All other claims of FAM were extinguished on the third anniversary of its lapsed charter.

## Statement of Facts

4.      In 1996, Jentex Financial, Inc. ("**Jentex**") and FAM entered into a joint venture partnership known as the Alvord 287 Joint Venture ("the **JV**") for the purpose of purchasing, owning, managing, improving, and selling real property described as 127.21 acres in Wise County, Texas. "The only contract alleged to exist between these parties is the "Joint Venture Agreement" originally between Frazier Asset Management Inc. and Jentex Financial Inc., signed on or about January 24, 1996, including written amendments." ("the **JV Agreement**").

5.      On February 8, 2013, the Texas Secretary of State forfeited FAM's charter pursuant to Section 171.309 of the Texas Tax Code. Frazier has testified, "This was approximately the 5th time since 1991 that [FAM] had a tax related forfeiture and it was the practice [of FAM] to reinstate every few years as cash flow became available or for other reasons."[1]

6.      From 1996 through September 2014, the bank account for the JV was held in the name of its servicing agent, Jentex Financial, Inc. dba Alvord 287, and neither FAM nor Frazier were ever signatories on the bank account.

---

[1] _See_ Joint Pretrial Order Stipulated Fact No. 6; _see also_ State Court Record July 27, 2017 Affidavit of Brian Frazier submitted in support of FAM's Response to Defendant's Traditional Motion for Summary Judgment dated November 2, 2018.

7.      In 2014, Jay Lesok ("**Lesok**"), President of Jentex, informed Frazier, as President of FAM, that because of Lesok's advanced age and health conditions, he was no longer able to keep up with the amount of work required to fulfill his obligations under the JV. Lesok asked Frazier to purchase his interest in the JV, but a price could not be agreed upon and Frazier declined to purchase Jentex's interest.

8.      On September 5, 2014, Anson purchased Jentex's interest in the JV. On September 9, 2014, Anson forwarded correspondence to FAM advising of its acquisition of Jentex's 50% interest in the JV. On March 30, 2015, J. Michael Ferguson ("**Ferguson**"), the principal of Anson, emailed JV financial records to FAM and, on April 4, 2015, Anson offered to split the assets of the JV with FAM and to terminate the JV, but FAM declined the offer.

9.      On April 6, 2015, Anson mailed Check Number 16141 in the amount of $12,500.00 to FAM for one-half distributions due to the owners, but Frazier tore the check in half and returned the check to Anson. On September 30, 2016, Anson forwarded an $89,000 check to FAM's attorney advising that an agreement needed to be reached or the partners needed to split the assets and terminate the JV. On October 11, 2016, Anson emailed information to FAM's attorney and offered $335,000 cash to buy out FAM's interest in the JV. Anson's offer to buy out FAM's JV interest was characterized as a total cash offer of $459,000.[2] Anson suggested, alternatively, that the assets could be split with FAM picking the first loan and Anson picking the second loan until all loans and lots were taken. FAM declined.

10.      On November 7, 2016, FAM filed the underlying lawsuit against Anson seeking damages. Subsequent to FAM's filing of the lawsuit, Anson discovered that FAM was a

---

[2] The offer was characterized as $459,000 because the offered amount of $335,000 did not require a credit or refund of the $89,000 check forwarded for September 2016 nor a credit or refund of the $35,000 check being forwarded for that month, October 2016.

terminated entity and filed a Plea in Abatement.  On January 5, 2017, <u>nearly four years after its</u> <u>charter was forfeited</u>, FAM reinstated its charter as B. Frazier Management, Inc.  FAM did not assert any claims against Anson within three (3) years of the termination of FAM's charter.

11.     On April 24, 2019, Anson sent to Plaintiffs a Full Satisfaction Notice "*Redemption Offer and Calculation*" in the amount of $105,900.17 plus accrued interest thru April 24, 2019, until paid.  Anson's offer amount was based upon a redemption price for Frazier's interest in the amount of $325,000 with 6% interest from February 8, 2013 through April 24, 2019 less part of the attorney fees expended by Anson in defending itself from this lawsuit and less FAM's half of the cost for the accounting done by Milbern Ray and Company, L.L.P., which cost had been paid in full by Anson.

12.     On December 10, 2019, an agreed accounting for the JV was completed by Milbern Ray and Company, L.L.P., and Plaintiffs were provided with a detailed accounting report for the time period of September 1, 2014 to October 31, 2018.  Anson paid the entire $50,000 cost of the accounting.  On or about May 19, 2021, Anson provided to FAM updated financial information as to the JV notes through April 30, 2021.

13.     On or about February 18, 2021, Plaintiffs obtained approximately 18,000 pages of Anson's financial documents from Ian Ghrist ("**Ghrist**") who obtained the records through discovery means in the 67th District Court of Tarrant County, Texas, Cause No. 067-311209-19, *Ferguson, et. al v. Ghrist, et. al,* a matter unrelated to this present suit.  Anson did not consent to Ghrist, an attorney who has previously represented both Anson and the JV, providing those records to Plaintiffs in this action.

14.     On June 25, 2021, Anson filed a voluntary petition under Chapter 11 United States Bankruptcy Code, Title 11 of the United States Code. On July 27, 2021, Anson amended its petition to proceed under Subchapter V of Chapter 11.

15.     On November 1, 2021, Defendant/Debtor removed Plaintiffs' lawsuit to the Bankruptcy Court, and on November 9, 2021, Plaintiffs filed a Proof of Claim in the amount of $674,515.57 in the Defendant/Debtor's bankruptcy case.

## Argument

16.     Due process requires that the judicial system respect and protect all legal rights of a litigant. "Since the mandatory application date of January 1, 2010, the BOC applies to all Texas corporations, partnerships, limited liability companies, and other domestic filing entities, as well as all foreign filing entities registered to transact business in Texas. The BOC applies regardless of an entity's formation date or whether the entity has taken affirmative steps to adopt the BOC."[3] Prior to the BOC being enacted, the Texas Business Corporations Act ("**TCBA**") applied.[4]

**POINT ONE: Upon forfeiture of its corporate charter, FAM automatically withdrew as a partner from the partnership and, as a result, FAM's sole interest in the partnership is redemption of its withdrawn partnership interest (*as a matter of law per the BOC*)**

17.     It is undisputed that FAM is a Texas corporation and that, on February 8, 2013, the Texas Secretary of State terminated FAM's corporate charter pursuant to Section 171.309 of the Texas Tax Code.[5]  Chapter 11 of the BOC defines "*terminated entity*" to be a domestic entity *the existence of which has been forfeited pursuant to the Tax Code*, unless the forfeiture has been set

---

[3] www.sos.state.tx.us/corp/boc.shtml; *see also Cohen Acquisition Corp. v. EEPB, P.C.,* No. 14-14-00330-CV, 2015 Tex. App. LEXIS 5058 at *5-6, 2015 WL 2404869, at *3-4 (Tex. App.—Houston [14th Dist.] May 19, 2015, pet. denied) (mem.op.); *In re Aguilar,* 344 S.W.3d 41, 41 n.3 (Tex. App.-El Paso 2011, no pet.).

[4] *See Emmett Props. v. Halliburton Energy Servs.,* 167 S.W.3d 365, 369 (Tex. App. 2005) (Applying the TCBA to a corporation who forfeited its corporate charter under the franchise tax statute but did not bring its claims within three years of dissolution and therefore, its claims were dissolved.); *see also Founders Ins. Co. v. Billy's Bar & Grill, LLC,* Civil Action No. 3:18-cv-00367-M, 2019 U.S. Dist. LEXIS 183293, at *20 (N.D. Tex. Oct. 23, 2019) ("On January 1, 2010, TBOC replaced the Texas Business Corporations Act (TBCA).").

[5] *See* Joint Pretrial Order, Stipulated Fact No. 5.

aside.[6]   Accordingly, FAM was a terminated entity.

18.     A partnership agreement governs the relations of the partners and between the partners and the partnership. To the extent that the partnership agreement does not otherwise provide, chapter 152 of the TBOC and the other partnership provisions govern the relationship of the partners and between the partners and the partnership.[7]

19.     On February 8, 2013, the Texas Secretary of State forfeited FAM's Charter and FAM became a "*dead corporation*."[8] Under Article VII, of the JV Agreement titled "Death of a Joint Venturer," the agreement states "the death of any of the Joint Venturers hereto shall terminate this Agreement."[9]  Thus, per the JV Agreement, when FAM became a dead corporation, the JV Agreement terminated.

20.     In the alternative, to the extent the JV Agreement does not provide procedures for termination of the JV, Chapter 152 of the BOC governs the termination of the partnership.[10]

*i. Automatic withdrawal as partner*

21.     The termination of FAM's corporate existence constituted an *automatic* event of withdrawal from the JV *as a matter of law*, because a person ceases to be a partner on the

---

[6] TEX. BUS. ORGS. CODE §11.001(4)(B); *see also* STATUTORY NOTES or Revisor's Notes under Section 11.001 which defines terms used in the chapter. "Chapter 11 uses the term "**terminated entity**" to refer to a **domestic entity whose legal existence has come to an end, either voluntarily or involuntarily**. This generic term replaces the term "dissolved corporation" from the source law. **The definition of "terminated entity" refers generally to the termination of existence of the entity instead of attempting to list all the different methods of dissolving an entity as found in the source law**. The revised law also introduces the term "terminated filing entity," which is a terminated entity that was a filing entity." (emphasis added).

[7] TEX. BUS. ORGS. CODE § 152.002(a).

[8] A "dead" corporation is one that is dissolved but has not yet distributed its assets. *Perry v. Dearing (In re Perry),* 345 F.3d 303, 313 (5th Cir. 2003). A "dead and buried" corporation is one that has distributed all its assets to its shareholders. *United States v. Sharon Steel Corp*., 681 F. Supp. 1492, 1498 (D. Utah 1987).

[9] *See* Exhibit DEF004, JV Agreement p. 5; *see also Pitman v. Sanditen*, 611 S.W.2d 663, 668 (Tex. Civ. App. -- San Antonio 1980), *rev'd on other grounds*, 626 S.W.2d 496 (Tex. 1982)("While forfeitures are not favored, they are not illegal… When the parties in unambiguous language write into their agreement a provision for forfeiture, the courts will enforce the provision."); *See also, Golden State Mut. Life Ins. Co*. v. *Kelley*, 380 S.W.2d 139, 142 (Tex. Civ. App. -- Houston 1964, writ ref'd n.r.e.) and *Wood Motor Co. v. Nebel*, 150 Tex. 86, 238 S.W.2d 181, 185 (1951).

[10] TEX. BUS. ORGS. CODE §152.002(a).

occurrence of an "event of withdrawal."[11]   The BOC defines an "event of withdrawal" of a partner to occur on "termination of a partner's existence."[12]

22.    As defined above, "terminated entity" is a domestic entity, the existence of which has been forfeited pursuant to the Tax Code, unless the forfeiture has been set aside.[13]  FAM has argued that it is not a terminated entity because it reinstated in January 2017.   Nonetheless, FAM was a terminated entity as of February 8, 2013, at which time it ceased to be a partner by operation of law[14], and continued to be a terminated entity for a period of longer than three years.[15]  Although FAM may have reinstated its corporate charter on January 5, 2017, that reinstatement did not, and could not, revive FAM's long-terminated partnership interest in the JV.   In fact, the BOC specifically prohibits partnership agreements and partners from varying that particular statutory requirement of automatic withdrawal from a partnership upon termination of the partner's existence.[16]

23.    The BOC expressly acknowledges that a partnership continues after an event of withdrawal, but also states, "The event of withdrawal affects the relationships among the withdrawn partner, the partnership, and the continuing partners as provided by Sections 152.503-152.506 and Subchapter H."[17]    Subchapter H addresses "Redemption of Withdrawing Partner's or Transferee's Interest."[18]

---

[11] TEX. BUS. ORGS. CODE §152.501(a).
[12] TEX. BUS. ORGS. CODE §152.501(b)(8).
[13] TEX. BUS. ORGS. CODE §11.001(4)(B).
[14] TEX. BUS. ORGS. CODE §§152.501(a); 152.501(b)(8).
[15] TEX. BUS. ORGS. CODE § 11.356.
[16] TEX. BUS. ORGS. CODE §152.002(b)(5) ("A partnership agreement or the partners may not:  (5) vary the power to withdraw as a partner under Section 152.501(b)(1), (7), or (8), except for the requirement that notice be in writing").
[17] TEX. BUS. ORGS. CODE §152.502.
[18] See TEX. BUS. ORGS. CODE §152.601-152.612.

*ii. Automatic redemption of withdrawn partner's interest.*

24.     Given that the event of withdrawal occurred under Section 152.501(b)(8) of the BOC (i.e., FAM permitting its corporate existence to cease to exist), FAM is a withdrawn partner with only a right to redemption of its withdrawn partner interest in the JV.  By statute, if the event of withdrawal occurs under Section 152.501(b)(8), *as it did in this instance*, "The partnership interest of a withdrawn partner *automatically is redeemed* by the partnership as of the date of withdrawal…."[19]   Although the JV continued, FAM was no longer a "partner" because, as of February 8, 2013, FAM became by statute a "withdrawn partner."[20]

*iii. FAM's reinstatement of its corporate status does not "reinstate" FAM to partner status in JV.*

25.     The concepts of FAM's ability to regain its <u>*corporate*</u> status and FAM's inability to regain its <u>*partner*</u> status should not be conflated.  Whether or not FAM *subsequently* reinstated its corporate charter does not change the fact that FAM was *automatically withdrawn as a partner from the JV*, and FAM's withdrawal from the JV is <u>not</u> changed by FAM's subsequent reinstatement of its corporate charter years later.  The BOC specifically recognizes that, while the JV continues after an event of withdrawal, the relationships among the now withdrawn partner, the continuing partner, and the JV changed.[21]

26.     Plaintiffs want to argue that the reinstatement of FAM's corporate status somehow entitles FAM to a continued "partner" status in the JV.  That argument fails on multiple fronts.  First, as explained above, FAM's partnership interest was *automatically* withdrawn and then that *withdrawn partnership* interest was *automatically* redeemed.  By definition, those statutory automatic occurrences cannot just be undone.

---

[19] TEX. BUS. ORGS. CODE §152.601.
[20] TEX. BUS. ORGS. CODE §152.001(6).
[21] TEX. BUS. ORGS. CODE § 152.502.

27.     Second, the legislature has created a three-year window for certain matters to continue or be considered to have continued when an entity has reinstated its corporate charter. To that end, the BOC clearly sets a three-year window for retroactivity:

> **(d)** If a filing entity is reinstated before the third anniversary of the date of its involuntary termination, the entity is considered to have continued in existence without interruption from the date of termination. The reinstatement shall have no effect on any issue of personal liability of the governing persons, officers, or agents of the filing entity during the period between termination and reinstatement.[22]

28.     The legislative comments regarding that three-year limitation provision are particularly instructive regarding the requirement that the reinstatement be accomplished within three years of the involuntary termination in order to obtain the benefit of retroactivity:

> **STATUTORY NOTES**
> **Revisor's Notes.**
>
> Section 11.253 permits the reinstatement of an involuntarily terminated entity on the correction of the circumstances that led to the termination and the filing of a certificate of reinstatement. The source laws, other than the Texas Revised Limited Partnership Act, require an involuntarily dissolved entity to make its application for reinstatement within 36 months. The revised law permits reinstatement at any time in a manner similar to reinstatement procedures under the Tax Code after a forfeiture for nonpayment of taxes and similar to the Texas Revised Limited Partnership Act. The Tax Code and the Texas Revised Limited Partnership Act do not restrict the time within which an entity can reinstate. Thus, the lack of a time limit is not new for limited partnerships. However, although Section 11.253 eliminates the time restrictions for reinstatement found in the Texas Non-Profit Corporation Act and Texas Business Corporation Act, <u>an involuntarily terminated entity is considered to have continued in existence without interruption from the date of termination **_only_** when the certificate of reinstatement is filed before the third anniversary of its involuntary termination</u>. The retroactive effect is contained in the Texas Business Corporation Act and Texas Non-Profit Corporation Act for corporations and also applies to limited liability companies under the Texas Limited Liability Company Act. The explicit retroactive effectiveness of the reinstatement in the revised law could be considered a clarification of what is implicit in the Texas Revised Limited Partnership Act.

---

[22] Tex. Bus. Orgs. Code §11.253(d).

Existing provisions in the Texas Business Corporation Act, Texas Non-Profit Corporation Act, and Texas Limited Liability Company Act state that the reinstatement has no effect on the personal liability of a governing person, officer, or agent during the period between dissolution and reinstatement.

**Effect of amendments.**[23]

29.    It is undisputed that FAM did not reinstate its corporate charter within three years of its forfeiture such that FAM could even argue that it reinstated in a sufficiently timely manner to argue retroactivity is an option.

30.    Third, even had FAM reinstated within three years, retroactivity was not an option to FAM because its corporate forfeiture was the result of a tax forfeiture under the Tax Code.  That, is, pursuant to Section 11.356(b) of the BOC, a terminated entity can only reinstate its existence for the purpose of continuing the business or affairs for which the terminated entity was formed under Subchapter E.[24] Subchapter E (*Reinstatement of Terminated Entity*) is specifically <u>*not*</u> <u>*applicable*</u> in this case because "[a] terminated entity may not be reinstated under this section if the termination occurred as a result of … forfeiture under the Tax Code."[25] Moreover, "a terminated filing entity may not continue its existence for the purpose of continuing the business or affairs for which the terminated filing entity was formed <u>*unless*</u> the terminated filing entity is reinstated <u>under Subchapter E</u>."[26]  As a terminated entity under the Tax Code, FAM did not, and could not, reinstate under Subchapter E such that FAM can argue retroactivity for continued business operations.

---

[23] Tex. Bus. Orgs. Code §11.253, *comment* (emphasis added).
[24] *In re Two Wheels Props., LLC,* 625 B.R. 869, 874 (Bankr. S.D. Tex. 2020) (citing to Tex. Bus. Orgs. Code § 11.356(b) and § 11.201 *et. seq.*)).
[25] *Id.* (citing Tex. Bus. Orgs. Code § 11.201(b)(3)).
[26] Tex. Bus. Orgs. Code §11.356(b) (emphasis added).

31. In sum, FAM can currently be a reinstated corporate entity but nonetheless be a withdrawn partner of the JV whose sole interest in the JV is the redemption value of its withdrawn partner interest in the JV.[27]

## POINT TWO: FAM's Claims were extinguished at the end of the three (3) year survival statute window

32. Under Texas Tax Code § 171.251, the comptroller shall forfeit the corporate privileges of a corporation for failure to pay assessed franchise taxes within 45 days of becoming due.[28] The effect of a forfeiture under § 171.251 is that: (1) the corporation *shall be denied the right to sue or defend in a court of this state*; and (2) each director or officer of the corporation is liable for a debt of the corporation as provided by § 171.255 of this code.[29] If the entity does not revive its forfeited privileges within one hundred and twenty (120) days after the date that the privileges were forfeited, the Secretary of State may then forfeit the charter.[30] At that point, the BOC provides, a dissolved business is entitled to conduct certain activities, including adversarial proceedings for a three-year period.[31]

33. Specifically, section 11.356 of the BOC sets a three-year window following termination during which a terminated entity continues to survive for certain purposes, including prosecution of legal claims, providing, in pertinent part, as follows:

> (c) If an action on an existing claim by or against a terminated filing entity has been brought before the expiration of the three-year period after the date of the entity's termination and the claim was not extinguished under Section 11.359, the terminated filing entity continues to survive for purposes of:

[27] TEX. BUS. ORGS. CODE §§ 152.601-152.609.
[28] *See* TEX. TAX CODE § 171.251.
[29] *See* TEX. TAX CODE § 171.252 (emphasis added); *see also Sun Packing v. XenaCare Holdings, Inc.,* 924 F. Supp. 2d 749, 754 (S.D. Tex. 2012).
[30] *See* TEX. TAX CODE § 171.309
[31] *Sun Packing,* 924 F. Supp. 2d at 754-755 (finding that in 2012, an organization who is dissolved for failing to pay their franchise taxes has the limited rights to sue and be sued for three years from the date of dissolution.); *see also Lord, Lewis & Coleman, LLC v. Bellaco, LLC,* No. 12-18-00126-CV, 2019 Tex. App. LEXIS 1989, at *5 (Tex. App. Mar. 12, 2019); *Cohen,* 2015 Tex. App. LEXIS 5058 at *5-6

(1) the action until all judgments, orders, and decrees have been fully executed; and

(2) the application or distribution of any property of the terminated filing entity as provided by Section 11.053 until the property has been applied or distributed.[32]

34.     That three-year period following termination also operates as a specific window of time in which a claim *must* be asserted by the terminated entity or it will be *extinguished*.

Sec. 11.359.  EXTINGUISHMENT OF EXISTING CLAIM.  (a)  Except as provided by Subsection (b), an existing claim by or against a terminated filing entity is extinguished unless an action or proceeding is brought on the claim not later than the third anniversary of the date of termination of the entity.[33]

35.     Pursuant to Section 11.001(3), an "existing claim" means, a claim against an entity that existed before the entity's termination and that is not barred by limitations; or a contractual obligation incurred after termination.[34]

36.     Since the enactment of the BOC, an overwhelming majority of courts (both federal and state) have held that claims of terminated entities, whose charters are forfeited pursuant to the tax code are terminated entities subject to the three-year survival period set forth in § 11.359 of the BOC.  For example, in *Founders,* the Honorable Judge Lynn of the Northern District of Texas opines, "TBOC 'did not effect a material change' in the termination statutes. In fact, TBOC broadened 'existing claim' to apply to ___***all terminated entities***___,"[35] which would include FAM.

37.     As recently as 2020, the Texas courts are in congruence that the BOC's three (3) year period to bring existing claims applies to entities that have forfeited their charters under the

---

[32] TEX. BUS. ORGS. CODE §11.356 (c).

[33] TEX. BUS. ORGS. CODE §11.359 (a).

[34] TEX. BUS. ORGS. CODE § 11.001(3); *see also* Supp DEFAID4 Texas SOS Instructional Information, p. 29-30.

[35] *See Founders*, 2019 U.S. Dist. LEXIS 183293, at *20 (citing to *Cohen,* 2015 Tex. App. LEXIS 5058, at *3; *Aimee Raimer, What's in A Claim?: Utilizing the Bankruptcy Conduct and Pre-Petition Relationship Tests to Evaluate Existing Claims Against a Terminated Filing Entity,* 66 Baylor L. Rev. 760, 781 (2014); *see also* TEX. BUS. ORGS. CODE § 11.001(3). TBCA "discusses existing claims only in regard to a terminated corporation." *Id.; see also* TEX. BUS. CORP. ACT art. 7.12 (expired Jan. 1, 2010); *see also In re Two Wheels,* 625 B.R. at 872 (applying the BOC 11.356 three-year statute of limitations to a forfeited corporation under the Texas Tax Code)(emphasis added).

Tax Code. In *Anemelu v. Iraheta*, the Court applies Section 11.356 to a corporation whose corporate charter was forfeited pursuant to Section 171.309 of the Texas Tax Code, finding that they are a terminated entity per the BOC and the three-year period to bring claims applies to them.[36]

38.     In *Lord,* the court states, "the plain language of the statutes makes clear that an entity whose charter has been forfeited under the tax code is a terminated entity, unless that forfeiture has been set aside. Further, an existing claim by or against a terminated filing entity is extinguished unless an action or proceeding is brought on the claim not later than the third anniversary of the date of the entity's termination." [37]  Similarly, in *Attco Mortg., Inc. v. Beasley,* the court found that an entity whose charter is forfeited by the State is a terminated filing entity and claims are extinguished if not brought before the third anniversary of the date it becomes a terminated entity.[38]

39.     In *Cohen,* the court found that the BOC applies to entities whose charter was forfeited pursuant to the Tax Code the same as the TBCA did.[39] The court concludes that an entities' extinguished claims are not revived if the entity reinstates its charter.[40] So, as far as the extinguishment of FAM's claims, once the third anniversary of the lapse of FAM's corporate charter passed without reinstatement, it simply does not matter that FAM later reinstated its corporate charter.

---

[36] *See Anemelu v. Iraheta,* No. 14-19-00018-CV, 2020 Tex. App. LEXIS 4958, at *5-6 (Tex. App. July 7, 2020) (The corporation brought its suit within 3 years of becoming forfeited and therefore was allowed to pursue its claims.)
; *see also In re Brothers Oil & Equip., Inc.,* No. 03-17-00349-CV, 2017 Tex. App. LEXIS 7157, at *4 n.6 (Tex. App. – Austin Aug. 22, 2017, orig. proceeding) (mem. Op. ) (company's corporate charter was forfeited in January 2016, nine months before company's claims were filed in October 2016; claims could proceed because they were filed within three-year period of Section 11.356).
[37] *Lord,* No. 12-18-00126-CV, 2019 Tex. App. LEXIS 1989, at *5.
[38] *Attco Mortg., Inc. v. Beasley,* No. 11-14-00066-CV, 2016 Tex. App. LEXIS 3318, at *3-4 (Tex. App.—Eastland Mar. 31, 2016)
[39] *Cohen,* No. 14-14-00330-CV, 2015 Tex. App. LEXIS 5058, at *3.
[40] *Id.* at *3-4 (the Tax Code did not provide for revival of the extinguished claims).

40.     As a result of the forfeiture of FAM's existence on February 8, 2013, FAM became a terminated entity[41] and a three-year period during which FAM had the right to bring existing claims commenced.[42] It is undisputed that FAM did not assert any claims within that three-year window.  Anson does not dispute FMI's ability to reinstate its corporate charter, nor does Anson seek to impose a time limit on FMI's ability to reinstate its corporate charter. Nonetheless, the BOC is unequivocally clear in its directive that a corporate entity must assert existing claims within three years of the termination date of the entity's corporate status or the claims are extinguished.[43]

**POINT THREE: Brian Frazier may claim to be a transferee or successor in interest of FAM, but there is no legal nor factual basis for those claims, nor would Frazier have any interest beyond FAM's withdrawn partnership redemption interest.**

41.     In their live pleading, Plaintiffs alternately claim that Frazier is a transferee or assignee of FAM's partnership interest or a successor in interest to FAM's partnership interest upon FAM's termination.[44]  Neither argument gives Frazier standing.

42.     In the context of general partnerships, the BOC defines a "*Transfer*" to include an assignment, a conveyance, a lease, a mortgage, a deed, an encumbrance, and the creation of a security interest.[45]  There is no evidence of anything constituting a transfer of interest as defined in the BOC; moreover, the only right potentially assignable by FAM is, as of February 8, 2013, FAM's right to redemption of its withdrawn partner interest.

43.     Brian Frazier is not a transferee or successor-in-interest to any claim or other asset of FAM, as best-evidenced by the fact FAM reinstated its existence subsequent to filing the lawsuit (i.e., there can be no successor-in-interest when an entity is not dissolved and its assets distributed,

---

[41] TEX. BUS. ORGS. CODE § 11.001(4)(B).
[42] TEX. BUS. ORGS. CODE § 11.356(a).
[43] *See* Supp DEFAID2, Timeline
[44] See Exhibit DEF003, Plaintiffs' Fifth Amended Petition, ¶¶2.2, 5.10.
[45] *See* TEX. BUS. ORGS. CODE §152.001(5).

and there is no evidence that FAM transferred any assets to Frazier). Frazier has not asserted a derivative claim in this cause; moreover, as discussed previously herein, any claims, including but not limited to alleged derivative claims, that he could have asserted have been extinguished as a matter of law.[46]

**POINT FOUR: Redemption Value**

44.     On April 24, 2019, Anson sent to Plaintiffs a Full Satisfaction Notice "*Redemption Offer and Calculation*" in the amount of $105,900.17 plus accrued interest through April 24, 2019, until paid.[47] Instead of using the liquidation value as of February 8, 2013, Defendant used the Fair Value (the value a willing buyer would pay in cash to a willing seller) that it paid to Jentex on September 5, 2014,[48] which was $325,000.00 plus interest on the balance owed at 6% until paid in full.

45.     Plaintiffs did not respond to Anson's Redemption Offer, nor did Plaintiffs bring an action for redemption on or before April 24, 2020. Given that Anson provided written notice to FAM of Anson's calculation of FAM's redemption value on April 24, 2019[49] and, to date, FAM has not brought an action for its redemption value, the statute of limitations has expired and FAM is foreclosed from asserting its claim for redemption.[50]

46.     If the Court determines that the statute of limitations has not passed for Plaintiffs to be entitled to a redemption value, that redemption value should be offset by the costs incurred by Anson in defending against Plaintiffs' claims. FAM's rights in regard to the JV are limited to

---

[46] TEX. BUS. ORGS. CODE §11.359 (a)
[47] See Joint Pretrial Order Stipulated Fact #16; see Exhibit DEF025 Redemption Offer
[48] *See* TEX. BUS. ORGS. CODE § 152.602(b) (the redemption price for the partner's interest may be its liquidation rather than going-concern value).
[49] *See* Exhibit DEF025, Redemption Offer.
[50] *See* TEX. BUS. ORGS. CODE § 152.608 and § 152.609 (a wrongful withdrawn partner must bring an action for the redemption value not later than the first anniversary of the date written notice is given).

the Remedies of Partnership and Partners found in Section 152.211 of the BOC.[51]  To that end,

FAM's withdrawal from the JV was wrongful because FAM willfully dissolved or terminated.[52]

Given that FAM willfully withdrew and acted vexatiously, FAM's entitlement to redemption value

is offset by costs associated with this litigation.[53]

47.     Defendant has paid a total of $262,000.00 to FAM since February 8, 2013, which

amount has been deducted from the balance on each date payment was made. Given that FAM

wrongfully withdrew and refused Defendant's redemption offers and also did not negotiate a

redemption price, Plaintiffs acted arbitrarily, vexatiously, and in bad faith, and the redemption

value should be offset by costs associated with this litigation in the total sum of $230,064.09 in

attorneys' fees and court costs plus $50,000 that was paid to Milburn Ray & Company for an AUP

conducted during the state court litigation.  The redemption value of FAM's withdrawn partner

interest is completely offset by the litigation costs and, in fact, Anson should recover from FAM

the amount of $108,052.56 plus accrued interest of 6% from June 28, 2021. Anson reserves its

rights to assert any calculation allowed under the JV or the BOC.

**POINT FIVE: Additional Defenses as to Plaintiffs' Claims**

48.     After the partnership terminates, the duty to a partner is limited to matters relating

to winding up of the partnership's affairs, and a person has no duty to offer his former partners or

partnership regarding a business opportunity which arises after the partnership has terminated.[54]

On termination of the partnership, the confidential relationship ceases and each person is free to

act in his own interest.[55] Any fiduciary duty that partners owe one another does not encompass a

---

[51] TEX. BUS. ORGS. CODE § 152.211(b)(2)(B).
[52] TEX. BUS. ORGS. CODE § 152.503(a)(b)(2)(A)(C); *see also* Joint Pretrial Order Stipulated Fact #6.
[53] TEX. BUS. ORGS. CODE § 152.503(b) and §§ 152.601-152.612.
[54] *M.R. Champion v. Mizell*, 904 S.W.2d 617, 618 (Tex. 1995).
[55] *Maykus v. First City Realty & Fin. Corp.*, 518 S.W.2d 887, 893 (Tex. Civ. App.—Dallas 1974)

duty to remain partners or else answer in tort damages.[56] For example, in *LG Ins. Mgmt. Servs., LP vs. Leick*, plaintiff limited partners had no fiduciary duty to remain partners with the defendant limited partner and, therefore, could not breach such a duty when they involuntarily terminated the defendant's partnership interest, which they had a right to do under the parties' partnership agreement.[57] In addition, the defendant did not have a fiduciary duty to the defendant when they decided not to pay him after involuntarily terminating his partnership interest, because the partnership agreement did not require a payment to an involuntarily terminated partner.[58]

*i. Breach of Fiduciary duty*

49.     Plaintiffs cannot prevail on their Breach of Fiduciary duty claim. A partner is liable to a partnership and the other partners for a breach of the partnership agreement or a violation of a duty to the partnership or other partners under Chapter 152 of the BOC that causes harm to the partnership or the other partners.[59] A partner owes to the partnership and to the other partners, including any transferee of a deceased partner's interest, a duty of care.[60] A partner's statutory duty of care is to act in the conduct and winding up of the partnership business with the care an ordinarily prudent person would exercise in similar circumstances.[61]

50.     An error in judgment does not by itself constitute a breach of this duty of care.[62] A partner who acts on an informed basis, in good faith, and in a manner the partner reasonably believes to be in the best interest of the partnership is presumed to satisfy the duty of care.[63]

---

[56] *LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 643 (Tex. App.—Dallas 2012, no pet.)
[57] *Id.*
[58] *Id*.
[59] TEX. BUS. ORGS. CODE § 152.210(1)(2).
[60] TEX. BUS. ORGS. CODE § 152.204(a)(2)
[61] TEX. BUS. ORGS. CODE § 152.206(a)
[62] TEX. BUS. ORGS. CODE § 152.206(b)
[63] TEX. BUS. ORGS. CODE §§ 152.204(b), 152.206(c)

51.     The statutory formulation of a partner's duty of care incorporates the "business judgment rule" familiar in the corporate context.[64] In Texas, the business judgment rule protects corporate officers and directors from being held liable to the corporation for alleged breach of duties based on actions that are negligent, unwise, inexpedient, or imprudent if the actions were "within the exercise of their discretion and judgment in the development or prosecution of the enterprise in which their interests are involved."[65]

52.     A partner does not violate the statutory duty of care or act in bad faith merely because the partner's conduct furthers the partner's own interest.[66] In fact, a partner may lend money to or transact other business with the partnership, and, subject to any law specifically applicable to that transaction, a partner dealing with the partnership has the same rights and obligations with respect to that matter as a person who is not a partner.[67] In other words, a partner is not a trustee as to the partnership or the other partners, and is not held to the same fiduciary obligations as a trustee.[68]

53.     FAM cannot prevail because Anson breached no duty per the JV Agreement and has continued to act within the exercise of its discretion and judgment in the development or prosecution of the enterprise in which the JV's interests are involved and in accord with its specified duties.

54.     The JV Agreement provides that Anson (replacing Jentex) will: (1) service all loans resulting from the sale of tracts out of the said land, (2) prepare a bi-monthly accounting to the Venturers, (3) prepare year-end documents and financials, and (4) maintain a bank account for the

---

[64] Tex. Rev. Civ. Stat. art. 6132b-4.04—repealed eff. Jan. 1, 2010, cmt. of Bar Committee 1993
[65] *See Sneed v. Webre,* 465 S.W.3d 169, 178 (Tex. 2015) (quoting *Cates v. Sparkman,* 73 Tex. 619, 622 (1889)).
[66] TEX. BUS. ORGS. CODE § 152.204(c)
[67] TEX. BUS. ORGS. CODE § 154.201
[68] TEX. BUS. ORGS. CODE § 152.204(d)

Joint Venture and account monthly for all transactions.[69] After buying Jentex's interest, Anson has serviced all loans from the sale of the tracts, prepared accounting, prepared year-end documents and financials, and maintained a bank account in the same manner in which Jentex maintained the bank account.[70] Anson has not breached its duties as it has: (1) serviced all loans, (2) prepared monthly and bi-monthly accounting for the venturers, (3) prepared annual reports and year-end documents and financials, and (4) maintained a bank account for the Joint Venture and accounted monthly for all transactions.

## ii. Defalcation

55.     The definition and/or elements of Plaintiff's defalcation claim are uncertain. The Fifth Circuit has defined defalcation as, a "willful neglect of fiduciary duty," which need not be accompanied by fraud or embezzlement.[71] Defalcation is also defined as "the fraudulent misappropriation of money held in trust; financial wrongdoing involving a breach of trust; or the failure to meet an obligation; a nonfraudulent default."[72]

56.     Regardless, this claim is merely a restatement of Plaintiffs' breach of fiduciary duty claims. As detailed above, there was no willful neglect by Defendant of its fiduciary duty. Further, Anson is acting in the capacity as a partner to the JV and is not a trustee who was entrusted with money.[73] Therefore, Anson cannot be held liable for the misappropriation of money held in trust.

---

[69] See Exhibit DEF004, Joint Venture Agreement, Page 11 Joint Venturer's Duties as amended

[70] *See* Joint Pretrial Order, Stipulated Fact #7 and Exhibit DEF005, Jentex Bank Sig. Card; *see also* Exhibit DEF022, AUP Report showing Anson also maintained a bank account for the JV in the same way Jentex did.

[71] *In re Schwager,* 121 F.3d 177, 184-85 (5th Cir. 1997).

[72] *Goughnour v. Patterson,* No. 12-17-00234-CV, 2019 Tex. App. LEXIS 1665, at *15 (Tex. App. Mar. 5, 2019) (citing Black's Law Dictionary (10th ed. 2014)).

[73] *See* TEX. BUS. ORGS. CODE § 152.204(d) ("A partner, in the partner's capacity as partner, is not a trustee and is not held to the standards of a trustee.").

### iii. Conversion

57. "Under Texas law, conversion is established by proving that: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner; and (3) defendant refused plaintiff's demand for the return of the property."[74] Stated somewhat differently, conversion is "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with the property owner's rights."[75] When the defendant initially acquires possession of personalty by lawful means, conversion generally occurs upon refusal of a demand for return of the property.[76]

58. "'When an indebtedness can be discharged by payment of money generally, an action in conversion is inappropriate.'"[77] Thus, in a debtor-creditor relationship, the remedy is a money judgment for the debt, not conversion.[78] The measure of damages for conversion is the value of the property at the time and place of conversion.[79]

59. Here, Plaintiffs have no right to the money except the possible redemption value for Plaintiffs' wrongful withdrawal. Plaintiffs sent their first demand letter on September 30, 2016.[80] From February 8, 2013, through September 10, 2017, FAM received a total of $262,500.00

---

[74] *Edge Petroleum Operating Co. v. Duke Energy Trading & Mktg., L.L.C. (In re Aurora Nat. Gas, L.L.C),* 312 B.R. 318, 328 (Bankr. N.D. Tex. 2004) (citing *Russell v. Am. Real Estate Corp.,* 89 S.W.3d 204, 210 (Tex. App.—Corpus Christi, 2002, no pet.)).

[75] *Edge Petroleum*, 312 B.R. at 328 (citing *Edlund v. Bounds,* 842 S.W.2d 719, 727 (Tex. App.—Dallas, 1992, writ denied) (plaintiff could recover for conversion of notes receivable, but not money))); *see also Waisath v. Lack's Stores, Inc.,* 474 S.W.3d 444, 446 (Tex. 1971) (Conversion is "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights."); *Cherry v. Hollie,* 2015 Tex. App. LEXIS 1405, at *14 (Tex. App.—Eastland 2015, no pet.) (to establish a claim for conversion of money, the plaintiff must show that the money is not the subject of a title claim by its keeper).

[76] *Id.* (citing *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 651 (5th Cir. 1991)).

[77] *Id. (quoting Eckman v. Centennial Sav. Bank,* 757 S.W.2d 392, 398 (Tex. App. – Dallas 1988, writ denied)).

[78] *Id.*

[79] *Id. (*citing *Edlund,* 842 S.W.2d at 727).

[80] Exhibit DEF012, Demand Letter from Gongloff

in payments from the JV.[81] Anson had paid from JV funds everything owed to FAM at the time FAM filed this lawsuit.

### iv. Breach of Fiduciary Duty, Defalcation, and Conversion Claims are barred by the Economic Loss Rule

60.     In addition to the foregoing reasons Plaintiffs' claims must fail, Plaintiffs are also barred from recovery on their breach of fiduciary duty, defalcation, and conversion claims by the economic loss rule. According to Plaintiffs' petition, Plaintiffs' breach of fiduciary duty, defalcation and conversion claims expressly incorporate and rely on the same factual allegations as do plaintiffs' breach of contract claim.[82] Under Plaintiffs' petition, Plaintiffs' breach of fiduciary duty, defalcation, and conversion claims are intertwined with, and relate solely to his breach of contract claim resting on the alleged breach of the JV Agreement.[83] "The only contract alleged to exist between these parties is the "Joint Venture Agreement" originally between Frazier Asset Management Inc. and Jentex Financial Inc., signed on or about January 24, 1996, including written amendments."[84]

61.     The economic loss rule is a doctrine that limits the recovery of purely economic damages in a tort action.[85] Texas courts apply this rule in cases involving the failure to perform a contract.[86] In determining whether the claim is sound in tort or contract, a tort claim will be found when the duty allegedly breached is independent of the contractual undertaking and the harm

---

[81] Exhibit DEF024, Payments to FAM.

[82] See Exhibit DEF003, Plaintiffs' Fifth Amended Petition

[83] See Exhibit DEF003, Plaintiffs' Fifth Amended Petition ¶ 5.1-5.11.

[84] See Exhibit DEF003, Plaintiffs' Fifth Amended Petition, ¶5.10.

[85] See LAN/STV v. Martin K. Eby Constr. Co., 435 S.W.3d 234, 235-36 (Tex. 2014); see also Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., 954 F.3d 804, 808 (5th Cir. 2020) ("Under Texas law, the economic loss rule generally prevents recovery in tort for purely economic damages unaccompanied by injury to persons or property").

[86] Id. at 243 ("The Restatement now concludes generally that 'there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties.'"); see also Clark v. PFPP Ltd. P'ship, 455 S.W.3d 283, 287-88 (Tex. App.—Dallas 2015) ("Texas courts have generally applied the economic loss rule in cases involving defective products and in cases involving the failure to perform a contract.")

suffered is not merely the economic loss of a contractual benefit.[87] "In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence."[88] When a defect in a product deprives a buyer of profits, those are purely economic damages recoverable only in contract.[89] Consequently, Plaintiffs are barred from recovery on their tort claims by the economic loss rule. Plaintiffs are also not entitled to any punitive damages.

## *V. Plaintiffs did not bring a Derivative Suit*

62.     Additionally, FAM cannot prevail on the breach of fiduciary duty, defalcation, or conversion claims because FAM did not bring a derivative suit on behalf of the JV.[90] In Texas, a partnership cause of action belongs to and is specific property of the partnership, and that one merely owning an interest in the partnership may not, absent exceptional circumstances, bring suit either on such a cause of action as a whole, whether in the name of the partnership or in his own name or for the fractional share of such a cause of action corresponding to his fractional interest in the partnership."[91] The partnership is the only party that can maintain an action against a partner for a breach of the partnership agreement or for the violation of a duty to the partnership causing

---

[87] *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.,* 445 S.W.3d 716, 718 (Tex. 2014) (per curiam); *see also LAN/STV,* 435 S.W.3d at 242-43 (discussing limitations on recovery of purely economic damages by contractual strangers).
[88] *Golden Spread Elec.,* 954 F.3d at 808 (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1, 12-13 (Tex. 2007)).
[89] *Id.* (citing *Hiniger v. Case Corp.,* 23 F.3d 124, 126 (5th Cir. 1994)).
[90] *See* Exhibit DEF003, Plaintiff's Fifth Amended Petition – Plaintiff did not allege any causes of action or facts on behalf of the Partnership; *see also* Joint Pretrial Order, Plaintiff's Statement ¶ 1, "Plaintiffs are seeking determination of the amount of *their* share of the Notes and cash of the Joint Venture and turnover of the funds wrongfully disbursed by Debtor…"
[91] *Pike v. Tex. EMC Mgmt., LLC,* 610 S.W.3d 763, 808 (Tex. 2020); *see also* Tex. Bus. Orgs. Code §§ 154.002, 152.101 (a partner does not have an interest that can be transferred, voluntarily or involuntarily, in partnership property); Tex. Bus. Orgs. Code §§ 152.056, 152.101 (a partnership is an entity distinct from its partners, and partnership property is not property of the partners.).

harm to the partnership.[92] A partner may only maintain an action against the partnership or another partner for legal or equitable relief, including an accounting of partnership business.[93]

63.     FAM did not bring a derivative suit and instead only brought suit for itself, and therefore, cannot prevail on any causes of action that belong to the partnership.

*vi. Breach of Contract*

64.     FAM cannot prevail on its breach of contract claim. The JV Agreement is the only contract between the parties.[94] As stated above, Plaintiffs did not bring a derivative suit on behalf of the Partnership, and therefore, cannot maintain an action for breach of contract because that claim lies only with the partnership.  FAM may only maintain an action against another partner for legal or equitable relief, including an accounting of partnership business, to enforce a right under the partnership agreement or a statutory right under the General Partnership Act.[95]

65.     Nevertheless, even if FAM could maintain an action for breach of contract, it would still not prevail. To be entitled to judgment on their breach of contract claim, or breach of the terms of the partnership agreement, parties are required to establish (1) existence of a valid contract between plaintiff and defendant; (2) plaintiff performed or tendered performance under contract; (3) defendant breached contract; and (4) plaintiff was damaged as a result of the breach.[96] A breach of contract occurs when a party fails or refuses to do something he has promised to do.[97]

66.     First, FAM cannot prevail because it failed to carry out its duties under the JV Agreement. Specifically, FAM failed to:

    a.     Sell and market the tracts out of said land according to the pricing and terms agreed to by the Ventures.

---

[92] TEX. BUS. ORGS. CODE § 152.211(a).
[93] TEX. BUS. ORGS. CODE § 152.211(b).
[94] *See* Joint Pretrial Order, Stipulated Fact 2; Exhibit DEF003 ¶ 5.10; Exhibit DEF004 JV Agreement.
[95] TEX. BUS. ORGS. CODE § 152.211(b) (2012).
[96] *Holloway v. Dekkers,* 380 S.W.3d 315, 324 (Tex. App. – Dallas 2012, no pet.).
[97] *Nguyen v. Manh Hoang*, 507 S.W.3d 360, 377 (Tex. App.—Houston [1st Dist.] 2016)

b.    Install the septic systems on each tract as needed at the lowest possible cost and at a price agreed to by both parties. The cost of the septic systems shall be borne by the Joint Venture.

c.    Oversee the installation of a well on each of the tracts or arrange for a water system as the situation dictates; Joint Venture to bear the cost of whichever system is selected. Price to be agreed to by both parties.

d.    Oversee and maintain unsold tracts and keep them in a saleable condition.

e.    Handle foreclosures and resales of foreclosed tracts.

f.    $28,000 is missing from the closings that took place at the title company that officed with Brian Frazier.

67.    FAM also did not maintain its right to do business in the State of Texas as it was a terminated entity for over three years.[98]

68.    Further, Anson did not breach the JV Agreement. Anson has complied with each of its duties set forth in Article V of the JV Agreement.[99] Accordingly, Plaintiffs cannot recover for breach of contract or attorneys' fees.

*vii. Accounting*

69.    Pursuant to BOC § 152.211(b), FAM may maintain an action against Defendant for legal or equitable relief, including an accounting of partnership business.[100] However, FAM's claim to an accounting was extinguished after three years of it becoming a terminated entity and the right to an accounting does not revive a claim barred by law.[101]

70.    Additionally, FAM is a withdrawn partner and Anson is only obligated to provide FAM accounting for the JV through February 8, 2013, as the JV is only required to provide a former partner access to books and records pertaining to the period during which the former partner was a partner.[102] Additionally, on December 10, 2019, Milbern Ray and Company, L.L.P., a firm hired by the parties, completed and provided a full accounting report with respect to the JV for the

---

[98] *See* Joint Pretrial Order, Stipulated Fact #5, 15; Exhibit DEF001-002.
[99] Exhibit DEF004, Page 3, 11 as amended.
[100] Tex. Bus. Orgs. Code § 152.211(b).
[101] Tex. Bus. Orgs. Code § 152.211(b)-(d).
[102] Tex. Bus. Orgs. Code § 152.212(d).

time period of September 1, 2014 to October 31, 2018.[103] Nevertheless, Anson has provided the JV's records to FAM through April 30, 2021. Finally, FAM's equitable right to an accounting of any kind is impaired by FAM's "unclean hands" regarding how it wrongfully obtained Anson's account information after not being able to convince the trial court judge to give those records to FAM.

*viii. Attorney's Fees*

71.      Plaintiffs are not entitled to attorney's fees. A party seeking declaratory relief, must add all persons who have or claim any interest that would be affected by the declaration as a party to the lawsuit.[104] Plaintiffs failed to bring claims on behalf of the JV and it did not add the JV as a party to the lawsuit. Therefore, FAM cannot seek attorney's fees.

## **Conclusion and Prayer**

WHEREFORE, Defendant prays the Court enter an Order finding that:

1.      FAM is a withdrawn Partner in the Alvord 287 Joint Venture;
2.      FAM's claims are extinguished as a matter of law;
3.      As a withdrawn partner, FAM is only entitled to its' Redemption Value;
4.      Brian Frazier is not a transferee or successor in interest to FAM in regard to the JV;
5.      FAM wrongfully withdrew from the JV and is no longer entitled to the Redemption Value;
6.      FAM cannot recover for its' breach of fiduciary duty, defalcation, conversion, or breach of contract claims; and
7.      FAM received an accounting and is not entitled to any further accounting.

---

[103] All parties agreed to the balance of all accounts as of September 1, 2014. *See* DEF023 p.5-11.
[104] TEX. CIV. PRAC. REM. CODE § 37.006

Dated:  March 28, 2022   Respectfully submitted:

        Magan Law, PLLC

        By: */s/ Kathryn Hernandez*
          Kathryn Hernandez (TX SBN: 24107854)
          62 Main St., Ste. 310
          Colleyville, Texas 76034
          Telephone: (817) 209-4298
          Email: k.magan@maganlawpllc.com

        Sullivan & Cook

        By: */s/ M. Jason Ankele*
          M. Jason Ankele (TX SBN: 00786989)
          600 Las Colinas Blvd. E. Ste. 1300
          Irving, Texas 75039-5699
          Telephone: (214) 520-7494
          Email: jankele@sullivancook.com

        **ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the foregoing was served on March 28, 2022 by electronic notice to all ECF users who have appeared in this case to date.

          */s/ Kathryn Hernandez*
          Kathryn Hernandez