342-288776-16

FILED
TARRANT COUNTY
5/15/2019 11:01 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 342-288776-16

| | | |
|---|---|---|
| B. FRAZIER MANAGEMENT, INC., FORMALLY KNOWN AS FRAZIER ASSET MANAGEMENT, INC. and BRIAN H. FRAZIER, Individually | § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| | § | 342ND JUDICIAL DISTRICT |
| VS. | § § § | |
| ANSON FINANCIAL, INC. AS SUCCESSOR IN INTEREST TO JENTEX FINANCIAL, INC | § § § § § | |
| Defendant. | § | TARRANT COUNTY, TEXAS |

**PLAINTIFF'S FIFTH AMENDED PETITION AND DEMAND FOR ACCOUNTING**

**TO THE HONORABLE COURT:**

Plaintiffs, B. Frazier Management, Inc., formally known as, FRAZIER ASSET MANAGEMENT, INC. and BRIAN H. FRAZIER, Individually, files this Fifth Amended Petition and in support would show:

**I. DISCOVERY CONTROL PLAN**

1.1  Plaintiff intends to conduct discovery under Discovery Control Plan Level 3. *See* TEX. R. CIV. P. 190.

**II. PARTIES**

2.1  Plaintiff B. Frazier Management, Inc., Formally Known as, Frazier Asset Management, Inc. (herein some time referred to "FAM" is a Texas Professional Corporation located at 3345 Western Center Blvd., #160, Fort Worth, Texas 76137.

2.2     Plaintiff Brian H. Frazier, is an individual and sole owner of B. Frazier Management, Inc. The last three digits of his social security number are 720 and last three digits of his driver's license number are 648.  He appears in his individual capacity as the successor in interest and sole owner of property, rights and duties of B. Frazier Management, Inc. if that entity is determined to have been legally terminated.

2.3     Defendant Anson Financial, Inc. is a Texas corporation doing business in the state of Texas and may be served with process through its attorney who has appeared in this case.

### III. JURISDICTION

3.1     The district court has jurisdiction over this cause of action because it is within the jurisdictional limits of the court.  Venue in Tarrant County is proper under the Civil Practice and Remedies Code because Tarrant County is the Defendant's registered agent's county of residence; and Tarrant County is the county in which all or a substantial part of the events giving rise to the claim occurred.

3.2     Pursuant to Texas Rule of Civil Procedure 47, based on the information to date, Plaintiff states that it seeks monetary relief over $200,000.00, but not more than $1,000,000.00, and non-monetary relief.

### IV.     STATEMENT OF FACTS

4.1     In 1996, Frazier Asset Management, Inc. ( "FAM") and Jentex Financial, Inc. ("JFI"), (collectively referred to as the "Venturers), entered into a Joint Venture Agreement (the "Agreement" or JV Agreement) creating The Alvord 287 Joint Venture (the "JV") for the sole purpose of purchasing, owning, managing, improving and selling real property described as 127.21 Acres in Wise County, Texas.

4.2 The Agreement, among other things, requires correct and complete books of account to be kept and maintained at all times, showing Joint Venture assets and liabilities and all income received and all monies paid out. The books are to be kept at the office or offices of the Joint Venture and used in common by the Joint Venturers, so that any one of them can have access without interruption or hindrance from the other. Said books and records are to be kept in accordance with generally accepted accounting principles.

4.3 The Agreement requires that Accounts in the name of the Joint Venture be maintained in such bank or banks as the Joint Venturers chose. All money in the Joint Venture and all instruments for the payments of money when received are required to be deposited to the credit of the Joint Venturer on a timely basis. All checks drawn on any bank account are to be signed and drawn by both Joint Venturers if more than $10,000.00 in amount. The Agreement is binding on the Joint Venturers, their heirs, personal representatives and assigns.

4.4 Pursuant to the Agreement, FAM was tasked with (1) selling and marketing the tracts; (2) installing septic systems, as needed, on a direct cost basis, i.e. no overhead, labor, etc.; (3) overseeing the installation of a well on each of the tracts; (4) overseeing and maintaining unsold tracts in saleable condition; and (5) handling foreclosures and resale of foreclosed tracts.

4.5 Pursuant to the Agreement, JFI is responsible for (1) servicing all loans resulting from the sale of tracts out of the land; (2) preparing monthly accounting to the partners; (3) preparing year-end documents and financials; and (4) maintaining a bank account for the JV and accounting monthly for all transactions.

4.6 After two years of successfully operating the JV, the Venturers agreed to expand the purpose of the JV from only the single land project in Wise County to allow the JV to acquire additional land. The Agreement was thereafter amended to restate and slightly amend the

specific duties/obligations of the Venturers. Later, by Addendum to Joint Venture Agreement dated April 27, 2000, the parties unanimously agreed that either FAM or JFI could sell, convey or acquire property on behalf of the JV.

4.7 For more than eighteen (18) years from January 30, 1996, until September 9, 2014, FAM and JFI successfully operated the JV. FAM completed its initial obligations to develop the tracts (roads, septic, water, etc.), and to sell and market the lots. JFI used its own servicing company to service the loans, but properly transferred the money paid to the servicing company directly into the JV bank accounts. JFI also provided access to bank statements and accounted for all transactions on a regular basis.

4.8 In 2014, Jay Lesok ("Lesok"), President of JFI, informed Frazier, President of FAM, that because of his advanced age and health conditions, he was no longer able to keep up with the amount of work required to fulfill his obligations under the Agreement. He asked Frazier to purchase his interest, but a price could not be agreed upon and Frazier did not purchase JFI's interest. FAM's obligation to develop the tracts was already complete or substantially complete, while JFI' obligations, including servicing obligations, were largely ongoing or incomplete.

4.9 Anson Financial, Inc. ("AFI") purchased JFI's interest in the JV. On September 9, 2014, FAM received a letter from J. Michael Ferguson ("Ferguson"), President of AFI, stating that AFI purchased JFI's interest in the JV because of Lesok's health and medical issues. In the letter, Ferguson promised that AFI would continue to handle JFI's duties as set forth in the Agreement and subsequent amendments.

4.10 AFI has failed to continue handling JFI's duties as set forth in the Agreement, thereby preventing FAM from exercising its right to ensure proper operation of the JV. AFI has

refused to maintain a separate bank account for the JV or to account monthly for all transactions as required in the Agreement, made representations related to forthcoming payments that turned out to be false, and repeatedly denied FAM access to the JV's financial records, thereby preventing FAM from exercising its right to ensure proper operation of the JV.

4.11    Although AFI has provided FAM with some journal entries, Profit & Loss Statements and Balance Sheets, and lists of Notes Receivable, AFI had not provided any supporting documents, bank statements, or other verifiable financial records to allow FAM to ensure proper operation of the JV when this suit was filed.  Currently, FAM has insufficient documentation to determine what records are accurate and which ones are not.  The audit remains pending.

4.12    Based on the foregoing, AFI has (a) failed to adequately and reasonably manage the bookkeeping for the JV; (b) failed to maintain a separate bank account for the JV and to account monthly for all transactions; (c) failed to produce timely tax statements for the JV; (d) made false representations related to forthcoming payments; (e) failed to make monthly disbursements; (f) failed to comply with the duty of loyalty, utmost good faith, candor, the duty to refrain from self-dealing, the duty to act with integrity of the strictest kind, the duty of fair and honest dealing, and the duty of full disclosure as stated in this Petition.

4.13    To the extent that any assets, real or personal property, rights, duties or obligations that were owned by FAM at the time its corporate charter was extinguished, those assets, real or personal property, rights, duties or obligations passed to Frazier individually as the sole owner.  Mr. Frazier has operated under the Joint Venture agreement post termination, and Anson has asserted that it also seeks to operate under the Joint Venture agreement and to have Mr. Frazier operate under the Joint Venture agreement at times when Anson knew FAM's

corporate charter was not current with the Texas Secretary of State.  Mr. Frazier has done so and asserts claims in his individual capacity to protect his ownership rights

4.14   Anson has failed to stay up to date on its accounting of the funds it takes into possession.  It has not communicated or produced records detailing expenses, disbursements and revenues for 2017 or 2018.  It is unknown at this time, what money the JV has, whether it is being stored and segregated by Anson, spent, comingled or distributed to Anson.  Anson is still making unilateral decisions regarding operation of the JV, including JV expenditures, when to disperse money, amount to hold back, where to keep the money

V.    CAUSES OF ACTION ASSSERTED BY BOTH PLAINTIFFS

**BREACH OF FIDUCIARY DUTY**

5.1    Plaintiff incorporates by reference all of the allegations contained in this petition as if fully set forth herein.

5.2    The elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant.  The JV Agreement itself creates the fiduciary duties owed by the members of the JV as well as the duties below based on the nature of Anson's role in the JV.

5.3    Defendant owed Plaintiffs fiduciary duties as a joint venturer in the Joint Venture Agreement.  As such, Defendant was obligated to comply with the duty of loyalty, utmost good faith, and candor, to refrain from self-dealing, to act with integrity of the strictest kind, and to be fair and honest in the parties dealing.  The nature of the duties that Anson performs, ie collecting money, holding money and distributing money that is 50% owned by FAM are duties to be performed as a fiduciary of both the JV and FAM.  Anson's unilateral decisions in expending

money have benefitted Anson at the expense of FAM and the JV and constitute breach of contract as well as breaches of its fiduciary duties created from being in possession of money that is owned by FAM or Frazier and owed to FAM or Frazier.

5.4     Defendant breached those duties in several ways as stated above, including, but not limited to, failing to: make timely payments; provide complete financial information regarding the servicing of the mortgages, which constitutes constructive fraud[1]; and, failing to keep up with the JV's financial statements, failing to timely disperse or input data, failing to maintain a separate JV bank account and to account monthly for all transactions.  In breaching these duties, Defendant continues to profit from the servicing of the mortgages, and Plaintiff remains uninformed about the financial status of its assets.

5.5     When there is an abuse of a confidential or fiduciary relationship, the burden of proof is on the fiduciary to establish the fairness of the transaction, that there was full disclosure of all the facts and circumstances, and that there was good faith and the absence of pressure and influence on the part of the fiduciary. *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 261 (1951).  This is particularly relevant when it appears that AFI is hiring Ferguson, an interested party, to perform services at an above market rate or to perform services that AFI should already be performing and improperly deducting those fees from the amounts owed to Plaintiff/Joint Venturer.  All expenditures that were incurred or paid without consent or notice to FAM or Frazier violated the JV agreement and the duties expressly stated.

---

[1] Constructive fraud arises when a fiduciary fails to disclose all material information in a transaction or when there is an unfair transaction between persons in a fiduciary relationship. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964). The plaintiff need not prove negligence and needs only to prove the existence of a confidential relationship. *Id.* The defendant must then establish that the transaction was fair, honest, and equitable. *Id.*

5.6 As a result of Defendant's breaches of fiduciary duties, Plaintiff has suffered and continues to suffer damages, and Defendant has benefitted. Defendant's breaches have caused, and will continue to cause harm to Plaintiff.

**DEFALCATION**

5.7 Plaintiff incorporates by reference all of the allegations contained in this petition as if fully set forth herein.

5.8 Defalcation occurs when a fiduciary breaches its duty by inadequately accounting for funds held in a fiduciary capacity or by misapplying those funds contrary to an agreement. In this case, Defendant is liable to Plaintiff for defalcation for failing to account for the revenues and expenses of the Joint Venture. The nature of the duties that Anson performs, ie collecting money, holding money and distributing money that is 50% owned by FAM are duties to be performed as a fiduciary of both the JV and FAM. Anson's unilateral decisions in expending money have benefitted Anson at the expense of FAM and JV and constitute breach of contract as well as breaches of its fiduciary duties created from being in possession of money that is owned by Anson and owed to Anson.

5.9 As a result of Defendant's defalcation, Plaintiff has suffered and continues to suffer damages, and Defendant has benefitted. Defendant's defalcation has caused, and will continue to cause, irreparable harm to Plaintiff. Records are still coming in, have recently been received and an Audit report is pending. Plaintiffs Defalcation claim will seek to recover funds distributed or paid to Anson that were not authorized by the JV, fo.r services that were not approved by a majority of the JV or that were preferentially distributed to Anson in violation of the JV agreements. Those amounts should be reflected in the audit.

**BREACH OF CONTRACT**

    5.10    Plaintiff incorporate by reference all of the factual allegations contained in this petition as if fully set forth herein. The only contract alleged to exist between these parties is the "Joint Venture Agreement" originally between Frazier Asset Management Inc. and Jentex Financial Inc., signed on or about January 24, 1996, including written amendments. Currently, Defendant Anson claims to be a successor in interest to Jentex. Frazier Asset Management Inc. has changed its name to B. Frazier Management, Inc. and asserts it is a party to the JV. To the extent B. Frazier Management, Inc.'s reinstatement was legally ineffective, in February of 2013, all property rights of his company transferred to him as a matter or law. In February of 2013 through January of 2017, Mr. Frazier operated and fulfilled the obligations of his company and continues to do so. If the reinstatement did not revive B. Frazier Management, Inc. then he asserts that the ownership and rights of B. Frazier Management, Inc. have been assigned to Mr. Frazier individually. He asserts that he individually is now a party to the contract by assignment just as Anson is, if B. Frazier Management, Inc. has not in fact been reinstated. There are other parties that do or could own this the corporations property.

    5.11    In this case, AFI breached the Joint Venture Agreement as amended by failing to provide access to correct and complete books of account and supporting documents, failing to operate and make decisions using more than a 50% majority vote or as otherwise stated in the JV agreements. Anson has not timely accounted for or provided information showing JV assets and liabilities and all income received and all monies paid out, as required in the Joint Venture Agreement. AFI further breached the Agreement by failing to maintain a bank account for the Joint Venture and failing to account monthly for all transactions of the JV, failing to get the required % of membership approval before making changes. As a result, Plaintiffs have suffered

and continues to suffer damages in that Defendant is not following the specific operating procedures laid out in the JV agreement. Breaches of contract are of an ongoing nature and occur each month, such as withdrawals from Joint Venture funds, paying for unapproved expenditures or expenditures that are directly objected to without getting the % of membership approval required or by deposits in private accounts without approval and similar conduct that directly violates the agreement. Each time an unauthorized action takes place, Anson violates the Joint Venture Agreement. Plaintiffs seek to enforce the agreement, to require it to be followed. Damages include any money that has been improperly withheld and attorney fees to enforce the agreement.

## WRIT OF MANDAMUS

5.12   A writ of mandamus is requested ordering AFI to turn over a complete set of records dating back to the date on which AFI acquired its interest in the JV in 2014. A writ of mandamus filed in the trial court is the proper remedy to enforce a statutory right of inspection. Burton v. Cravey, 759 S.W.2d 160, 161 (Tex. App.—Houston [1st Dist.] 1988, no writ), disapproved on other grounds by Huie v. DeShazo, 922 S.W.2d 920, 924 (Tex.1996); 9 see Uvalde v. Rock Asphalt Co. v. Loughridge, 425 S.W.2d 818, 820 (Tex.1968) ("A method for the enforcement of the right of inspection or examination of the books and records of a corporation is by mandamus."). FAM does not have to establish an independent cause of action; it merely has to establish its statutory right to inspect. Id. The purpose for the inspection is to uncover errors in the accounting of the JV, over payments and any fraud, embezzlement or mismanagement of the JV's money in the last two years. To date, AFI has failed to account monthly for all transactions of the JV so that FAM can ensure proper operation of the JV. However, the

accounting that has been ordered should provide the relief that has been requested by the Writ of Mandamus.

## CONVERSION

5.13   FAM or in the alternative Mr. Frazier, has an immediate right to possess 50% of the income generated by the JV as well as any other property owned by the JV. FAM's claim is that the money being delivered to Anson by the borrowers who purchased lots from the JV is being delivered to Anson for safekeeping for the JV, was intended to be kept separate from other money Anson has in the amounts and form in which it was received.  50% of the money or the income was not Anson's and it had no right or title claim to the money or to place it in its operating account.  Failing to have an agreement from FAM to move FAM's 50% into an Anson account was conversion of that specific money.  This conversion was done intentionally and over the express objection of FAM.  The audit will reveal the exact amounts converted.  It is unclear at this point if the converted money was removed and put back later or how Anson used or stored the money beyond placing it in its own account without permission and over objection.

5.14   To the extent B. Frazier Management, Inc.'s reinstatement was legally ineffective, from February of 2013 through January of 2017 and to date, Mr. Frazier operated and fulfilled the obligations of his company and continues to do so.  If the reinstatement did not revive B. Frazier Management, Inc. then he asserts that the ownership and rights of B. Frazier Management, Inc. have been assigned to Mr. Frazier individually.  He brings the conversion claim in the alternative as being the individual owner of all of the company's property and rights, if legally that company didn't or doesn't exist.

## VI. DEMAND FOR ACCOUNTING

6.1     Plaintiff incorporates by reference all of the allegations contained in the foregoing paragraphs as if fully set forth herein.

6.2     Plaintiff demands a complete, certified accounting of the Joint Venture from the date of AFI's acquisition of the Jentex interest to present, which Plaintiff is entitled to pursuant to the Joint Venture Agreement.  The accounting information provided by AFI cannot be verified as the supporting documentation was not included.  Accordingly, adequate relief may not be obtained at law, and Plaintiff requests that the Court exercise its equitable power and order Defendant to account for the following:

6.3     A complete, certified accounting in accord with reasonable or generally accepted accounting principles from the date of AFI's acquisition of the Jentex interest to present (including a certification that such information is true and correct and an independent audit from a certified public accountant hired by the JV).  The bookkeeping must be adequate for federal tax reporting and should be in accord with reasonable bookkeeping practices for businesses that service or own notes secured by deeds of trust. The Court has granted this relief to date and the accounting that has been ordered should provide the relief that has been requested by the request for accounting.

## VII. ATTORNEY'S FEES

7.1     Plaintiff incorporates by reference all of the allegations contained in the foregoing paragraphs as if fully set forth herein.

7.2     Because of Defendant's wrongful conduct, Plaintiff has been required to retain the undersigned counsel to initiate and prosecute this suit.  According to Texas Civil Practice and Remedies Code chapters 37 and 38 and the Joint Venture agreements.  Plaintiffs are defending

various declaratory judgment arguments that entitle Plaintiffs to reasonable and necessary attorney fees if they prevail under Chapter 37 or 38.

### VIII. PUNTIVE DAMAGES

8.1    Plaintiff incorporates by reference all of the allegations contained in this petition as if fully set forth herein.    Punitive damages are proper when self-dealing by a fiduciary has occurred.    "*Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502 (Tex. 1980).    Defendant engaged in self-dealing.    Moreover, Defendant's conduct was aggravated by the kind of willfulness, wantonness, and malice for which the law allows the imposition of punitive damages for a claim of conversion.    Defendant's conduct was intentional, willful and without justification or excuse.

8.2    Plaintiff seeks exemplary or punitive damages against Defendant in an amount commensurate with:    a) the nature of the wrong committed; b) the character of the conduct involved; c) the degree of culpability of the Defendant; d) the situation and sensibilities of the parties concerned; e) the extent to which conduct, such as Defendant, offends a public sense of justice and propriety; f) the net worth of Defendant.    The conduct of Defendant alleged hereinabove justifies an award of exemplary or punitive damages in an amount sufficient to deter Defendant and other individuals and attorneys similarly situated from engaging in this conduct in the future.    Plaintiff further requests that past sanctions, fines, reprimands and settlements entered into, if any, for similar conduct related to the servicing of mortgage accounts or breaches of fiduciary duty be considered in determining the appropriate amount of damages.

8.3    To the extent a pleading is required, Plaintiffs assert that CPRC 41.008, pled by Defendant does not apply as the conduct complained of constitutes a misapplication of fiduciary property or property of a financial institution.

## IX. CONDITIONS PRECEDENT

9.1 All conditions precedent to Plaintiff's claims for relief have been performed or have occurred, as required by Texas Rule of Civil Procedure 54. With regard to the presentment of the claims, Ms. Gongloff, prior counsel contacted Anson via phone and demanded that Anson follow the joint venture agreement, not close the bank account, provide full disclosure of expenses, refrain from expending JV resources without FAM's consent and there were also payment demands before filing suit. In addition to the phone calls with Anson or J. Michael Ferguson, some of the pre suit demands included emails between Kelly Gongloff and J. Michael Ferguson on 9/30/16, 10/3/16, 10/2/16, 10/4/16, 10/7/16, 10/10/16, 10/11/16. This is not an exclusive list, but constitutes more than fair notice that we assert that the demands, issues and complaints were made abundantly clear to Anson and J. Michael Ferguson prior to suit being filed by prior counsel Ms. Gongloff.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully requests the following relief:

Plaintiffs further request that, upon trial, the Court:

- a. Enter a judgment against Anson for breach of the Joint Venture contract, ordering that it turn over the required records along with an accounting sufficient to identify the claimed income and expenses of the Joint Venture;

- b. Award Plaintiff all actual, foreseeable, and incidental damages, as may be proven after sufficient financial records are obtained or based on the audit and based on the causes of action pled above. Plaintiffs incorporate their live requests for disclosure as to specific amounts of damages sought, which will be supplemented following the audit;

- c. Award Plaintiff all reasonable and necessary attorney's fees in prosecuting Plaintiff's claims through trial, and if necessary, through appeal;

- d. Award Plaintiff prejudgment interest as provided by law;

  e.  Award Plaintiff post-judgment interest as provided by law;

  f.  Award Plaintiff exemplary damages;

  g.  Award Plaintiff their costs of suit, and

  h.  Award such other and further relief, at law or in equity, to which the Plaintiff may show itself to be justly entitled.

        Respectfully submitted,

        **LAW FIRM OF CALEB MOORE, PLLC**
        2205 Martin Drive, Suite 200
        Bedford, TX 76021
        Telephone: (817) 953-2420
        Facsimile:   (817) 581-2540
        cmoore@thedfwlawfirm.com

        By: */s/ Caleb Moore*
        Caleb I. Moore
        cmoore@thedfwlawfirm.com
        Texas Bar No. 24067779

### Certificate of Service

 I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on May 15, 2019.

        */s/ Caleb Moore*
        Caleb I. Moore